**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GEORGE WISHART,<br><br>                                       Plaintiff,<br><br>-against-<br><br>Correction Officer PETER WELKLEY (in his individual capacity), Correction Officer CEDRIK SORIA (in his individual capacity), Correction Officer JOSEPH SULLIVAN (in his individual capacity), Correction Officer W. MARYJANOWSKI (in his individual capacity), Correction Officer PAUL PALISTRANT (in his individual capacity), Correction Officer SWIATOWY (in his individual capacity), Correction Officer MITHADRILL (in his individual capacity), Correction Sgt. JAMES OPPERMAN (in his individual capacity), Correction Sgt. EDWARD RICE (in his individual capacity), and Correction Lt. BRIGHT (in his individual capacity).<br><br>                                       Defendants. | **COMPLAINT**<br><br>Dkt. No. 19 cv _____ |

**PLEASE TAKE NOTICE** that Plaintiff George Wishart, through his attorneys, Bernstein Clarke & Moskovitz PLLC and Rickner PLLC, hereby alleges as follows:

**NATURE OF THE CASE**

1.      Correction Officer Peter Welkley sexually harassed George Wishart's girlfriend when she came to visit Wishart at Orleans Correctional Facility. Wishart complained after Welkley sent Wishart's girlfriend harassing emails. Multiple correction officers retaliated against Wishart for complaining about Welkley's behavior. They viciously beat Wishart, causing him significant injury, including a rotator cuff tear that required surgery to correct. In an effort to hide their malfeasance, the officers placed Wishart into solitary confinement and filed false reports about what happened. But they could not hide the injuries on Wishart's body. Medical staff and

1

investigators with the Office of Special Investigation noted Wishart's injuries later that same day. OSI investigated and the officers provided false statements to investigators about the assault. Eventually, OSI concluded its investigation and found that correction officers had attacked George Wishart and that Welkley had harassed Wishart's girlfriend.

2. Wishart now brings suit under 42 U.S.C. § 1983 for the violations of his rights secured by the United States Constitution.

## JURISDICTION AND VENUE

3. This Court has original subject matter jurisdiction over Wishart's claims pursuant to 28 U.S.C. § 1331 because Wishart's claims arise under a law of the United States, namely 42 U.S.C. § 1983.

4. This Court also has original subject matter jurisdiction over Wishart's claims pursuant to 28 U.S.C. § 1343 because this action seeks to recover damages for injury from an act done in furtherance of a conspiracy under 42 U.S.C. § 1985, and from a person who failed to prevent or aid in preventing an act of the conspiracy in violation of 42 U.S.C. § 1986; and because this action seeks to recover damages under an Act of Congress providing for the protection of civil rights.

5. Venue is lodged in the United States District Court for the Western District of New York pursuant to 28 U.S.C. § 1391(b) because substantial parts of the events or omissions giving rise to the claims occurred in this district.

## JURY DEMAND

6. Wishart demands a trial by jury in this action.

## PARTIES

7. Plaintiff George Wishart was at all times relevant herein a person incarcerated at

Orleans Correctional Facility ("Orleans") in Albion, New York.

8. Defendant Correction Officer Peter Welkley ("C.O. Welkley") was at all relevant times described herein a correction officer at Orleans, employed by the New York State Department of Corrections and Community Supervision ("DOCCS"). At all relevant times described herein he was acting under color of New York state law, and acting in the course and scope of his duties. He is sued in his individual capacity.

9. C.O. Welkley is entitled to indemnification by the State of New York under New York law for any liability arising from his conduct described herein.

10. C.O. Welkley is entitled to indemnification by the State of New York pursuant to contract for any liability arising from his conduct described herein.

11. Defendant Correction Officer Cedrik Soria ("C.O. Soria") was at all relevant times described herein a correction officer at Orleans, employed by DOCCS. At all relevant times described herein he was acting under color of New York state law, and acting in the course and scope of his duties. He is sued in his individual capacity.

