# BERNSTEIN CLARKE & MOSKOVITZ

11 Park Place, Suite 914, New York, New York 10007
www.bcmlaw.com   Tel. (212) 321-0087   Fax (917) 722-0930

Andrew M. J. Bernstein
Lance A. Clarke
Joshua S. Moskovitz

February 25, 2020

**BY ECF and EMAIL**

Hon. Mark W. Pedersen
United States Magistrate Judge
Western District of New York
100 State Street
Rochester, New York 14614
pedersen@nywd.uscourts.gov

      Re:    *Wishart v. Welkley* et al., Case No. 19-cv-6189 (MAT) (MJP)

Your Honor,

We write as Plaintiff's counsel to request an order (1) extending Plaintiff's time to complete discovery by 120 days (from March 5 to July 3), and (2) compelling Defendants to comply with the Court's ESI orders.  Defendants have said they consent to Plaintiff's request for an extension of time to complete discovery; and we have conferred with Defendants' counsel in a good faith effort to resolve the dispute concerning ESI but have not been successful.

    1.    **Extension of Plaintiff's time to complete discovery.**

First, with Defendants' consent, we request an extension of 120 days for Plaintiff to complete discovery.  The reasons for this request are twofold: (1) Defendants have not produced the defendants for their depositions on the dates noticed by Plaintiff and have not offered to produce the defendants before the current close of discovery; and (2) Defendants have not finished collecting ESI, as ordered by the Court in December 2019, and have said they will not be able to do so before the current close of discovery.

As for the defendants' depositions, Plaintiff served deposition notices on February 6, 2020, noticing dates for the defendants' depositions before the current deadline.  Counsel for the State of New York in the companion Court of Claims case, Tamara Christie, Esq., contacted us to say that she was unavailable on most of the noticed dates.[1]  Although one of the noticed dates still apparently worked for Ms. Christie, counsel for the defendants in this case told us, "the depositions are not going forward."  We have requested that defendants provide us with new dates that work for the defendants, their counsel, and Ms. Christie.  Ms. Christie previously suggested dates in

---

[1] At the request of defendants' counsel in this case, depositions in the Court of Claims case were postponed in August 2019 so they could be conducted in tandem with depositions in this case.

**BERNSTEIN CLARKE & MOSKOVITZ**

Hon. Mark W. Pedersen
February 25, 2020
Page 2

April, several of which conflict with our schedules.  Accordingly, it appears that all parties will not be available for the defendants' depositions until May at the earliest.  We have nine defendants to depose, and likely several non-party depositions.  Accordingly, we ask for an extension until July 3 to permit Plaintiff sufficient time to complete these depositions.

In terms of the outstanding ESI discovery, as discussed below, Plaintiff has attempted in good faith to secure this discovery within the current schedule set by the Court.  However, for the reasons explained below, Plaintiff's efforts have been unsuccessful and therefore, he requests an extension of time to obtain this discovery as well.

## 2.    Defendants' non-compliance with the Court's ESI Order.

Plaintiff requests an order pursuant to Rule 37(b) directing the Defendants to comply with the Court's ESI Order.  Defendants have failed to adhere to basic e-discovery protocols, which were discussed extensively at the December 17, 2019 conference, and which resulted in an ESI Order requiring Defendants to collect ESI (email, text messages, and social media data) so that it could be searched.  The Court's Order conformed to the standard e-discovery protocol used in litigation: "[1] identifying, [2] preserving, [3] collecting, [4] preparing, and [5] producing electronically stored information ('ESI') in the context of the legal process."  *Hinterberger v. Catholic Health Sys., Inc.*, No. 08-CV-380S F, 2013 WL 2250603, at *2 (W.D.N.Y. May 21, 2013).

At the December 17, 2019 conference, the parties identified the relevant sources of ESI – cell phones, email, and social media – and Your Honor directed Defendants to determine whether the Attorney General's Office had the ability to collect this ESI in order to run searches on it.  By letter dated December 30, 2019, Defendants confirmed that "[w]ith regard to collection of [the defendants'] emails and texts, . . . the IT department at the Attorney General's Office . . . will be able to extract the data."  Ex. 1 (ECF Doc. 19).

Unfortunately, Defendants still have not collected all the relevant ESI.  In Defendants' February 6, 2020 motion to the District Judge for a stay of discovery, they acknowledged they still have not completed ESI collection.  *See* Ex. 2 at 4 (ECF Doc. 24-1).  Defendants' motion states, "[m]ost Defendants have had their phones' data collected, but, due to illness, C.O. Palistrant has not yet had his data collected."  *Id.*  However, this is not a complete picture.  During a telephone call on February 19, 2020, Defendants admitted they have not collected the cell phone data for Mr. Swiatowy either.  Also, during that call Defendants would not say concretely whether they have collected the defendants' email and social media data.

