UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

GEORGE WISHART,

                        Plaintiff,

-against-                      Index No. 19-CV-6189 (DGL) (MWP)

Correction Officer **PETER WELKLEY** (in his individual capacity), *et al.*,

                        Defendants.

## DECLARATION OF ROB RICKNER, ESQ.

**Rob Rickner, Esq.**, an attorney duly admitted to practice law in the State of New York and the Northern District of New York, declares pursuant to 28 U.S.C. § 1746, under the penalty of perjury, that the following is true and correct:

    1.    I am the owner and managing partner at Rickner PLLC, a small firm in New York City, with offices at 233 Broadway, Suite 2220, New York 10279, and am counsel for Plaintiff George Wishart in this action. I submit this declaration in support of the application for costs in this action, pursuant to this Court's August 26, 2020 Order (Dkt. No. 49).

    2.    I hereby incorporate paragraphs 1 through 16 of the Declaration of Joshua S. Moskovitz, which detail the factual background pertinent to this application.

    3.    On behalf of Mr. Wishart, $475 an hour is a reasonable rate for my work on this matter.

## PAST EXPERIENCE

    4.    I graduated from the University of Vermont in 2000, majoring in Comparative Religion, with a dual minor in Political Science and Sociology. I also studied abroad at the

1

University of Sussex, in England, studying Sociology. Between college and law school, I worked for the non-profit performing arts organizations Burlington Discover Jazz Festival and First Night Burlington, in Vermont. I also worked for a solo practitioner, who was the equivalent of an 18-b public defender, representing indigent clients in Chittenden County, Vermont.

5. I attended Hofstra School of Law on a merit scholarship and graduated *magna cum laude* in 2005. I was also a member of the Hofstra Law Review, and was on the Dean's List every semester. During law school, I interned for a public defender and worked for the New York City Department of Juvenile Justice, drafting policies regarding the treatment of incarcerated minors as well as assisting in disciplining the counsellors (who are largely the equivalent of correction officers in an adult facility).

6. After law school, I received an LL.M. from New York University School of Law, studying internet competition policy and how it intersects with and facilitates free speech, graduating in 2006 with a 3.51 grade point average.

7. I started my career at Quinn Emanuel Urquhart & Sullivan, LLP in 2006, and soon moved to Schiff Hardin LLP, in December 2007. At Schiff, I spent the majority of my time managing the World Trade Center Disaster Site Litigation in the Southern District of New York, representing the Port Authority of New York and New Jersey. In this mass tort, I questioned more than 50 witnesses at depositions, reviewed tens of thousands of pages of medical records, managed a massive document review, drafted motions, and analyzed the liability and damages claims of dozens of exemplar cases. I also worked on several commercial litigation matters, and spent more than 1,000 hours litigating a *pro bono* case, *Joseph S. v. Hogan*, 06-CV-01042 (E.D.N.Y.) on behalf of hundreds of persons with mental illness that were improperly being warehoused in nursing homes, facilities which were ill equipped to handle them and greatly

restricted their freedom. This culminated in a complex settlement with the State of New York at the final pre-trial conference, where the State agreed to release them to less restrictive and more appropriate housing.

8. I left Schiff Hardin in March 2013, following resolution of the Disaster Site litigation and the *Joseph S.* case, in order to find a position that allowed me to focus more on civil rights litigation. During this break, I volunteered approximately 30 hours a week for Justice Barbara Jaffe in the Supreme Court, County of New York, drafting decisions and assisting with tort trials.

