UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

GEORGE WISHART

                        Plaintiff,

v.                                    DECISION & ORDER

PETER WELKLEY ET AL.,            19-CV-6189-DGL-MJP

                        Defendants.

---

**Pedersen, M.J.** On October 22, 2020, Plaintiff's counsel filed a motion for sanctions and to compel production of electronically stored information ("ESI") (Pl.'s Mot. to Compel and for Sanctions, ECF No. 64.) The supporting memorandum (Pl.'s Mem. in Supp. ECF No. 66) states that Plaintiff moves the Court to:

> (1) transmit all of the ESI data they have collected, in native format, to the e-discovery firm 4Discovery to process the data, preserve metadata, and put it into a searchable form, and then transmit it to Nextpoint, which has a platform for efficiently running Boolean searches across all the data; (2) provide access to the devices and accounts that have not been properly collected so that 4Discovery can complete ESI collection in a forensically sound manner; (3) pay the full cost of 4Discovery and Nextpoint's work, including the work that 4Discovery has already performed in conferring with Defendants' expert and identifying the problems with Defendants' ESI collection; and (4) pay the reasonable expenses Plaintiff has incurred in litigating the issue of e-discovery going back to Plaintiff's initial November 2019 letter motion; and for such other and further relief as this Court may deem just and proper.

(Pl.'s Mem., ECF No. 66, 1–2.) Defendant has filed a memorandum in opposition to the motion (ECF No. 75) stating that the application for sanctions should be denied in its entirety and Plaintiff should bear the cost for any additional ESI extractions, or that the currently extracted ESI should be searched to determine if further ESI extraction is warranted. The Court will discuss each issue in turn.

*ESI Extractions*

Plaintiff discusses the long history of discovery issues in this case, such as the defense providing .avi files of the social media discovery which the in-house expert for the defense was unable to provide assurances that the produced ESI was in a format that would preserve the metadata and provide for machine searching. (Moskovitz Decl. ¶ 29, ECF No. 65.) The Court had ordered the information produced "in a format that can be readily searched and not in a static format." (Dec. & Order at 4, Aug. 26, 2020, ECF No. 49.) Defendant's in-house ESI extraction attempt does not appear to be geared toward what ESI in a civil case requires. (Moskovitz Decl. ¶ 29.) The .avi files the defense provided to Plaintiff are not readily searchable and with one hundred or more gigabytes of data for each defendant, it would be an insurmountable task to comb through the information without the benefit of a machine search function. As such, utilizing a third party that is an ESI investigator by trade would resolve the formatting issues of the ESI in this case. Further, to ensure a complete compilation of ESI, all discovery items and materials collected thus far should be sent to the vendor for proper extraction into a machine-readable format. Plaintiff outlines a possible solution in the declaration of Joshua S. Moskovitz (ECF No. 65) where he proposed that the ESI retrieval company 4Discovery handle the searches on the cell phone data, and a second company, Nextpoint, handle the remaining data. (Moskovitz Decl. ¶¶ 36–40.) According to Plaintiff, this will reduce the cost of producing ESI.

On May 12, 2020, defense counsel submitted a declaration in opposition to Plaintiff's motion concerning Defendants' non-compliance with the Court's e-

2

discovery orders. (Deutsch Decl., ECF No. 43.) In that declaration, defense counsel declared "under penalty of perjury":

> In its April 16, 2020 Order, the Court required Defendants to produce electronic (ESI) discovery, and for the parties to confer on April 30, 2020 about said production. Defendants have complied with that Order in every respect. As detailed below, phones in Defendants' possession (whether in working order or not) have been provided to the Attorney General's White Plains laboratory for extraction of data, and the logins and passwords for email and social media accounts were provided to the lab.

(Deutsch Decl. ¶ 2.)