12. C.O. Soria is entitled to indemnification by the State of New York under New York law for any liability arising from his conduct described herein.

13. C.O. Soria is entitled to indemnification by the State of New York pursuant to contract for any liability arising from his conduct described herein.

14. Defendant Correction Officer Joseph Sullivan ("C.O. Sullivan") was at all relevant times described herein a correction officer at Orleans, employed by DOCCS. At all relevant times described herein he was acting under color of New York state law, and acting in the course and scope of his duties. He is sued in his individual capacity.

15. C.O. Sullivan is entitled to indemnification by the State of New York under New

York law for any liability arising from his conduct described herein.

16. C.O. Sullivan is entitled to indemnification by the State of New York pursuant to contract for any liability arising from his conduct described herein.

17. Defendant Correction Officer W. Maryjanowski ("C.O. Maryjanowski") was at all relevant times described herein a correction officer Orleans, employed by DOCCS. At all relevant times described herein he was acting under color of New York state law, and acting in the course and scope of his duties. C.O. Maryjanowski's full first name is not known. He is sued in his individual capacity.

18. C.O. Maryjanowski is entitled to indemnification by the State of New York under New York law for any liability arising from his conduct described herein.

19. C.O. Maryjanowski is entitled to indemnification by the State of New York pursuant to contract for any liability arising from his conduct described herein.

20. Defendant Correction Officer Paul Palistrant ("C.O. Palistrant") was at all relevant times described herein a correction officer at Orleans, employed by DOCCS. At all relevant times described herein he was acting under color of New York state law, and acting in the course and scope of his duties. He is sued in his individual capacity.

21. C.O. Palistrant is entitled to indemnification by the State of New York under New York law for any liability arising from his conduct described herein.

22. C.O. Palistrant is entitled to indemnification by the State of New York pursuant to contract for any liability arising from his conduct described herein.

23. Defendant Correction Officer Swiatowy ("C.O. Swiatowy") was at all relevant times described herein a correction officer at Orleans, employed by DOCCS. At all relevant times described herein he was acting under color of New York state law, and acting in the course

and scope of his duties. C.O. Swiatowy's first name is not presently known. He is sued in his individual capacity.

24. C.O. Swiatowy is entitled to indemnification by the State of New York under New York law for any liability arising from his conduct described herein.

25. C.O. Swiatowy is entitled to indemnification by the State of New York pursuant to contract for any liability arising from his conduct described herein.

26. Defendant Correction Officer Mithadrill ("C.O. Mithadrill") was at all relevant times described herein a correction officer at Orleans, employed by DOCCS. At all relevant times described herein he was acting under color of New York state law, and acting in the course and scope of his duties. His name as alleged here is based on a phonetic spelling; his first name is not presently known. He is sued in his individual capacity.

27. C.O. Mithadrill is entitled to indemnification by the State of New York under New York law for any liability arising from his conduct described herein.

28. C.O. Mithadrill is entitled to indemnification by the State of New York pursuant to contract for any liability arising from his conduct described herein.

29. Defendant Correction Sergeant James Opperman ("Sgt. Opperman") was at all relevant times described herein a correction officer at Orleans, employed by DOCCS. At all relevant times described herein he was acting under color of New York state law, and acting in the course and scope of his duties. He is sued in his individual capacity.

30. Sgt. Opperman is entitled to indemnification by the State of New York under New York law for any liability arising from his conduct described herein.

31. Sgt. Opperman is entitled to indemnification by the State of New York pursuant to contract for any liability arising from his conduct described herein.

32. Defendant Correction Sergeant Edward Rice ("Sgt. Rice") was at all relevant times described herein a correction officer at Orleans, employed by DOCCS. At all relevant times described herein he was acting under color of New York state law, and acting in the course and scope of his duties. He is sued in his individual capacity.

33. Sgt. Rice is entitled to indemnification by the State of New York under New York law for any liability arising from his conduct described herein.