In terms of the cell phones, Defendants have said they will collect Mr. Swiatowy's cell phone data on March 6, *the day after the current close of discovery*; but they do not intend to collect the data from Mr. Palistrant's cell phone at all.  Defendants' position, apparently, is that Mr. Palistrant should be excused from complying with the Court's December 2019 ESI Order because, more than seven weeks after that order was issued, they moved for a stay of certain discovery.  However, as Plaintiff pointed out in his opposition to that motion, Defendants never filed a Rule 72 objection to Your Honor's ESI Order and there is no merit to their belated request

for a stay.  *See* Ex. 3 at 9-11 (ECF Doc. 26).  Moreover, the Court has not issued a stay of discovery, so Defendants are openly violating Your Honor's ESI Order.

As for Defendants' email and social media data, Defendants refused to respond to our straight-forward question "has the data has been collected yet?"  Instead, Defendants repeatedly stated that they were "ready to search" their emails and social media.  The fact that Defendants have said they "collected" the data from most of their cell phones, but they refused to say the same about their email and social media data suggests that Defendants have not yet collected the latter data.  While the cell phone data that Defendants have collected may contain some emails or social media information, it is not a substitute for a proper ESI collection of email and social media data.  Indeed, in response to Plaintiff's Interrogatories, several of the defendants acknowledged they no longer have the cell phones they used at the time of Plaintiff's assault in March 2016, and it is doubtful the newer phones will have relevant communications from that time period.  Further, if Defendants have not linked their email accounts (some have more than one) to their current cell phones, email data from those unlinked accounts will not be included in the data collected from those phones.

Until *all* ESI has been collected, it cannot be searched.  *See, e.g.*, *Winfield v. City of New York*, No. 15-CV-05236 (LTS)(KHP), 2017 WL 5664852, at *4 (S.D.N.Y. Nov. 27, 2017) (explaining that the relevant custodians' ESI must be collected before the appropriate searches can be determined).  The parties cannot engage in a meaningful discussion about the parameters of the ESI searches that should be performed until Defendants identify what data they have collected.  An appropriate search will likely require more than a simple keyword search: Defendants have acknowledged that relevant emails no longer exist and therefore, a search of email metadata may be needed to determine the timing of the destruction of those, and perhaps other, emails.  Moreover, it is impractical to address the burdensomeness of any search without knowing how many results a particular search produces, which cannot be known until all of the ESI is collected.  E-discovery must be "grounded in fact rather than guesswork."  *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 324 (S.D.N.Y. 2003).  Until Defendants have collected the required ESI and provided Plaintiff with basic information about what specifically was collected, any discussion about the appropriate search parameters will be incomplete.

Accordingly, we ask the Court to order Defendants to: (a) promptly extract Mr. Palistrant and Mr. Swiatowy's cell phone data, (b) collect the email and social media data of all of the defendants, and (c) provide Plaintiff a list of exactly what sources of ESI were collected and how they were collected, and for such other and further relief as the Court deems just and appropriate.  *See* Fed. R. Civ. P. 37(b)(2)(A), (C).

**BERNSTEIN CLARKE & MOSKOVITZ**

Hon. Mark W. Pedersen
February 25, 2020
Page 4

We appreciate the Court's attention to this matter.

Sincerely,

Joshua S. Moskovitz
BERNSTEIN CLARKE & MOSKOVITZ PLLC

Rob Rickner
RICKNER PLLC

cc:     Hillel Deutsch (by ECF)

Enc.

# EXHIBIT 1



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF REGIONAL OFFICES
ROCHESTER REGIONAL OFFICE

December 30, 2019

Hon. Mark W. Pedersen
Magistrate Judge, WDNY
100 State St.
Rochester, NY 14614

        **Re:**    **George Wishart v. Welkley, et al., 19-CV-6189**

Dear Hon. Pedersen:

      I am writing per the Court's Order (Docket No. 18) to update the Court as to discovery in this case. With regard to the OSI file and medical records that I obtained from DOCCS, I have produced these documents to Plaintiff's counsel and believe that issue is now entirely resolved. With regard to collection of my clients' emails and texts, per the Court's request I have spoken with the IT department at the Attorney General's Office. They will be able to extract the data but it will require my clients to physically get the phones to the lab in White Plains NY. Given the holidays and their schedules, this might take some time, but the process is in motion.

      DOCCS has also collected the data pertaining to the clients who are no longer employed at DOCCS described by the Court. There are four Defendants who are no longer employed by DOCCS. The closest departure to the date of the incident alleged was Officer Soria, who retired in August 2017, a year and a half after the incident alleged, after 27 years on the job. None of the four officers were disciplined for any wrongdoing pertaining to any matter at bar.

      Finally, last Tuesday I asked Plaintiff's counsel to confirm that when they responded to my document demands, their searches included searching for emails and texts, and for the details of that search. They have not yet responded (again, the holiday season has doubtless played a role) but I hope to have that issue resolved fairly soon as well.

                      Very truly yours,

                      HILLEL DEUTSCH
                      Assistant Attorney General

# EXHIBIT 2

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

**GEORGE WISHART,**

<table>
<tr><td><em>Plaintiff</em>,</td><td><strong>MEMORANDUM OF LAW</strong></td></tr>
<tr><td>-against-</td><td><strong>19-CV-6189</strong></td></tr>
</table>

**PETER WELKLEY, et al.**,

<em>Defendants</em>.