9. In August 2013, I joined Eaton & Van Winkle LLP, working with famed first amendment lawyer Martin Garbus, who ran the firm's civil rights group, as well working in the commercial litigation group. At the firm, I handled several first amendment cases, as well as several wrongful conviction cases, including representing Eric Glisson in his civil suit against the City of New York. Mr. Glisson, along with four others, was wrongfully convicted of murder in the 1990s. Mr. Glisson was exonerated with help from the United States Attorney for the Southern District of New York, Preet Bharara, who devoted a chapter of his book, Doing Justice: A Prosecutor's Thoughts on Crime, Punishment, and the Rule of Law, to Mr. Glisson's exoneration. After he was exonerated, Mr. Glisson filed a civil suit along with his codefendants, which resolved for a record breaking $40 million in 2016, second only to the settlement of the Exonerated Five cases (often called the Central Park Five).[1]

## RICKNER PLLC

10. In August 2016, I started working for Glenn A. Garber, a wrongful conviction attorney who runs the Exoneration Initiative, litigating civil suits stemming from wrongful

---

[1] https://www.nytimes.com/2016/04/22/nyregion/new-york-city-settling-with-5-over-wrongful-murder-convictions-in-bronx.html

convictions. And in March 2017, I started Rickner PLLC, continuing my work with Mr. Garber as co-counsel on several civil cases stemming from wrongful convictions. I have also represented approximately 100 other people in civil rights cases related to police misconduct and the conditions of incarceration.

11.     Recent settlements include three multi-million dollar settlements of wrongful conviction cases in the Court of Claims against the State of New York, as well as resolving numerous cases against the United States of America based on deficient medical care in federal prisons.

12.     I have argued five appeals in the Second Circuit Court of Appeals over the last year, most recently winning dismissal of an interlocutory appeal in *Swain v. Town of Wappinger, et al.*, 19-2392, as well as being chosen to handle an *amicus* brief in the Second Circuit on behalf of a group of medical professionals in *Yang v. New York State Board of Election*, 20-1494, which successfully challenged the State of New York's wrongful cancellation of the democratic primary.

13.     I have been lead counsel in six trials, and second chair in three others, including a $650,000 verdict in the Eastern District of New York as lead counsel for a woman who was wrongfully arrested and held overnight in a cell by New York City Police Department Officers.[2]

14.     Rickner PLLC has been successful for more than three years, and has recently expanded by hiring an associate.

15.     I have also been named a Super Lawyer in the area of Civil Rights from 2018 to 2020, and a Super Lawyer Rising Star from 2014 through 2016.

---

[2] *Natoo, et al. v. The City Of New York, et al.*, 16-cv-00502-SJ-SMG (E.D.N.Y.).

## HOURLY RATES

16.    I have consistently billed my time at a rate of over $400 an hour since 2013. At Schiff Hardin, my standard rate in 2013 was $425.00. *See* Exhibit A (Declaration of Paul Scrudato). At Eaton & Van Winkle LLP, I regularly billed at rates ranging from $400.00 to $500.00. *See* Exhibit B (Declaration of Vincent J. McGill). At Rickner PLLC, I work almost exclusively pursuant to contingency fee or partial contingency fee arraignments, even for my commercial practice. Although recently, I agreed to represent my office neighbor's family at a discounted rate of $400.00 an hour, and secured dismissal of several commercial claims against them in a case in the Commercial Division of the New York Supreme Court, County of New York.

17.    If I accepted hourly clients as a matter of course, I would charge $475.00 an hour for my work. Based on my experience as a commercial litigator, this rate is comparable to other large firm trained attorneys with 15 years of experience who have moved to boutique firms or started their own practices in New York City. Further, having litigated in multiple areas at two national firms and a midsized Manhattan firm, I can attest to the fact that civil rights cases, which involve difficult factual scenarios and complicated constitutional questions, are at least as complicated if not more complicated than the complex commercial cases and mass torts I litigated for a decade before starting Rickner PLLC.

18.    The United States Attorney's Office for the District of Columbia has chart for what it considers reasonable hourly rates for attorneys at various experience levels – specifically for determining what a reasonable fee is under the various fee shifting statutes.[3] This chart states

---

[3] *Available at* https://www.justice.gov/usao-dc/page/file/1189846/download

that a reasonable fee for an attorney in the District of Columbia, a similar market to New York, with 11 to 15 years of experience, is $510 an hour. Thus, based on this chart, the United States would not only consider my rate reasonable, it would likely not contest an even higher rate if I made an application in a federal case in the District of Columbia.