On May 22, 2020, defense counsel emailed a discovery update which indicated again that defendant Opperman's Samsung Galaxy 8 phone "was collected and extracted." (E-mail from Hillel Deutsch, Defs.' Counsel, to Joshua S. Moskovitz and Rob Rickner, Pl.'s Counsel at 1 (Attached to Moskovitz Decl. as Ex. 3, ECF No. 65-3)). In his email, defense counsel also said that "[s]ocial media was only extractable in .avi files which are not searchable by keyword and could not be OCR'ed. Searches for keywords will be done visually." (*Id.*) This was the first time that defense counsel indicated the method his office had used to collect email and social media data—although the Court had directed Defendants to provide information about the extraction method three months earlier (Order Granting Mot. to Compel, Feb. 28, 2020, ECF No. 29 ("Accordingly, Defendants are directed to file a response with regard to why they have not complied with the Court's prior order to extract cell phone data from Defendant Palistrant and Defendant Swiatowy, collect the email and social media data from all defendants, and provide the Court and Plaintiff's counsel with the methods used to collect the electronic information.")) On June 18,

2020, defense counsel sent another email about the progress of e-discovery. In that email, he stated that "Mr. Swiatowy's phone, the last outstanding piece of electronic discovery . . . was sent into the lab." ." (E-mail from Hillel Deutsch, Defs.' Counsel, to Joshua S. Moskovitz and Rob Rickner, Pl.'s Counsel at 1 (Attached to Moskovitz Decl. as Ex. 4, ECF No. 65-4.))

*ESI Cost Shifting*

Defendants contend that Plaintiff should pay for the remaining ESI in this case because Defendants, in order to comply with Plaintiff's requests, "will be repeating significant amounts of work that have already been done, will be doing work that is entirely unnecessary, and will be charged an exorbitant amount to do so, given the extremely limited parameters of the case. Plaintiff's counsel also insisted that Defendants alone bear this significant and largely unnecessary cost, despite the caselaw showing that they should bear the burden." (Defs.' Mem. in Opp'n at 7, ECF No. 75.) Defendants argue they should not be required to pay for electronic discovery, as the facts in this case fail the test set forth in *Zubulake* and its progeny. *See Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309 (S.D.N.Y. 2003.)

Under *Zubulake*, while the party possessing the data generally bears the cost of production, the burden is shifted when appropriate. The determination about shifting the costs is made based on seven factors, which are applied whenever the data is difficult to access. The seven factors to be considered are:

> 1. The extent to which the request is specifically tailored to discover relevant information;
>
> 2. The availability of such information from other sources;

      3. The total cost of production, compared to the amount in controversy;

      4. The total cost of production, compared to the resources available to each party;

      5. The relative ability of each party to control costs and its incentive to do so;

      6. The importance of the issues at stake in the litigation; and

      7. The relative benefits to the parties of obtaining the information.

*Zubulake*, 217 F.R.D. at 322. These factors are not weighted equally. As *Zubulake* framed it, "the central question must be, does the request impose an 'undue burden or expense' on the responding party? Put another way, 'how important is the sought-after evidence in comparison to the cost of production?'" (*Id.*)

      The *Zubulake* court combined the first two factors into a "marginal utility" test: "'The more likely it is that the [ESI] contains information that is relevant to a claim or defense, the fairer it is that the [responding party] search at its own expense. The less likely it is, the more unjust it would be to make the [responding party] search at its own expense.'" *Id.* at 323 (quoting *McPeek v. Ashcroft*, 202 F.R.D. 31, 34 (D.D.C. 2001)).

      Plaintiff has quoted the cost of producing and searching the ESI Plaintiff has requested to be around $35,000 (or less than $4,000 per defendant). While that is a large sum, the crux of Plaintiff's claim will come from ESI. An example of such ESI would be the harassing emails one of the defendants allegedly sent to Plaintiff's girlfriend. As Plaintiff's case weighs heavily on the production of ESI, the cost to produce it in a readily searchable form is outweighed by the information that might be revealed.