34. Sgt. Rice is entitled to indemnification by the State of New York pursuant to contract for any liability arising from his conduct described herein.

35. Defendant Correction Lieutenant Bright ("Lt. Bright") was at all relevant times described herein a correction officer Orleans, employed by DOCCS. At all relevant times described herein he was acting under color of New York state law, and acting in the course and scope of his duties. Lt. Bright's first name is not known. He is sued in his individual capacity.

36. Sgt. Bright is entitled to indemnification by the State of New York under New York law for any liability arising from his conduct described herein.

37. Sgt. Bright is entitled to indemnification by the State of New York pursuant to contract for any liability arising from his conduct described herein.

38. C.O. Welkley, C.O. Soria, C.O. Sullivan, C.O. Maryjanowski, C.O. Palisrant, C.O. Swiatowy, C.O. Mithadrill, Sgt. Opperman, Sgt. Rice, and Lt. Bright are referred to collectively herein as the "Defendants."

**FACTS AND ALLEGATIONS COMMON TO ALL CLAIMS**

**C.O. Welkley Sexually Harassed Wishart's Girlfriend, and Wishart Complained**

39. In or about early 2016, C.O. Welkley began stalking Wishart's girlfriend, whose name is being withheld to prevent further embarrassment and harassment. She is referred to herein as "Jane."

40. C.O. Welkley had the opportunity to observe Jane when she visited Wishart at Orleans Correctional Facility because C.O. Welkley was assigned to work in the visitor room at Orleans.

41. C.O. Welkley made unwelcome sexual comments to Jane. For example, one an occasion when Jane was waiting to take a photograph with Wishart, C.O. Welkley told her that she "did not need to take anymore photos with that scumbag" and that she "had enough sexy pictures on Facebook."

42. Jane was terrified. She knew that as a corrections officer, C.O. Welkley had tremendous power and numerous opportunities to punish Wishart. Jane was afraid that if she spurned C.O. Welkley's advances, he would take it out on Wishart. She did not file a complaint or grievance herself because of this fear.

43. C.O. Welkley continued to abuse his power. He eventually found Jane's email address and in February 2016, he sent her several harassing emails.

44. As a result of the emails, Wishart told Jane not to visit, out of concerns for their safety.

45. In late February 2016, Wishart prepared a grievance regarding C.O. Welkley's behavior, but he believed, or hoped, that he could resolve the matter informally.

46. In early March 2016, Wishart complained to C.O. Palistrant (and other unknown officers) about C.O. Welkley's harassment of Jane.

**The Defendants Conspired to Retaliate Against Wishart for his Complaint**

47. Upon information and belief, sometime on or before March 14, 2016, C.O. Palistrant told C.O. Welkley, C.O. Soria, and/or other correction officers about Wishart's complaint.

48. Sometime on or before March 14, 2016, C.O. Welkley and C.O. Soria learned

7

about Wishart's complaint.

49. C.O. Welkely and C.O. Soria were, at all times relevant herein, friends.

50. Upon information and belief, sometime on or before March 14, 2016, C.O. Welkely and C.O. Soria discussed Wishart's complaint with all or some of the other Defendants and agreed to punish Wishart for making his complaint.

### The Defendants Brutally Assaulted Wishart in Retaliation

51. On the morning of March 14, 2016, the Defendants executed their plan for retaliation.

52. They isolated Wishart in the bathroom of the C-2 dorm and began to physically attack him there. They moved out of the bathroom and continued their attack and then took Wishart to a secluded area between the dorm entrance doors where they attacked him further.

53. C.O. Soria punched Wishart in the face and in the sides of his upper body.

54. At one point, C.O. Soria accused Wishart of trying to set up his friend, C.O. Welkley.

55. C.O. Soria continued to assault Wishart even after he was placed in handcuffs.

56. C.O. Soria pushed Wishart's arms up behind his back to the point where Wishart thought they would snap. He also smashed Wishart's head against the wall.