---

## I.  Facts Alleged in the Complaint

Plaintiff, a former inmate, alleges a retaliatory assault by certain Defendants on March 14, 2016.  He also claims that the Defendants engaged in a conspiracy, or knew of and failed to prevent a conspiracy, to assault Plaintiff for purportedly threatening to file a grievance against Corrections Officer Welkley.  These claims constitute Plaintiff's Fourth and Fifth causes of action in this matter, which are brought under 28 U.S.C. § 1985 and 28 U.S.C. § 1986, respectively.

## II.  Motion to Dismiss Standard

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The same standard applicable to Rule 12(b)(6) motions applies to Rule 12(c) motions.  Baiul v. NBC Sports, 2016 U.S. Dist. LEXIS 52291, at *24 (S.D.N.Y. Apr. 19, 2016)

The U.S. Supreme Court, in Bell Atl. Corp. v. Twombly, 550 U.S. 554 (2007), clarified the standard to be applied to a 12(b)(6) motion:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a Plaintiff's

1

obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Id. at 555 (citations and internal quotations omitted). See also, ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir.2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting Bell Atl. Corp. v. Twombly) (footnote omitted); Iqbal v. Hasty, 490 F.3d 143 (2d Cir. Jun. 14, 2007) (Indicating that Bell Atl. Corp. v.. Twombly adopted "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible[,]" as opposed to merely conceivable.)

When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. Burnette v. Carothers, 192 F.3d 52, 56 (1999), cert. denied, 531 U.S. 1052 (2000). On the other hand, "[c]onclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss." Hirsch v. Arthur Andersen & Co., 72 F.3d 1085, 1092 (2d Cir.1995) (citing In re American Express Co. Shareholder Litig., 39 F.3d 395, 400–01 n. 3 (2d Cir.1994)). Weixel v. Bd. of Educ. of N.Y., 287 F.3d 138, 145–146 (2d Cir.2002).

## III.  Argument

The standard for a claim under 28 U.S.C. § 1985, and by extension 28 U.S.C. § 1986, which addresses wrongs "mentioned in section 1985" is well-established:

2

A conspiracy claim under Section 1985(3) contains four elements: [i] a conspiracy, [ii] for the purpose of depriving any person ... of the equal protection of the laws ..., [iii] an act in furtherance of the conspiracy, and [iv] whereby a person is injured in his person or property or deprived of a right or privilege of a citizen. To succeed, **a plaintiff must also show that there was some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action**.

A plaintiff must [further] provide some **factual basis supporting a meeting of the minds**, such as that defendants entered into an agreement, express or tacit, to achieve the unlawful end[,] **along with some details of time and place and the alleged effects of the conspiracy**.

Benzinger v. NYSARC, Inc., 385 F. Supp. 3d 224, 236 (S.D.N.Y. 2019) (internal citations and quotation marks omitted)(emphasis added).

Plaintiff does not even allege, much less show, any racial (or other) discriminatory animus on the part of Defendants.  The claims warrant dismissal on this ground alone.

Plaintiff also fails to provide any factual basis for the alleged conspiracy, which purportedly involved Plaintiff verbally complaining to C.O. Palistrant, C.O. Palistrant then purportedly telling unspecified others, who then purportedly, at some point, agreed to assault Plaintiff.  The exact language used by Plaintiff is:

Upon information and belief, sometime on or before March 14, 2016, C.O. Palistrant told C.O. Welkley, C.O. Soria, and/or other correction officers about Wishart's complaint.

Upon information and belief, sometime on or before March 14, 2016, C.O. Welkely and C.O. Soria discussed Wishart's complaint with all or some of the other Defendants and agreed to punish Wishart for making his complaint. (D.N. 1, ¶ 47, 50).

These conclusory allegations fall far short of the requirements for a conspiracy claim to survive a motion to dismiss under Rule 12(c).

3

## IV.  Stay of Discovery

Defendants seek a stay of discovery pending the outcome of this Motion.  In determining whether a stay is appropriate, in addition to taking into account the nature and complexity of the particular case, "courts consider the following factors in determining whether a stay is appropriate: (1) whether the defendant has made a strong showing that the plaintiff's claim is unmeritorious; (2) the breadth of discovery and the burden of responding to it; and (3) the risk of unfair prejudice to the party opposing the stay." Thomas v. N.Y.C. Dep't of Educ., 2010 U.S. Dist. LEXIS 95798, at *7 (E.D.N.Y. Sep. 14, 2010) quoting Rivera v. Inc. Vill. of Farmingdale, 2007 U.S. Dist. LEXIS 99970 at *1 (E.D.N.Y. Oct. 17, 2007).

In this case, claims Four and Five are plainly not meritorious.  Plaintiff does not allege any sort of racial or class-based animus and fails to provide anything beyond the most vague and conclusory allegations supporting the conspiracy claims.