## OUT OF DISTRICT REPRESENTATION

19. The fee provisions in 42 U.S.C. § 1988 are designed to encourage attorneys to take civil rights cases. *See Kates v. Waye*, No. 16-CV-6554 (CJS), 2018 WL 11016522, at *1 (W.D.N.Y. Feb. 6, 2018) (finding that an inmate did not need appointed counsel because the fee awards under 42 U.S.C. § 1988 should be enough to attract private counsel).

20. In practice, however, very few attorneys will accept cases related to the conditions of confinement in a New York State prison, and incarcerated persons often have great difficulty obtaining counsel. I receive letters every month from facilities run by the New York State Department of Correction and Community Supervision, and I only take a small fraction of the cases that are referred to me or where the potential client contacts me directly. The cases are legally complex and the defendants litigate them vigorously. Many civil rights attorneys will not take them, even with the chance of a fee award.

21. I recently reviewed filings in the Western District of New York, to see whether attorneys in the Western District are accepting and litigating these cases. It is apparent they do not. On PACER, I searched for cases that listed the Nature of Suit as 440 (Civil Rights: Other), 555 (Habeas Corpus (Prison Condition)), and 560 (Prisoner Petitions: Civil Detainee: Conditions of Confinement). These designations cover the various cases that are similar to Mr. Wishart's claims here. Reviewing a six-month period, approximately three months before Mr. Wishart filed suit and approximately three months after he filed suit, I found that out of 137 cases, 45 did not

involve incarcerated persons or the conditions of confinement (mostly police misconduct cases), 87 were *pro se*, and 5 had plaintiffs who were represented by counsel. One is represented by local counsel that was court appointed, not retained. One is represented by counsel from New York City, along with local counsel in Buffalo, New York, and three are represented by out of district counsel (one of which is Mr. Wishart). A chart of this review is attached as Exhibit C.

22. While several of these *pro se* cases likely did not have merit and were dismissed quickly, more than a year later many are still pending and certainly some have merit. But attorneys in the Western District of New York are not agreeing to represent these plaintiffs. Three out of the four cases with retained counsel are represented by firms in New York City.

23. This conclusion is supported by my colleague, Elliot Dolby-Shields, who is also based in New York City, and who litigates complex civil rights claims in the Western District of New York. As stated in his Declaration, attached as Exhibit D, he is regularly called upon to litigate civil rights claims in Rochester because there are few lawyers who handle these cases locally.

24. In fact, I represent the Plaintiff in *Epps v. City of Buffalo*, 19-cv-281, which is also on Exhibit C. This is a complex 42 U.S.C. § 1983 case, involving a wrongful conviction and more than twenty years in custody. Mr. Epps sought counsel in New York City for both his exoneration and his civil rights claim.

25. In sum, it was necessary for Mr. Wishart to look for counsel outside the Western District of New York, and thus it is reasonable to apply the rates charged by firms in New York City.

## HOURS IN THIS ACTION

26. I spent 16.8 hours litigating the issues here. I track my time contemporaneously using an application called Toggl, and this time represents the actual time I spent working.

27. A copy of my contemporaneous time records is attached as Exhibit E.

WHEREFORE, I request the Court issue sanctions requiring Defendants and/or their counsel to pay Plaintiff's full costs in litigating this issue, including the costs associated with my work as described above, which totals $7,980.00.

Dated: New York, New York
September 23, 2020

RICKNER PLLC

By: _____/s/_____
     Rob Rickner

The Woolworth Building
233 Broadway Suite 2220
New York, New York 10279
Phone: (212) 300-6506

*Attorneys for Plaintiff George Wishart*