The third factor—the cost compared to the amount in controversy—is not strong one either for, or against, shifting the burden. Plaintiff is demanding a service which is estimated to cost $35,000. While no specific amount has been named in damages, this is an alleged assault where the recorded injuries to Plaintiff were a 1.2-centimeter scratch and slight redness to the front of the head. Plaintiff also claims that the surgery to his left shoulder he received in November 2016 was necessitated by the alleged March 2016 incident, either by exacerbating a prior condition or creating a new injury. Defendants speculate that even if a jury found in favor of Plaintiff, the damages in this case would not exceed $35,000. The Court is not inclined to speculate as to the damages that might be attributable to Defendants.

The fourth factor, cost relative to ability to pay, militates against shifting costs, as Defendants' defense is being paid for by the State.

The fifth factor, the relative ability of each party to control costs and its incentive to do so, weighs in favor of Plaintiff. While Defendants claim that submitting the ESI to another expert is unnecessary and expensive, it was Defendants who early on claimed that the ESI it produced would be searchable. Aside from being unable to access several accounts, the data presented was in an .avi format—a video. Videos such as these are not readily machine searchable. Defendant said in an email to Plaintiff that "[s]ocial media was only extractable in .avi files which are not searchable by keyword and could not be OCR'ed. Searches for keywords will be done visually." (E-mail from Hillel Deutsch, Defs.' Counsel, to Joshua S. Moskovitz and Rob Rickner, Pl.'s Counsel at 1 (Attached to Moskovitz Decl. as Ex. 3,

6

ECF No. 65-3.)) The email was the first time that defense counsel provided the method his office had used to collect email and social media data, despite the Court having directed Defendants to produce this information three months earlier. Defendant spent months preparing ESI in an essentially unsearchable format. Each defendant had 100 or so gigabytes of discovery. Manually reviewing the discovery by watching a video to find relevant evidence would be unduly burdensome. Although there was a cost associated with preparing the .avi files, had the discovery been done properly in the first place, the parties would not have had to endure the cost of litigating this matter, as well as the cost of the ineffective in-house extraction.

Regarding the sixth factor, the importance of the issues at stake, *Zubulake* notes it "will only rarely come into play" and this is not one of those rare exceptions. *Zubulake*, 217 F.R.D. at 323. This case is tort. It is not a class action, and Plaintiff seeks only financial recompense as a remedy. This case does not have "the potential for broad public impact" envisioned by *Zubulake*. *Id*. at 321.

Finally, regarding the seventh factor, the importance of the discovery to both the parties, *Zubulake* notes it "is the least important because it is fair to presume that the response to a discovery request generally benefits the requesting party." *Id*. at 323. That is certainly the case here. Accordingly, the seventh factor does not functionally come into play.

After reviewing the *Zubulake* criteria, the Court concludes that in the circumstances presented in this case, the cost of producing the ESI in a format that can be machine searchable should be borne by the defense. Early on in this case, the

Court discussed the need for extraction of the data in a way it could be searched, and defense counsel assured court and counsel that DOCCS's in-house employees could do so. After several months, we now learn that is not true. The .avi files are woefully inadequate to the task of discovering relevant evidence in this case, which will heavily depend on ESI. Accordingly, the Court directs Defendants to bear the reasonable cost of extracting the data into a machine searchable format. Plaintiffs will bear the cost of taking the native data and searching it for relevant evidence.

*Motion for Sanctions*

As a sanction for its delays and misrepresenting the abilities of the DOCCS's in-house personnel to extract the data in native format, the Court grants Plaintiff's motion for sanctions (ECF No. 64) and directs Defendants to pay the reasonable costs for litigating this e-discovery issue. Plaintiff is directed to submit an itemized bill within 10 days of the date this Decision and Order is docketed for the Court's review, with a copy to defense counsel. Defendants shall have 7 days following the service of the itemized bill to submit any response.

*Motion to Compel Regarding* in Camera *Review*

Plaintiff also filed a motion to compel Defendants to comply with the Court's August 18, 2020, Order regarding an *in-camera* review of certain records. (ECF No. 52.) Defendant complied with the Court's August 18, 2020, Order by submitting the required documents for *in camera* review, on time and properly. Therefore, this motion is denied as moot.