57. C.O. Sullivan punched Wishart in the back, and repeatedly kicked Wishart in the ankle.

58. C.O. Sullivan threatened Wishart that if he said anything, he would never make it out of the Special Housing Unit ("SHU") alive.

59. C.O. Maryjanowski threatened Wishart, and instructed the other officers to be careful where they hit Wishart so that his injuries would not be noticeable.

60. C.O. Swiatowy and C.O. Mithadrill participated in the attack.

61. Sgt. Opperman and Sgt. Rice observed the attack and could have intervened to stop it, but instead, they stood guard and did nothing to stop it.

62. After the attack, Sgt. Opperman, C.O. Maryjanowski, and other officers escorted Wishart to the infirmary, which was a necessary stop before Wishart was confined in the SHU.

### The Defendants Attempted to Cover Up the Assault

63. On March 14, 2016, the same day as the attack, C.O. Sullivan and C.O. Soria drafted a false Inmate Misbehavior Report to justify taking Wishart to the SHU. They falsely alleged that Wishart had refused an order to leave the bathroom area and that Wishart had used harsh and abusive language.

64. As a result of their false reports, and in response to the investigation into Wishart's allegation that he was assaulted by correction officers, C.O. Soria, C.O. Sullivan, C.O. Maryjanowski, and Sgt. Opperman all wrote memos that falsely claimed they did not use force on Wishart and that they did not observe any injuries to Wishart.

65. Lt. Bright observed Wishart in the infirmary and interviewed him about the incident.

66. He wrote a memo the same day that downplayed Wishart's injuries and accused Wishart of fabricating the attack.

67. But the Defendants could not disguise the physical evidence of their assault, which was noted by medical staff and investigators with DOCCS's Office of Special Investigations ("OSI"), which launched an investigation.

68. OSI investigators interviewed Wishart, Jane, multiple inmates, and correction officers. Wishart consistently reported what happened; Jane confirmed that C.O. Welkley had been harassing her; and the inmates corroborated Wishart's account.

69. The Defendants lied to the OSI investigators and claimed they had no explanation

9

for how Wishart was injured.

70. OSI issued a report in June 2016 confirming that Wishart had been assaulted by staff at Orleans Correctional Facility and that C.O. Welkley had inappropriate contact with Jane.

71. Upon information and belief, none of the Defendants has been fired.

### Wishart's Injuries

72. Wishart suffered substantial physical, as well as mental and emotional, pain as a result of the defendants' conduct.

73. Wishart sustained physical injuries to his head, face, neck, torso, left knee and thigh, right foot, and left shoulder.

74. Initially, Wishart was prescribed only pain medication, but it soon became apparent that his shoulder injury was severe. He received little to no meaningful treatment until October 2016, when he was finally taken to see an orthopedic surgeon.

75. On November 29, 2016, he received surgery to repair his left rotator cuff and to stabilize the AC joint; and on April 27, 2017 he needed another surgery to remove the surgical hardware.

76. Wishart continues to experience pain and suffering from his injuries, some of which are believed to be permanent.

77. Wishart was held in SHU and lost other privileges because of the defendants' false allegations.

78. Wishart suffered additional injuries.

## FIRST CAUSE OF ACTION

**42 U.S.C. § 1983 (Excessive Force Under the Eighth Amendment)**
**Against All Defendants**

79. Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

80. Defendants planned, encouraged, and/or participated in the unprovoked physical attack on Wishart.

81. The use of force against Wishart was done maliciously and sadistically, and constituted cruel and unusual punishment.

82. Defendants thus violated Wishart's rights under the Eighth Amendment of the United States Constitution, which is actionable under 42 U.S.C. § 1983.

83. As a direct and proximate result of the deprivation of his constitutional rights, Wishart suffered the injuries and damages set forth above.