Discovery in this case has been and will continue to be burdensome. Plaintiff has demanded electronic discovery in the form of emails, texts and social media searches from the personal cell phones and email accounts of Defendants, all to search for evidence of a nonexistent 'conspiracy.' Most Defendants have had their phones' data collected, but, due to illness, C.O. Palistrant has not yet had his data collected. Additionally, while most other data has been collected, there still remains to perform the searches, then go through the potentially thousands of responsive texts emails and social media correspondence. Finally, the removal of two parties and two causes of action from the case would significantly reduce the burden of discovery as the scope of inquiry would

be sharply curtailed from months prior and years following the incident date, to the date and time of the alleged incident.

There is no risk of prejudice here.  The incident date was March 14, 2016, nearly four years ago. The electronic data is not going anywhere. There is no issue of loss of memory given the remoteness of the incident as is. There is no prejudice to be had from an adjournment of discovery to determine if two Defendants and two causes of action should be dismissed from this case.

## V.  Conclusion

Causes of action Four and Five should be dismissed.  Officers Welkely and Palistrant, whose sole involvement stems from the allegations in counts Four and Five should be dismissed from the case.  Because dismissal of two counts and two Defendants will significantly reduce the burdensomeness of discovery, and will not result in prejudice to Plaintiff, Defendants ask discovery be stayed pending resolution of this motion.

Dated: February 6, 2020
      Rochester, New York

                                   LETITIA JAMES
                                   Attorney General of the State of New York
                                   Attorney for Served Defendants

                                  s/ Hillel Deutsch
                                   HILLEL DEUTSCH
                                   Assistant Attorney General of Counsel
                                   NYS Office of the Attorney General
                                   144 Exchange Boulevard, Suite 200
                                   Rochester, New York 14614
                                   Telephone: (585) 546-7430
                                   hillel.deutsch@ag.ny.gov

## CERTIFICATE OF SERVICE

I certify that on February 6, 2020, I electronically filed the foregoing

Memorandum of Law on behalf of the Served Defendants with the Clerk of the District

Court using CM/ECF system, which sent notification of such filing to the following:

1.  Joshua S. Moskovitz
    Bernstein Clarke & Moskovitz PLLC
    11 Park Place
    Suite 914
    New York, NY 10007

2.  Robert Howard Rickner
    Rickner PLLC
    233 Broadway
    Suite 2220
    New York, NY 10279

And, I hereby certify that I have mailed, by the United States Postal Service, the

document to the following non-CM/ECF participant(s):

1.      n/a

LETITIA JAMES
Attorney General of the State of New York
Attorney for Served Defendants

 s/ Hillel Deutsch
HILLEL DEUTSCH
Assistant Attorney General of Counsel
NYS Office of the Attorney General
144 Exchange Boulevard, Suite 200
Rochester, New York 14614
Telephone:  (585) 546-7430
Hillel.Deutsch@ag.ny.gov

# EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X

GEORGE WISHART,

                                Plaintiff,

                        -against-

Correction Officer PETER WELKLEY (in his
individual capacity), Correction Officer CEDRIK
SORIA (in his individual capacity), Correction Officer
JOSEPH SULLIVAN (in his individual capacity),
Correction Officer W. MARYJANOWSKI (in his            No. 19 CV 6189 (MAT) (MWP)
individual capacity), Correction Officer PAUL
PALISTRANT (in his individual capacity), Correction
Officer SWIATOWY (in his individual capacity),
Correction Officer MITHADRILL (in his individual
capacity), Correction Sgt. JAMES OPPERMAN (in his
individual capacity), Correction Sgt. EDWARD RICE
(in his individual capacity), and Correction Lt. BRIGHT
(in his individual capacity).

                                Defendants.

-------------------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**PARTIAL MOTION TO DISMISS AND FOR A "STAY" OF DISCOVERY**


BERNSTEIN CLARKE &                 RICKNER PLLC
MOSKOVITZ PLLC                     The Woolworth Building
11 Park Place, Suite 914           233 Broadway Suite 2220
New York, New York 10007           New York, New York 10279

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................... 1

BACKGROUND ............................................................................................................. 2

LEGAL STANDARD...................................................................................................... 4

    A.    Motion to Dismiss............................................................................. 4

    B.    Stay of Discovery............................................................................. 5

ARGUMENT................................................................................................................... 6

    POINT I –    DEFENDANTS' MOTION TO DISMISS IS FUTILE AND
                   SHOULD BE DENIED AS MOOT .............................................. 6

    POINT II –    DEFENDANTS HAVE NOT SHOWN GOOD CAUSE
                   FOR A "STAY" OF DISCOVERY .............................................. 9

CONCLUSION.............................................................................................................. 11

# TABLE OF AUTHORITIES

**CASES**                                                              **PAGE(S)**

*Adickes v. S. H. Kress & Co.*,
  398 U.S. 144 (1970) ...................................................................................7, 8

*Arista Records LLC v. Doe*,
  604 F.3d 110 (2d Cir. 2010) ..............................................................4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...........................................................................4

*Covell v. Chiari & Ilecki, LLP*,
  No. 12CV660A, 2013 U.S. Dist. LEXIS 96851 (W.D.N.Y. July 11, 2013) ....................5