*Motion to Amend Declaration*

Defendant has filed ECF No. 81, seeking leave to amend Defendants' Opposition by filing the correct, signed declaration. Defense counsel explained:

> Second, regarding the Declaration of Tony Angiulo, which was filed as part of Defendants' Opposition to Plaintiff's Sanctions Motion on November 20, (D.N. 75) it is evident that the wrong document was filed in error. I drafted a declaration for Mr. Angiulo's review based on my recollection of our conversations and sent it to him for review. He consulted his notes and made changes. Included in the changes based on his notes was the fact that he received Mr. Opperman's phone in February, not April as was indicated in my initial draft. While the final, signed version should have been filed, the original draft was filed in error. While I believe this error occurred because of Covid restrictions (because the office works limited shifts in the office, my secretary and I are not physically in the office at the same time), I take full responsibility for the error and apologize for it.

(Letter to the Court from Hillel Deutsch, Ass't N.Y. Att'y Gen'l at 1 (Dec. 18, 2020), ECF No. 81.) In order to correct the record, the Court grant's defense counsel's request to substitute the corrected declaration from Tony Angiulo.

*Motion to Strike*

Defense counsel has filed a motion to strike (ECF No. 78), which is included with the aforementioned declaration. Defense counsel has since filed a letter to the Court withdrawing the motion to strike. (Letter to the Court from Hillel Deutsch, Ass't N.Y. Att'y Gen'l at 1 (Dec. 18, 2020), ECF No. 81.) Therefore, the Court denies Defendants' motion to strike (ECF No. 78) as it is moot.

Further, defense counsel's motion to strike included an alternate relief for permission to file a sur-reply. Defendants seek to file a sur-reply to Plaintiff's motion for sanctions because, Defendants claim, "many new facts were raised – and, frequently, mischaracterized – in Plaintiff's Reply papers." (Defs.' Mem. in Supp. at

9

2, ECF No 78–1.) However, the only stated inaccuracy Defendants point to is actually supported by one of their sworn affidavits. Defendants argue that Plaintiff falsely asserted in his reply papers that "Opperman submitted his phone to the Attorney General's lab in April." *Id.* Defendants claim this assertion was "patently false" because "[t]he sworn statement from the lab representative, which was attached to Defendants['] opposition, stated the phone had been received in February." (*Id.* at 3 (citing Defs.' Mem. in Opp'n, ECF No. 75)). The lab representative's sworn declaration, which is attached to Defendants' memorandum in opposition, states: "I did receive a Samsung Galaxy phone from Mr. Opperman in April of 2020" (Decl. of Angiulo, ECF No. 75-1, ¶ 3). As the issue of sanctions has been already discussed at length above and because Defendants do not show new facts or mischaracterizations that were raised, the Court denies the alternative relief to file a sur-reply (ECF No. 78).

## CONCLUSION

The Court grants Plaintiff's motion for sanctions and to compel production of documents. (ECF No. 64.) Counsel for Defendants and Plaintiff are directed to meet and confer within 10 days of the docketing of this Decision and Order to choose an ESI vendor or vendors. Defendants will pay the cost to: (1) transmit all of the ESI data Defendants have collected, in native format, to the chosen ESI vendor; (2) pay for and provide access to the devices and accounts that have not been properly collected so that the chosen ESI vendor can complete ESI collection in a forensically sound manner; (3) pay the full cost of the work that 4Discovery has already performed in conferring with Defendants' expert and identifying the problems with Defendants'

10

ESI collection; and (4) pay the reasonable expenses Plaintiff has incurred in litigating the issue of e-discovery.

The Court denies Plaintiff's motion to compel (ECF No. 52) as moot. The Court grants Defense counsel's motion to substitute the corrected declaration from Tony Angiulo (ECF No. 81). The Court denies Defendants' motion to strike, or in the alternative, for leave to file a sur-reply (ECF No. 78).

**SO ORDERED**.

DATED: January 27, 2021
Rochester, New York

_____
MARK W. PEDERSEN
United States Magistrate Judge