84. Defendants are therefore liable for Plaintiff's injuries.

85. Defendants' actions were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

## SECOND CAUSE OF ACTION

**42 U.S.C. § 1983 (Retaliation Under the First Amendment)**
**Against All Defendants**

86. Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

87. Wishart has a First Amendment right to file grievances related to the conditions of his confinement.

88. But after Wishart exercised his First Amendment right to complain about C.O.

Welkley's mistreatment of his girlfriend, the Defendants, working in concert, retaliated.

89. They attacked him, put him into the SHU, and then filed false reports to cover up their wrongdoing.

90. This retaliation violated Wishart's rights under the First Amendment of the United States Constitution, which is actionable under 42 U.S.C. § 1983.

91. As a direct and proximate result of the deprivation of his constitutional rights, Wishart suffered the injuries and damages set forth above.

92. Defendants are therefore liable for Plaintiff's injuries.

93. Defendants' actions were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

### THIRD CAUSE OF ACTION

**42 U.S.C. § 1983 (Failure to Intervene)**
**Against All Defendants**

94. Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

95. Defendants failed to intervene to prevent, end or report the unlawful and unconstitutional conduct to which Wishart was subjected despite the fact that they had opportunities to do so.

96. Defendants thereby displayed deliberate indifference to Wishart's rights, including but not limited to Plaintiffs right to be free from cruel and unusual punishment and retaliation for exercising his right to free speech.

97. Defendants thus violated Wishart's rights under the United States Constitution, which is actionable under 42 U.S.C. § 1983.

98. As a direct and proximate result of the deprivation of his constitutional rights,

Wishart suffered the injuries and damages set forth above.

99. Defendants are therefore liable for Plaintiff's injuries.

100. Defendants' actions were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

## FOURTH CAUSE OF ACTION

### 42 U.S.C. § 1985 (Civil Rights Conspiracy)
### Against All Defendants

101. Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

102. Defendants agreed among themselves and with other individuals to act in concert in order to deprive Wishart of his clearly established rights, including but not limited to his right to be free from cruel and unusual punishment and retaliation for exercising his right to free speech.

103. In furtherance of the conspiracy Defendants engaged in and facilitated numerous overt acts, including, without limitation, planning the retaliatory attack specifically to protect Welkley from the consequences of his sexual harassing behavior, by executing the attack against Wishart, and by filing false memoranda to hide their malfeasance.

104. As a direct and proximate result of the deprivation of his constitutional rights, Wishart suffered the injuries and damages set forth above.

105. Defendants are therefore liable for Plaintiff's injuries under 42 U.S.C. § 1985.

106. Defendants' actions were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

## FIFTH CAUSE OF ACTION

**42 U.S.C. § 1986 (Failure to Prevent Civil Rights Conspiracy)**
**Against All Defendants**

107. Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

108. Defendants knew that acts previously mentioned, which violated Plaintiff constitutional rights, were about to be committed, and they had the power to prevent or aid in preventing the commission of the same, but they neglected or refused to do so.

109. As a direct and proximate result of the deprivation of his constitutional rights, Wishart suffered the injuries and damages set forth above.

110. Defendants are therefore liable for Plaintiff's injuries under 42 U.S.C. § 1986.

111. Defendants' actions were willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

**WHEREFORE**, Plaintiff demands the following relief against Defendants, jointly and severally:

    (a)    compensatory damages in an amount just and reasonable and in conformity with the evidence at trial;

    (b)    punitive damages to the extent allowable by law;

    (c)    attorney's fees;

    (d)    the costs and disbursements of this action;

    (e)    interest; and

    (f)    such other and further relief as this Court deems just and proper.

Dated: New York, New York
       March 13, 2019

BERNSTEIN CLARKE & MOSKOVITZ PLLC
11 Park Place, Suite 914
New York, New York 10007
Phone: (212) 321-0087

By: _____/s/_____
     Joshua S. Moskovitz

RICKNER PLLC
The Woolworth Building
233 Broadway Suite 2220
New York, New York 10279
Phone: (212) 300-6506

By: _____/s/_____
     Rob Rickner

*Attorneys for Plaintiff George Wishart*