*Ellington Credit Fund, Ltd. v. Select Portfolio Servs., Inc.*,
  No. 08 Civ. 2437, 2009 U.S. Dist. LEXIS 7905 (S.D.N.Y. Feb. 3, 2009) ...................5, 9

*Erickson v. Pardus*,
  551 U.S. 89 (2007) ..........................................................................4, 6

*Keystone Coke Co. v. Pasquale*,
  Civ. Action No. 97-6074, 1999 U.S. Dist. LEXIS 170 (E.D. Pa. Jan. 7, 1999) ................5

*Moran v. Flaherty*,
  No. 92 Civ. 3200, 1992 U.S. DIST. Lexis 14568 (S.D.N.Y. Sept. 25, 1992) ....................5

*Pangburn v. Culbertson*,
  200 F.3d 65 (2d Cir. 1999) .............................................................5

*Roth v. Jennings*,
  489 F.3d 499 (2d Cir. 2007) ...........................................................4

*Victory v. Pataki*,
  814 F.3d 47 (2d Cir. 2016) ...........................................................4, 8

**STATUTES**

42 U.S.C. § 1983 ..........................................................................*passim*

42 U.S.C. § 1985 ..........................................................................*passim*

42 U.S.C. § 1986 ..........................................................................*passim*

## PRELIMINARY STATEMENT

Nine months after answering Plaintiff's Complaint and less than one month before the close of fact discovery, Defendants moved to dismiss two of the five causes of action; they also sought a "stay" of discovery – but they actually seek to avoid court-ordered discovery altogether.  The motion should be denied because Defendants' reason for seeking this relief is mistaken.  They contend that if Plaintiff's claims under 42 U.S.C. § 1985 and § 1986 are dismissed, two of the defendants must be dismissed from the case, which would limit discovery.  But Defendants ignore that they are all liable as conspirators under the remaining causes of action brought under 42 U.S.C. § 1983.  Thus, defendants' motion will not remove any of the defendants from the case nor will it limit the scope of discovery.

The primary object of Defendants' motion is to avoid complying with the magistrate judge's discovery order regarding electronically stored information ("ESI").  Defendants filed this motion *seven weeks* after the magistrate judge ordered them to gather ESI from their cell phones, emails, and social media; and they acknowledge that they have not fully complied with the Court's Order.  This motion is a belated attempt to avoid compliance with the Court's discovery order.  Defendants never filed a Rule 72 objection to the magistrate judge's order and instead, repeatedly represented that they were attempting to comply with it.  There is no lawful basis for Defendants to now reargue that order.  Indeed, other than the assertion that two of the defendants must be dismissed, which is simply wrong, the only reasons Defendants now give for "staying" the magistrate judge's order are the very same reasons the magistrate judge rejected when the Court overruled defendants' objections to ESI discovery.

Plaintiff agrees to withdraw the two causes of action brought under § 1985 and § 1986.  Thus, there is no basis to stay or limit the Court's discovery orders.  Dismissing these two claims

leaves all of the defendants in the case because they conspired together to violate plaintiff's constitutional rights and are therefore liable as co-conspirators under the remaining § 1983 causes of action. Accordingly, Defendants' motion should be denied as moot.

## BACKGROUND

This civil rights action arises from a conspiracy by the defendants to violate the constitutional rights of Plaintiff George Wishart while he was incarcerated at Orleans Correctional Facility ("Orleans"). The defendants are current and former New York State Correction Officers who conspired to and did in fact assault Mr. Wishart in retaliation for his complaint that defendant Peter Welkley had made unwanted advances towards Mr. Wishart's girlfriend (referred to as "Jane" to respect her privacy). Compl. ¶¶ 8-62.[1] In addition to harassing Jane when she visited Orleans, defendant Welkley sent Jane harassing and inappropriate emails. *Id.* ¶¶ 41-43.

In March 2016, Mr. Wishart "complained to C.O. Palistrant (and other unknown officers) about C.O. Welkley's harassment of Jane." *Id.* ¶ 46. Defendant Palistrant communicated Mr. Wishart's complaint to Officer Welkley as well as defendant Cedrik Soria and other officers. *Id.* ¶ 47. In addition to working together as corrections officers, Welkley and Soria were personal friends. *Id.* ¶ 49. Welkley and Soria then "discussed Wishart's complaint with all or some of the other Defendants and agreed to punish Wishart for making his complaint." *Id.* ¶ 50.

On March 14, 2016, Soria and other officers cornered Mr. Wishart in a bathroom and assaulted him, injuring his shoulder badly enough to require surgery. *Id.* ¶¶ 51-61. The defendant officers then actively tried to cover up the assault by submitting false reports and a fabricated

---

[1] It has been revealed in discovery that two of the defendants have been terminated from their employment with the Department of Corrections and two departed prior to attaining thirty years of service, which means they did not fully maximize their pension benefits at the time they left. *See* ECF Doc. 25.

complaint against Mr. Wishart that caused him to be sent to the SHU. *Id.* ¶¶ 63-66. Defendant Soria and other officers "wrote memos that falsely claimed they did not use force on Wishart and that they did not observe any injuries to Wishart." *Id.* ¶ 64.

Fortunately, before Mr. Wishart was taken to the SHU, he was examined by medical staff who noted his injuries. *Id.* ¶ 67. Because of that, investigators with the Department of Corrections and Community Supervision's Office of Special Investigations ("OSI") launched an investigation, which included interviewing Mr. Wishart, Jane, the defendant officers, and inmates. *Id.* ¶ 68. The defendant officers "lied to the OSI investigators and claimed they had no explanation for how Wishart was injured." *Id.* ¶ 69. After an extensive inquiry, OSI concluded that defendant Welkley had improperly contacted Jane and that after Mr. Wishart complained about Welkley's behavior, he was assaulted by corrections officers. *Id.* ¶ 70; *see also* ECF Doc. 17-2 (OSI Report).[2]

As a result of the assault, Mr. Wishart suffered serious physical injuries to his head, face, neck, torso, left knee and thigh, right foot, and left shoulder. Compl. ¶ 73. He was eventually examined by an orthopedic surgeon and had to undergo two surgeries to repair the injury to his shoulder. *Id.* ¶ 75. Mr. Wishart continues to experience pain from these injuries, some of which are believed to be permanent. *Id.* ¶ 76.

Mr. Wishart's Complaint includes five causes of action. The first three causes of action arise under 42 U.S.C. § 1983: (1) for excessive force in violation of the Eighth Amendment, *id.* ¶¶ 79-85; (2) for unlawful retaliation in violation of the First Amendment, *id.* ¶¶ 86-93; and (3) for failure to intervene to stop the aforementioned constitutional violations, *id.* ¶¶ 94-100. All three

---

[2] OSI found that it was "unsubstantiated" Mr. Wishart was assaulted because he complained about Welkley's behavior, but that finding is belied by the timing of the assault, the fact that the officers lied about assaulting Mr. Wishart, and, according to OSI's own investigation, Soria and Welkley were personal friends. ECF Doc. 17-2 (OSI Report) at 2. There is ample support for a jury to find that Mr. Wishart's assault was the product of a conspiracy between the defendants to retaliate against Mr. Wishart for complaining about Welkley's behavior.

causes of action are pled "[a]gainst [a]ll [d]efendants" and allege that the "Defendants planned, encouraged, and/or participated in the unprovoked physical attack on Wishart," *id.* ¶ 80; and that "the Defendants, working in concert, retaliated" against Mr. Wishart for complaining about Welkley's behavior toward Jane, *id.* ¶ 88. Thus, the three causes of action under § 1983 are based on the defendants' conspiracy to violate Mr. Wishart's constitutional rights while acting under the color of law. The fourth and fifth causes of action arise under 42 U.S.C. § 1985 and § 1986. These claims overlap Plaintiff's § 1983; the only difference is that § 1985 and § 1986 do not require the unconstitutional acts to have been committed by a person acting "under color of law."

## LEGAL STANDARD

### A.    Motion to Dismiss

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The court must "draw inferences from those allegations in the light most favorable to the plaintiff, and construe the complaint liberally." *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007). Facts alleged upon information and belief, as with any factual allegations, must be accepted as true on a Rule 12(b)(6) motion. *Arista Records LLC v. Doe*, 604 F.3d 110, 119-20 (2d Cir. 2010).

Factual allegations that suggest the plausibility, not probability, of an illicit agreement are sufficient to plead a conspiracy. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("[S]tating [a conspiracy] claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."). "It is axiomatic

. . . that 'conspiracies are by their very nature secretive operations that can hardly ever be proven by direct evidence.'" *Victory v. Pataki*, 814 F.3d 47, 68 (2d Cir. 2016) (quoting *Rounseville v. Zahl*, 13 F.3d 625, 632 (2d Cir. 1994)); *see also Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (§ 1983 "conspiracies are by their very nature secretive operations, and may have to be proven by circumstantial, rather than direct, evidence" (internal quotation marks omitted)).

**B.      Stay of Discovery**

"Rule 26(c) provides the Court with discretion to stay discovery 'for good cause.'" *Covell v. Chiari & Ilecki, LLP*, No. 12CV660A, 2013 U.S. Dist. LEXIS 96851, at *9 (W.D.N.Y. July 11, 2013) (internal quotation marks omitted) (quoting Fed. R. Civ. P. 26(c)). "Factors relevant to a court's determination of "good cause" include: the pendency of dispositive motions, potential prejudice to the party opposing the stay, the breadth of discovery sought, and the burden that would be imposed on the parties responding to the proposed discovery." *Ellington Credit Fund, Ltd. v. Select Portfolio Servs., Inc.*, No. 08 Civ. 2437, 2009 U.S. Dist. LEXIS 7905, at *3 (S.D.N.Y. Feb. 3, 2009) (cited in *Covell*, 2013 U.S. Dist. LEXIS 96851, at *9). "Under Rule 26(c), prior to obtaining a protective Order the movants must certify that they have in good faith conferred or attempted to confer with the other affected parties in an effort to resolve the dispute without court intervention." *Covell*, 2013 U.S. Dist. LEXIS 96851, at *9 (citing Fed. R. Civ. P. 26(c)).

Stays of discovery should not be granted simply because the defendant has filed a motion to dismiss. *Moran v. Flaherty*, No. 92 Civ. 3200, 1992 U.S. DIST. Lexis 14568, at *3-4 (S.D.N.Y. Sept. 25, 1992). Indeed, "when the pending motion will not dispose of the entire case," a stay of discovery "is rarely appropriate." *Keystone Coke Co. v. Pasquale*, Civ. Action No. 97-6074, 1999 U.S. Dist. LEXIS 170, at *1 (E.D. Pa. Jan. 7, 1999) (citing *Coca-Cola Bottling Co. of the Lehigh Valley v. Grol*, Civ. Action No. 92-7061, 1993 U.S. Dist. LEXIS 3734 (E.D. Pa. 1993)); *see also*

*Coca-Cola Bottling Co. of the Lehigh Valley*, 1993 U.S. Dist. LEXIS 3734, at *6 ("Motions to stay discovery are not favored because when discovery is delayed or prolonged it can create case management problems which impede the court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems. Requests to stay discovery are rarely appropriate where resolution of the motion to dismiss will not dispose of the entire case.")).

## ARGUMENT

### POINT I

### DEFENDANTS' MOTION TO DISMISS IS FUTILE<br>AND SHOULD BE DENIED AS MOOT

The allegations in the Complaint (and the evidence already exchanged in discovery) show that Welkley and Palistrant, while acting under color of law, initiated the conspiracy to violate Plaintiff's constitutional rights and conspired with the other defendants to do so. Therefore, they are liable as conspirators under 42 U.S.C. § 1983, which is precisely how Plaintiff's first, second, and third causes of action are pled. The only meaningful distinction between Plaintiff's claims under § 1983 and Plaintiff's claims under §§ 1985/1986, are that the latter claims do not have a color of law requirement. Given that the defendants' actions all occurred under color of law, and therefore, support claims under § 1983, Plaintiff is willing to withdraw his §§ 1985/1986 claims, rendering Defendants' motion moot. Since the Complaint includes ample factual allegations to plead a § 1983 conspiracy among all of the defendants – and Defendants have never suggested otherwise – defendants Welkley and Palistrant will remain in the case.

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."

*Pangburn*, 200 F.3d at 72.  There is no doubt that taking the factual allegations in the Complaint as true, *see Erickson*, 551 U.S. at 93, there are ample allegations to support a § 1983 conspiracy among the defendants.  The Complaint alleges that Plaintiff complained to Palistrant about Welkley's harassment of Plaintiff's girlfriend; that Palistrant communicated Plaintiff's complaint to Welkley, Soria, and other officers; that Welkley and Soria were personal friends; that  Welkley and Soria discussed Plaintiff's complaint with all or some of the other Defendants and agreed to punish Wishart for making his complaint; that Soria and other Defendants then assaulted Plaintiff; and finally, that Soria and the other Defendants then created false reports and lied during the official investigation into how Plaintiff was injured.  These facts more than sufficiently plead a § 1983 conspiracy to deprive Plaintiff of his constitutional rights.

The Supreme Court and the Second Circuit have both confirmed that where the defendants conferred shortly before the deprivation of the plaintiff's constitutional rights, one or more of the defendants was personally involved in the constitutional violation, and the circumstantial evidence supports the conclusion that the defendants conspired to deprive the plaintiff of his constitutional rights, the plaintiff's § 1983 conspiracy claim must be allowed to proceed to trial.

In *Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970), the Supreme Court concluded that the plaintiff's § 1983 conspiracy should be tried to a jury.  The plaintiff was denied service at a lunch counter and arrested after leaving the store.  She sued the store owner, S. H. Kress & Co., on the allegation that "a Kress employee, in the course of employment, and a Hattiesburg policeman somehow reached an understanding to deny Miss Adickes service in the Kress store, or to cause her subsequent arrest because she was a white person in the company of Negroes."  398 U.S. at 152.  The Supreme Court concluded that there was a triable issue as to the existence of a conspiracy based on evidence that "there was a policeman in the store at the time of the refusal to

serve [Adickes], and that this was the policeman who subsequently  arrested her"; also, "the sequence of events created a substantial enough possibility of a conspiracy to allow her to proceed to trial, especially given the fact that the noncircumstantial evidence of the conspiracy could only come from adverse witnesses" and there was evidence that the store owner lied about his motivation for denying the plaintiff service.  *Id.* at 156-57.

In *Victory v. Pataki*, the Second Circuit reversed summary judgment for the defendants on plaintiff's § 1983 conspiracy claim since the "Defendants admittedly participated in multiple conversations regarding the potential rescission of Victory's parole," which was the crux of plaintiff's constitutional deprivation claim.  814 F.3d at 68.  The Second Circuit found error in the lower court's decision "that Victory could not establish the agreement necessary to sustain a conspiracy claim due to lack of direct evidence 'that these individuals agreed to anything other than reviewing Plaintiff's parole file.'"  *Id.*

*Adickes* and *Victory* were both decided on summary judgment and thus, presented a higher bar than a basic pleading standard as we have here.  Mr. Wishart's Complaint includes more allegations than the conspiracy evidence available *Adickes* and *Victory* to support a finding of a conspiracy between Welkley, Palistrant, and the other defendants.   Accordingly, a § 1983 conspiracy claim has unquestionably been pled, which makes it unsurprising that Defendants have not moved to dismiss that claim.

Therefore, since the defendants acted under color of law and are liable under § 1983, defendants Welkley and Palistrant will remain in this case even without the §§ 1985/1986 claims. Thus, Plaintiff's willingness to withdraw those claims renders the defendants' motion moot.

## POINT II

## DEFENDANTS HAVE NOT SHOWN GOOD CAUSE FOR A "STAY" OF DISCOVERY

Defendants' request for a "stay" of discovery should be denied because none of the defendants will be dismissed from the case because of the remaining § 1983 causes of action, and defendants give no other reason that they should be allowed to avoid their court-ordered discovery obligations.  Accordingly, defendants have established no cause, let alone good cause, to support a stay of discovery.  *See Ellington Credit Fund, Ltd.*, 2009 U.S. Dist. LEXIS 7905, at *3 ("Factors relevant to a court's determination of 'good cause' include: the pendency of dispositive motions, potential prejudice to the party opposing the stay, the breadth of discovery sought, and the burden that would be imposed on the parties responding to the proposed discovery.").

It is clear that Defendants' motion is an effort not to "stay" discovery but to avoid it altogether.  Defendants seek to be excused from full compliance with the Court's discovery order that required them to collect emails, text, and social media data so that the parties could search the data for relevant communications.  *See* Defs.' MOL (ECF Doc. 24-1) at 4-5.  However, Defendants never objected to that order under Federal Rule of Civil Procedure 72.  In fact, Defendants have repeatedly represented that they were working to comply with the Court's Order.  Now, a month-and-a-half after the Court directed Defendants to gather their electronic communications, Defendants bring this motion acknowledging they have not fully complied with the Court's Order but seeking to avoid compliance with it.  This type of gamesmanship should not be condoned.

This is a transparent effort to belatedly reargue the magistrate judge's discovery order.  The reason Defendants ask for a "stay" – that complying with the Court's discovery order would be too burdensome – is precisely the same argument Defendants made before the magistrate judge in opposition to Plaintiff's motion to compel.  The magistrate judge rejected that argument and

ordered Defendants to gather their electronic communications.   Thus, this motion essentially rehashes an argument Defendants already lost.   Moreover, Defendants' contention that complying with the magistrate judge's ESI Order would be overly burdensome is undercut by their admission that they have already collected most of the relevant data.   *See* Defs.' MOL (ECF Doc. 24-1) at 4. In sum, Defendants have not shown good cause to "stay" or, in reality, overrule the magistrate judge's ESI Order.

The relevancy and importance of Defendants' electronic communications is clear.   What triggered the conspiracy to violate Plaintiff's constitutional rights was his complaint to Officer Palistrant that Officer Welkley was harassing Jane.   Among other things, Welkley had sent Jane harassing emails.   Prior to the magistrate judge's ESI order, defendants said they searched Welkley's email but did not locate any emails with Jane.[3]   Thus, it was clear that Defendants' search was inadequate, or the emails were not preserved; but whatever the reason, the need for a comprehensive collection of ESI data and a thorough search of Defendants' electronic communications was obvious.[4]   Moreover, it is known that Welkley and Soria are friends and this case involves a conspiracy among the defendants to punish Plaintiff for complaining about Welkley's behavior.

This is why the magistrate judge ordered Defendants to collect their ESI in anticipation of a comprehensive search.   Now, over a month later, Defendants admit they have not collected Palistrant's ESI and they want to avoid searching Welkley's ESI altogether – even though they

---

[3] Those emails were obtained and reviewed by OSI in the course of its investigation into this incident.  During Welkley's interview with OSI he acknowledged sending certain emails but claimed he did not recall sending others.

[4] If the search was inadequate, a comprehensive search may turn up the emails with Jane and other probative communications.  If the emails were not preserved, complete ESI data should reveal when the relevant emails were deleted, which could be highly probative of a consciousness of guilt.

have already collected some of Welkley's electronic communications.  This runs directly against the demonstrated need for this evidence and the Court's ESI discovery order.

Accordingly, Defendants' motion should be denied because they have not shown good cause for a stay, nor any other basis to avoid the Court's discovery orders; and the need for this discovery is clear.

## CONCLUSION

For the foregoing reasons, Defendants' partial motion to dismiss is moot and their request for a stay of discovery should be denied.

Dated: New York, New York
        February 21, 2020

Respectfully submitted,

Joshua S. Moskovitz
BERNSTEIN CLARKE & MOSKOVITZ PLLC

Rob Rickner
RICKNER PLLC

*Attorneys for Plaintiff*