**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X

GEORGE WISHART,

                                        Plaintiff,

                    -against-

Correction Officer PETER WELKLEY (in his
individual capacity), Correction Officer CEDRIK
SORIA (in his individual capacity), Correction Officer
JOSEPH SULLIVAN (in his individual capacity),
Correction Officer W. MARYJANOWSKI (in                        No. 19 Civ. 6189 (DGL) (MJP)
his individual capacity), Correction Officer PAUL
PALISTRANT (in his individual capacity), Correction
Officer SWIATOWY (in his individual capacity),
Correction Officer MITHADRILL (in his individual
capacity), Correction Sgt. JAMES OPPERMAN (in his
individual capacity), Correction Sgt. EDWARD RICE
(in his individual capacity), and Correction Lt. BRIGHT
(in his individual capacity).

                                        Defendants.

-----------------------------------------------------------------------X

**PLAINTIFF'S RESPONSE TO DEFENDANTS' LOCAL CIVIL RULE 56 STATEMENT**
**AND STATEMENT OF ADDITIONAL MATERIAL FACTS**

        Pursuant to Local Civil Rule 56, Plaintiff George Wishart hereby responds to Defendants'

Local Civil Rule 56 Statement of Material Facts, Dkt. 155-1, and sets out his Local Civil Rule 56

Statement of Additional Material Facts in opposition to Defendants' Motion for Summary

Judgment. The exhibits referenced herein are annexed to the accompanying February 12, 2024

declaration of Joshua S. Moskovitz ("Moskovitz Decl.").

## I.      Plaintiff's Response to Defendants' Local Civil Rule 56(a)(1) Statement

1.      On March 14, 2016, at approximately 10:50am, while incarcerated at Orleans Correctional Facility, Plaintiff was in the bathroom when a fight between two other incarcerated individuals broke out on the C-2 dorm.

**RESPONSE:** Undisputed.[1]

2.      Corrections staff responded to the incident, including Defendant Officers [sic] Sullivan, who entered the bathroom and saw Plaintiff Wishart.

**RESPONSE:** Disputed in part. Plaintiff does not dispute that Defendant Sullivan entered the bathroom while Plaintiff was present. Plaintiff disputes that Defendant Sullivan entered the bathroom in response to the fight referenced by Defendants, as well as any implication that Defendant Sullivan was the only officer present in the bathroom, because Defendants Maryjanowski and Soria were also present. *See* Ex. A (Wishart Dep. Tr.) at 38:15-20, 43:13-24, 47:23-6, 146:12-25; Ex. I (Sullivan-Soria Inmate Misbehavior Report); Ex. K (Maryjanowski Memo); Ex. M (Soria Memo); Ex. N (Sullivan Memo).

3.      Per the sustained misbehavior report, he [Defendant Sullivan] instructed Plaintiff to leave the bathroom and he did not do so. Defendant Officer Soria entered the bathroom, ordered Plaintiff to comply, and he again refused. The remaining incarcerated individuals in the bathroom, were ordered to leave and complied; at this point Plaintiff also complied. Once in the vestibule, Plaintiff was resistant to a pat frisk and verbally harassed Officers Sullivan and Soria for performing the frisk.

---

[1] By responding that a particular fact is undisputed, Plaintiff indicates only that it is undisputed for purposes of this motion, not that it is undisputed for all purposes, and Plaintiff does not concede that the fact in question is material; the facts essential to the questions at issue on this motion for summary judgment—the truly material facts— are all in dispute.

**RESPONSE:** Disputed in part. While Plaintiff does not dispute that the inmate misbehavior report referenced by Defendants, which was completed by Defendant Sullivan and approved by Defendant Soria, recounts this series of events, Plaintiff disputes any implication that this report accurately recounts the relevant events. *See generally, infra* ¶¶ 11-39.

4.      Following the pat frisk, Defendants Sergeant Opperman and Officer Maryjanowski escorted Plaintiff to the infirmary without incident.

**RESPONSE:** Disputed. Plaintiff disputes that he was subject to a "pat frisk"; he wasn't, he was brutally assaulted. *See infra* ¶¶ 11-39. Plaintiff also disputes that he was escorted to the infirmary "without incident" because Defendant Opperman threatened Plaintiff not to report the assault he had just endured during the escort, *see* Ex. A. (Wishart Dep. Tr.) at 165:8-18, and Defendant Sullivan, who was also present for this escort, *see id.* at 163:19-25, referenced Plaintiff's complaint about Defendant Welkley during this escort, *see id.* at 163:19-164:6.

5.      Plaintiff remained in the area of the infirmary for several hours before he was seen by medical staff, who noted Plaintiff had "a 1.2cm superficial scratch with 1" of swelling to the right occipital area" and "redness to the right lateral forehead with no swelling."

**RESPONSE:** Undisputed, except to clarify that Plaintiff disputes any implication that the injuries referenced in the medical report are all of Plaintiff's injuries. *Compare* Ex. A (Wishart Dep. Tr.) at 168:22-169:6 *with* Ex. H. (Bright Inmate Injury Report).

6.      Plaintiff complained of numerous other injuries, but, following examination, none were seen by medical staff.

**RESPONSE:** Disputed in part. Plaintiff does not dispute that he complained of numerous injuries, but disputes that medical staff did not see these injuries because a number of Plaintiff's

injuries were obvious and noted by investigators from the Office of Special Investigation ("OSI") the same day. *See* Ex. U (OSI Report) at 2; Ex. V (OSI Report of Wishart Interview) at 2.

      7.    Officer Palistrant was not in the facility on the date of the Incident; it was his regular day off.

      **RESPONSE:** Disputed. While Defendant Palistrant testified in his deposition to this effect, Plaintiff testified in his deposition that Defendant Palistrant was present at Orleans Correctional Facility on March 14, 2016, the day of the incident. *See* Ex. A (Wishart Dep. Tr.) at 162:3-9.

      8.    Officer Welkley was not in the facility on the date of the Incident; he was out on administrative leave.

      **RESPONSE:** Disputed. According to his own deposition testimony, Defendant Welkley was present at Orleans Correctional Facility, and indeed in the specific dormitory in which Plaintiff was assaulted, on March 14, 2016, the day of the incident. *See* Ex. B (Welkley Dep. Tr.) at 121:10-21, 128:4-10. Defendant Welkley was not placed on administrative leave until after the events of March 14, 2016. *Id.* at 32:14-21.

      9.    At his deposition, Plaintiff testified he did not know the name of the sergeant involved in the Incident, but recollected him as "the one with the glasses" and arm tattoos. Sergeant Opperman does have tattoos on his arms, but did not wear glasses at the time, as his only glasses were reading glasses which would have actively preventing him from doing his job of responding to an incident and escorting Plaintiff to the infirmary.

      **RESPONSE:** Disputed. During his deposition, Plaintiff specifically identified Defendant Opperman by name multiple times as an officer who threatened and assaulted Plaintiff, and noted that Defendant Opperman wears glasses as a general matter. Ex. A (Wishart Dep. Tr.) at 42:2-11,

160:13-20. Although he claims he was not wearing glasses at the time of this incident, Defendant Opperman admits that he wears glasses. *See* Dkt. 155-2 ¶ 6. Plaintiff's testimony that Opperman wears glasses is corroborated by another incarcerated individual interviewed by OSI investigators. Ex. U (OSI Report) at 3-4; Ex. W (OSI Report of Inmate Interviews.). Additionally, Defendant Opperman has acknowledged that he was present in the area at the time of this incident and that he interacted with Plaintiff. Ex. L (Opperman Memo).

10.   At least four other sergeants besides Opperman were present for the Incident; at least one of them wore glasses.

**RESPONSE:** Disputed. The sole authority Defendants cite for this proposition is a self-serving declaration, *see* Dkt. 152-2 (Opperman Decl.) ¶ 3, signed by Defendant Opperman for purposes of this motion, that contradicts Defendant Opperman's own sworn testimony to OSI investigators less than a month after the incident. To wit, Defendant Opperman told OSI investigators that only one other supervisor, a female sergeant, was present in the dormitory in which Defendants' assault occurred. *See* Ex. Q (Opperman OSI Tr.) at 10:3-10.

11.   Plaintiff's medical records show that in the decade prior to the Incident he saw medical staff dozens of times for shoulder pain, received numerous orthopedic consults at outside hospitals for his shoulder pain, received medication, physical therapy and special accommodations for his shoulder pain.

**RESPONSE:** Undisputed.

12.   In a federal court pleading in 2006, Plaintiff alleged that he had suffered a permanent deformity to his shoulder.

**RESPONSE:** Undisputed.

13.     After examining these records, board-certified orthopedic surgeon Dr. Peter Gambacorta concluded "if there was an alleged assault on the claimant the left shoulder injury was pre-existing, and any pathology associated with the shoulder is unrelated to this incident."

**RESPONSE:** Plaintiff disputes the contention that the injury sustained to his left shoulder and the two surgeries he received following the March 14, 2016 assault were unrelated. *See* Ex. Y (Dr. Stein Report).

14.     At no point in his deposition testimony did Plaintiff testify that Defendants Rice or Swiatowy were present at the Incident or that they were involved in the Incident.

**RESPONSE:** Disputed. In the first instance, Plaintiff was never specifically asked during his deposition if Defendants Rice and Swiatowy were present during the assault, and other incarcerated individuals interviewed by OSI identified both Defendants Rice and Swiatowy as present during Defendants' assault. *See* Ex. U (OSI Report) at 4; Ex. W (OSI Report of Inmate Interviews). Additionally, Plaintiff testified about both Defendants Swiatowy and Rice in his deposition, although Plaintiff's references to Defendant Rice were transcribed phonetically as "Reis," which is coincidentally the name of another corrections officer at Orleans Correctional Facility. *See* Ex. A (Wishart Dep. Tr.) at 55:2 (court reporter noting that "Reis" is a phonetic spelling).

15.     Plaintiff does know when or how the alleged conspiracy occurred.

**RESPONSE:** Disputed. As set forth in Plaintiff's accompanying memorandum of law, this assertion is legally and factually incorrect. The circumstantial evidence of Defendants' conspiracy includes, without limitation: that Defendant Palistrant told other officers of Plaintiff's complaint about Defendant Welkley within 24 hours of Plaintiff's complaint, *see infra* ¶ 9; that Plaintiff was assaulted only sixteen days after making this complaint, *id.* ¶ 11; that correction officers

continually referenced Plaintiff's complaint during those sixteen days, *id.* ¶ 10; that Defendants repeatedly referenced Plaintiff's complaint during and after the assault, *id.* ¶¶ 40-48; that Defendants threatened Plaintiff to prevent him from reporting the assault *id.* ¶¶ 49-51; that Defendants filed false reports about the assault, *id.* ¶¶ 59-70; that Defendants discussed their reports amongst themselves, *id.* ¶ 69; that Defendants had Plaintiff sent to solitary confinement to keep him from reporting the assault, *id.* ¶ 63; that Defendants discussed their interviews amongst themselves, *id.* ¶ 73; that Defendants lied to investigators, *id.* ¶¶ 74-80; and that Defendants have close personal relationships, *id.* ¶ 87.

## II.       Plaintiff's Local Civil Rule 56(a)(2) Statement of Additional Material Fact

1.       On March 14, 2016, Plaintiff was incarcerated at Orleans Correctional Facility, and he had been incarcerated at Orleans for approximately one year at this time. Ex. A (Wishart Dep. Tr.) at 30:7-16.

### *Plaintiff Complains of Defendant Welkley's Inappropriate Contact with Plaintiff's Girlfriend*

2.       While Plaintiff was incarcerated at Orleans, his girlfriend, "Jane,"[2] would visit him regularly. Ex. A (Wishart Dep. Tr.) at 133:13-15.

3.       Defendant Peter Welkley inappropriately harassed Jane, including by touching her in Orleans' visiting room and sending her salacious emails that Defendant Welkley knew were "illegal" and "probably unethical." Ex. A (Wishart Dep. Tr.) at 135:20-136:12; Ex. B (Welkley Dep. Tr.) at 27:10-17, 35:15; Ex. U (OSI Report) at 1-3, 5.

4.       Defendant Welkley's behavior toward Jane violated departmental policy. Ex. B (Welkley Dep. Tr.) at 26:9-15, 27:1-9.

5.       Jane told Plaintiff about Defendant Welkley's inappropriate behavior in February 2016. Ex. A. (Wishart Dep. Tr.) at 33:15-18, 34:6-19, 35:7-10.

6.       On February 29, 2016, Plaintiff wrote a grievance regarding Defendant Welkley's misbehavior. Ex. A. (Wishart Dep. Tr.) at 35:7-10, 137:8-14; Ex. X (Wishart Grievance).

7.       On February 29, 2016, Plaintiff complained of Defendant Welkley's misbehavior to Defendant Paul Palistrant, who was present at Orleans on March 14, 2016 when officers assaulted Plaintiff. Ex. A (Wishart Dep. Tr.) at 35:7-36:17, 162:3-9.

8.       Plaintiff's complaint to Defendant Palistrant was the necessary first step to initiate the grievance process. Ex. A (Wishart Dep. Tr.) at 35:11-15, 37:17-21.

---

[2] Plaintiff's fiancé's name is withheld to spare her further embarrassment and humiliation. She is referred to herein as "Jane," as she has been throughout this litigation. *See* Dkt. 1 (Compl.) at ¶ 39.

9.      Within 24 hours of Plaintiff's complaint, Defendant Palistrant had told other officers in the unit that Plaintiff complained about Defendant Welkley's misbehavior. Ex. A (Wishart Dep. Tr.) at 36:10-22.

10.      During the succeeding two weeks, "every officer in [Plaintiff's] unit knew about [Plaintiff's complaint]," and correction officers and incarcerated individuals in Plaintiff's unit repeatedly referenced Plaintiff's complaint and Defendant Welkley's emails to Jane. Ex. A (Wishart Dep. Tr.) at 36:12-17, 190:7-191:20; Ex. U (OSI Report) at 4.

***Defendants Commence Their Retaliatory Assault on Plaintiff in the Bathroom***

11.      On March 14, 2016, only sixteen days after Plaintiff made his complaint to Defendant Palistrant, Defendants William Maryjanowski, Cedrik Soria, and Joseph Sullivan confronted Plaintiff in the bathroom of his dormitory, "C2," around 10:50 a.m. Ex. A (Wishart Dep. Tr.) at 38:15-20, 43:13-24, 47:23-6, 146:12-25; Ex. I (Sullivan-Soria Inmate Misbehavior Report); Ex. K (Maryjanowski Memo); Ex. M (Soria Memo); Ex. N (Sullivan Memo).

12.      Defendant Welkley was working his usual shift and present in the C2 dormitory the morning of March 14, 2016, before Defendants Maryjanowski, Soria, and Sullivan confronted Plaintiff. Ex. B (Welkley Dep. Tr.) at 121:10-21; Ex. P (Welkley OSI Tr.) at 6:22-8:3.

13.      Shortly before Defendants Maryjanowski, Soria, and Sullivan confronted Plaintiff, another correction officer told Defendant Welkley to leave the C2 dormitory. Ex. B (Welkley Dep. Tr.) at 128:4-10.

14.      While in the bathroom, Plaintiff did not pose a threat to anyone, and did not take any actions that would justify the application of force. Ex. I (Sullivan-Soria Inmate Misbehavior Report); Ex. S (Soria OSI Tr.) at 8:18-23; Ex. T (Sullivan OSI Tr.) at 9:2-9.

15.   Defendants Maryjanowski, Soria, and Sullivan then used unnecessary and substantial force on Plaintiff in the bathroom. *See infra*, ¶¶ 16-18.

16.   The excessive force Defendant Maryjanowski used on Plaintiff while in the bathroom included, without limitation, grabbing Plaintiff, Ex. A (Wishart Dep. Tr.) at 148:5-7; and placing Plaintiff in a headlock and squeezing, *id.* at 46:21-23, 48:4-12.

17.   The excessive force Defendant Soria used on Plaintiff while in the bathroom included, without limitation, grabbing Plaintiff, Ex. A (Wishart Dep. Tr.) at 148:5-7; choking Plaintiff, *id.* at 148:16-17; and punching Plaintiff in the head and torso, *id.* at 45:7-16.

18.   The excessive force Defendant Sullivan used on Plaintiff while in the bathroom included, without limitation, grabbing Plaintiff and pulling him out of the bathroom stall, Ex. A (Wishart Dep. Tr.) at 39:9-10, 44:23-45:3, 148:3-4; and grabbing Plaintiff's throat and choking Plaintiff until Plaintiff almost fainted, *id.* at 40:14-24.

19.   Defendants' assault on Plaintiff in the bathroom lasted at least one minute. Ex. A (Wishart Dep. Tr.) at 50:12-25.

### *Defendants' Retaliatory Assault on Plaintiff Continues in the Vestibule*

20.   After assaulting Plaintiff in the bathroom, Defendants Maryjanowski, Soria, and Sullivan dragged Plaintiff into the sports room vestibule, where they continued their assault continued alongside their codefendants. Ex. A (Wishart Dep. Tr.) at 47:6-9, 148:25-149:3.

21.   At least ten officers were present in the vestibule. Ex. A (Wishart Dep. Tr.) at 47:2-5; Ex. Q (Opperman OSI Tr.) at 10:22-11:2.

22.   While in the vestibule, Plaintiff did not pose a threat to anyone, and did not take any actions that would justify the application of force. Ex. I (Sullivan-Soria Inmate Misbehavior Report); Ex. S (Soria OSI Tr.) at 8:18-23; Ex. T (Sullivan OSI Tr.) at 9:2-9.

23. Plaintiff was handcuffed for most if not all of Defendants' assault in the vestibule. Ex. A (Wishart Dep. Tr.) at 47:12-17, 156:10-16.

24. Defendant Roy Bright was present in the vestibule when Plaintiff was assaulted. Ex. A (Wishart Dep. Tr.) at 156:3-5, 157:8-9.

25. Defendant Maryjanowski was present in the vestibule when Plaintiff was assaulted. Ex. A (Wishart Dep. Tr.) at 48:23-25.

26. Defendant James Opperman was present in the vestibule when Plaintiff was assaulted. Ex. A (Wishart Dep. Tr.) at 42:3-5; Ex. U (OSI Report) at 4.

27. Defendant Edward Rice was present in the vestibule when Plaintiff was assaulted. Dkt. 155-2 (Opperman Decl.) ¶ 3; Ex. W (OSI Report of Inmate Interviews).

28. Defendant Soria was present in the vestibule when Plaintiff was assaulted. Ex. A (Wishart Dep. Tr.) at 46:10-21.

29. Defendant Sullivan was present in the vestibule when Plaintiff was assaulted. Ex. A (Wishart Dep. Tr.) at 160:21-24.

30. Defendant Michael Swiatowy was present in the vestibule when Plaintiff was assaulted. Ex. U (OSI Report) at 4; Ex. A (Wishart Dep. Tr.) at 55:8-13, 111:3-14.

31. Defendant Bright used excessive force on Plaintiff in the vestibule, including, without limitation, by striking Plaintiff. Ex. A (Wishart Dep. Tr.) at 45:22-23, 149:17-18, 153:15-21, 157:12-15; *see also infra*, ¶ 38.

32. Defendant Maryjanowski used excessive force on Plaintiff in the vestibule, including, without limitation, by punching Plaintiff, Ex. A (Wishart Dep. Tr.) at 48:23-25, 50:8-9; ripping Plaintiff's shirt off, *id.* at 49:5-9; and otherwise striking Plaintiff, *id.* at 45:22-23, 149:17-18, 153:15-21, 157:12-15; *see also infra*, ¶ 38.

33.   Defendant Opperman used excessive force on Plaintiff in the vestibule, including, without limitation, by kneeing Plaintiff in the groin, Ex. A (Wishart Dep. Tr.) at 44:9-11, 160:13-20; spitting in Plaintiff's face, *id.* at 152:24-153:4; and otherwise striking Plaintiff, *id.* at 45:22-23, 149:17-18, 153:15-21, 157:12-15; *see also infra*, ¶ 38.

34.   Defendant Rice used excessive force on Plaintiff in the vestibule, including, without limitation, by striking Plaintiff. Ex. A (Wishart Dep. Tr.) at 45:22-23, 149:17-18, 153:15-21, 157:12-15; *see also infra*, ¶ 38.

35.   Defendant Soria used excessive force on Plaintiff in the vestibule, including, without limitation, by punching Plaintiff in ribs, Ex. A (Wishart Dep. Tr.) at 155:13-24; spitting in Plaintiff's face, *id.* at 108:13-14; pushing Plaintiff against a wall and repeatedly kicked Plaintiff's knee and heel into the wall, *id.* 47:12-21, 149:13-17; and otherwise striking Plaintiff, *id.* at 45:22-23, 149:17-18, 153:15-21, 157:12-15; *see also* infra, ¶ 38.

36.   Defendant Sullivan used excessive force on Plaintiff in the vestibule, including, without limitation, by kicking Plaintiff in the leg, Ex. A (Wishart Dep. Tr.) at 40:25-41:4; and otherwise striking Plaintiff, *id.* at 45:22-23, 149:17-18, 153:15-21, 157:12-15; *see also infra*, ¶ 38.

37.   Defendant Swiatowy used excessive force on Plaintiff in the vestibule, including, without limitation, by grabbing Plaintiff, Ex. U (OSI Report) at 4; and otherwise striking Plaintiff, *id.* at 45:22-23, 149:17-18, 153:15-21, 157:12-15; *see also infra*, ¶ 38.

38.   In addition to the excessively force described above, *supra*, ¶¶ 16-18, 31-37, some or all Defendants used additional excessive force on Plaintiff, including, without limitation, by punching Plaintiff in the head so hard Plaintiff saw black, Ex. A (Wishart Dep. Tr.) at 41:12, 149:9-10, 157:2-4; grabbing Plaintiff's head and slamming it into a wall, *id.* at 41:23-2, 158:6-7; kicking Plaintiff in the groin, *id.* at 158:8-9; punching Plaintiff in the neck, kidneys, ribs, and body, *id.* at

41:1-22, 149:8, 152:14, 152:20-21, 158:4; striking Plaintiff in the legs and thighs, *id.* at 158:4-5; striking Plaintiff after he was handcuffed, *id.* at 41:19-21; handcuffing Plaintiff excessively tightly, *id.* at 44:13-15, 167:18-19; and lifting Plaintiff's handcuffed arms up behind his back until his arm popped, *id.* at 57:8-13, 149:10-12, 159:17-23.

39.     While Defendants Bright, Maryjanowski, Opperman, Rice, Soria, Sullivan, and Swiatowy used excessive force on Plaintiff in the vestibule, another officer who was present said "I don't want no part in this" and left the room, locking the door behind him. Ex. A (Wishart Dep. Tr.) at 156:3-9.

### *Defendants Told Plaintiff Why They Were Assaulting Him*

40.     Before Defendants' assault on Plaintiff, Defendants made comments about Plaintiff "tell[ing]" on their "brother" and the officers "stick [up] for [their] brothers in blue." Ex. A (Wishart Dep. Tr.) at 190:7-191:20.

41.     During and after Defendants' assault on Plaintiff, both in the bathroom and in the vestibule, Defendants repeatedly made comments referencing Plaintiff's complaint about Defendant Welkley. *See infra*, ¶¶ 42-48. For instance:

42.     Defendant Sullivan exclaimed "You want to snitch on my [] officer? You want to snitch on one of my officers?" while squeezing Plaintiff's throat and kicking Plaintiff. Ex. A (Wishart Dep. Tr.) at 40:19:41:4, 148:14-17.

43.     Defendant Maryjanowski exclaimed "let's hog tie this one. Let's hogtie this one. We've got something for him," and "I'm not done with this one yet." Ex. A (Wishart Dep. Tr.) at 49:10-50:9.

44.     Defendant Opperman threatened Plaintiff for "tell[ing] on his partner and . . . spit in [Plaintiff's] face." Ex. A (Wishart Dep. Tr.) at 152:20-153:4.

45.     Defendant Bright told Plaintiff "If you tell on my brother Welkley you'll leave in a body bag," following which Defendants had a "field day" on Plaintiff. Ex. A (Wishart Dep. Tr.) at 157:8-13; Ex. J (Bright Memo) at 1.

46.     A defendant instructed Plaintiff "Here, go tell her [Jane] about that" while kicking Plaintiff. Ex. V (OSI Report of Wishart Interview) at 3.

47.     A defendant exclaimed "So you're going to f*****g rat?" Ex. V (OSI Report of Wishart Interview) at 3.

48.     A defendant exclaimed "You want to rat on my partner." Ex. V (OSI Report of Wishart Interview) at 3.

49.     During and after their assault on Plaintiff, Defendants repeatedly threatened Plaintiff to dissuade him from reporting their assault on Plaintiff. *See infra*, ¶¶ 50-51. For instance:

50.     Defendant Opperman threatened Plaintiff, saying "if you say anything about this [the assault], you heard what [Defendant Bright said about "leav[ing] in a body bag] and we'll make sure that happens," and also encouraged Plaintiff to say "there was nothing happening or to say [Plaintiff] in a fight [with another inmate] or something." Ex. A (Wishart Dep. Tr.) at 165:8-18.[3]

51.     While punching Plaintiff, Defendant Soria held up his gloved hands and said "this is how we do it. We don't leave marks." Ex. A (Wishart Dep. Tr.) at 45:9-18, 155:10-18.

---

[3] Plaintiff testified that a sergeant made these comments while escorting him to the infirmary, Ex. A (Wishart Dep. Tr.) at 165:8-18, and Defendant Opperman was the only sergeant to escort Plaintiff to the infirmary, Ex. L (Opperman Memo), Ex. Q (Opperman OSI Tr.) at 12:8-9.

### *Defendants Escort Plaintiff to the Infirmary*

52.     After the assault in the vestibule, Defendants Maryjanowski, Opperman, and Sullivan escorted Plaintiff to the infirmary. Ex. A. (Wishart Dep. Tr.) at 163:19-25; Ex. Q (Opperman OSI Tr.) at 11:10-13, 12:20-21.

53.     Defendant Sullivan instructed other staff escorting Plaintiff to the infirmary after the assault to "be careful with this guy [because] he's going to tell." Ex. A. (Wishart Dep. Tr.) at 163:19-164:6.

54.     At the infirmary, Defendants Maryjanowski, Opperman, and Sullivan left Plaintiff in severely overtightened handcuffs for several hours before he was seen by medical staff. Ex. A (Wishart Dep. Tr.) at 166:6-167:20.

55.     Medical staff gave Plaintiff a cursory examination and failed to document many of Plaintiff's injuries. Ex. A (Wishart Dep. Tr.) at 58:4-59:8, 168:22-169:6; Ex. H. (Bright Inmate Injury Report).

56.     The injuries Plaintiff suffered to his shoulder because of Defendants' assault required surgery to repair. Ex. A (Wishart Dep. Tr.) at 57:17-24.

57.     On February 12, 2024, Plaintiff served Defendants with an expert report completed by Plaintiff's expert, Dr. Todd Stein. Moskovitz Decl. ¶ 26; Ex. Y (Dr. Stein's Report).

58.     As set forth in his expert report, Dr. Stein, having personally examined Plaintiff and reviewed his medical records, has concluded that "Within a reasonable degree of certainty and given all of the available information, the worsening of [Plaintiff's] AC joint separation and probable long thoracic nerve injury occurred at the time of the injury in 2016 as he describes that mechanism." Ex. Y (Dr. Stein's Report) at 4.

***Defendants Attempt to Coverup Their Retaliatory Assault on Plaintiff***

59.    On March 14, 2016, following Defendants' assault earlier that same day, Defendant Bright completed an "inmate injury" report regarding Plaintiff. Ex. H. (Bright Inmate Injury Report).

60.    On March 14, 2016, following Defendants' assault earlier that same day, Defendant Sullivan completed an "inmate misbehavior" report regarding Plaintiff; this report was signed and approved by Defendant Soria. Ex. I (Sullivan-Soria Misbehavior Report).

61.    In his inmate injury report, Defendant Bright falsely maintained that Plaintiff had only superficial injuries and did not specify their cause. Ex. H. (Bright Inmate Injury Report).

62.    In their inmate misbehavior report, Defendants Soria and Sullivan falsely maintained that no correction officers had used forced on Plaintiff; that Plaintiff did not have any injuries; and that Plaintiff had refused to comply with orders. Ex. I (Sullivan-Soria Misbehavior Report).

63.    Based on the false report completed by Defendants Soria and Sullivan, Plaintiff was placed in the Special Housing Unit ("SHU") on March 14, 2016. Ex. A (Wishart Dep. Tr.) at 169:9, 179:5-11.

64.    After leaving the infirmary and before being placed in the SHU, Plaintiff was interviewed by two investigators from OSI. Ex. A (Wishart Dep. Tr.) at 169:9-15, 170:2-15.

65.    OSI investigators noted that, at the time they interviewed Plaintiff, Plaintiff had "visible marks on his head, as well as on his wrists where the handcuffs had been applied." Ex. U (OSI Report) at 2; Ex. V (OSI Report of Wishart Interview) at 2.

66.    When interviewed, Plaintiff told the OSI investigators that he had been assaulted by several officers in retaliation for his complaint to Defendant Palistrant about Defendant

Welkley, and specifically identified many Defendants through photos OSI investigators provided while noting that other photos were missing. Ex. A (Wishart Dep. Tr.) at 154:8-20; Ex. U (OSI Report) at 4; Ex. V. (OSI Report of Wishart Interview). Other inmates interviewed by OSI investigators also confirmed that there were photos missing. Ex. U (OSI Report) at 4; Ex. W (OSI Report of Inmate Interviews).

67.     Plaintiff was transferred to Marcy Correctional Facility on March 15, 2016, the day following Defendants' assault. Ex. A (Wishart Dep. Tr.) at 177:18-20.

68.     In the days following Defendants' assault on Plaintiff, Defendants Bright, Maryjanowski, Opperman, Soria, Sullivan, and Swiatowy completed "to/from" memos regarding their interactions with Plaintiff. Ex. J (Bright Memo); Ex. K (Maryjanowski Memo); Ex. L (Opperman Memo); Ex. M (Soria Memo); Ex. N (Sullivan Memo); Ex. O (Swiatowy Memo).

69.     At least some of Defendants Bright, Maryjanowski, Opperman, Rice, Soria, Sullivan, and Swiatowy discussed the potential contents of their to/from memos among themselves before completing these memos. For instance, the to/from memos completed by Defendants Maryjanowski, Soria, and Sullivan contain identical language stating "At no time was any force used on Inmate Wishart by me, or any other responding staff. Furthermore, no threats or other unprofessional remarks were made by me, or any other responding staff toward Wishart at any time." Ex. K (Maryjanowski Memo) (quoted); Ex. M (Soria Memo) (same, with slight grammatical differences); Ex. N (Sullivan Memo) (same, with slight grammatical differences); *see* Ex. S (Soria OSI Tr.) at 19:19-20:8.

70.     In their to/from memos, Defendants Bright, Maryjanowski, Opperman, Rice, Soria, Sullivan, and Swiatowy each falsely maintained that they had no knowledge of correction officers having had used forced on Plaintiff or of Plaintiff's injuries. Ex. J (Bright Memo); Ex. K

(Maryjanowski Memo); Ex. L (Opperman Memo); Ex. M (Soria Memo); Ex. N (Sullivan Memo); Ex. O (Swiatowy Memo).

71.     In their to/from memos Defendants Bright, Maryjanowski, Opperman, Soria, and Sullivan correctly maintained that they interacted with Plaintiff on March 14, 2016. Ex. J (Bright Memo); Ex. K (Maryjanowski Memo); Ex. L (Opperman Memo); Ex. M (Soria Memo); Ex. N (Sullivan Memo); Ex. O (Swiatowy Memo).

72.     In the months following Defendants' assault, Defendants Opperman, Palistrant, Soria, Sullivan, and Welkley were interviewed by OSI investigators under oath. Ex. P (Welkley OSI Tr., dated April 12, 2016); Ex. Q (Opperman OSI Tr., dated April 12, 2016); Ex. R (Palistrant OSI Tr., dated June 2, 2016); Ex. S (Soria OSI Tr., dated April 21, 2016); Ex. T (Sullivan OSI Tr., dated April 21, 2016).

73.     At least some of Defendants Opperman, Palistrant, Soria, Sullivan, and Welkley discussed the potential content of their interviews among themselves before being interviewed. Ex. B (Welkley Dep. Tr.) at 11:20-25, 112:6-19.

74.     In their interviews with OSI investigators, Defendants Opperman, Palistrant, Soria, Sullivan, and Welkley lied to the OSI investigators under oath. *See infra*, ¶¶ 75-80. For instance:

75.     Defendant Opperman told OSI investigators that Plaintiff did not have any injuries following Defendants' assault, Ex. Q (Opperman OSI Tr.) at 16:18-19, 19:7-16, 24:4-11; and that he had never heard of Plaintiff's complaint regarding Defendant Welkley at the time of the assault, *id.* 25:10-26:16, 27:14-18.

76.     Defendant Palistrant told OSI investigators that he had never interacted with Plaintiff, Ex. R (Palistrant OSI Tr.) at 5:2-4; and that Plaintiff never complained about Defendant Welkley to him, *id.* at 6:1-10, 6:19-9:4.

77.     Defendant Soria told OSI investigators that neither he nor any other correction officer assaulted Plaintiff, Ex. S (Soria OSI Tr.) at 9:16-20, 11:19-12:12, 18:14-19:9; that he conducted a "very uneventful" pat frisk of Plaintiff and "nothing out of the ordinary" occurred, *id.* 8:12-17; that Plaintiff did not have any injuries, *id.* at 9:21-22, 12:16-13:2; that Plaintiff was not handcuffed while in his presence, *id.* at 10:19-22; that Plaintiff disobeyed direct orders, *id.* at 7:5-8; and that he had never heard of Plaintiff's complaint regarding Defendant Welkley at the time of the assault, *id.* 14:13-19.

78.     Defendant Soria also told OSI investigators that he did not know who Jane was, *id.* at 22:11-12, although Defendant Welkley admitted to discussing Jane with Defendant Soria in advance of Defendant Soria's OSI interview, Ex. B (Welkley Dep. Tr.) at 111:18-22.

79.     Defendant Sullivan told OSI investigators that neither he nor any other correction officers assaulted Plaintiff, Ex. T (Sullivan OSI Tr.) at 11:9-16, 12:5-8, 13:6-8; that Plaintiff did not have any injuries, *id.* at 12:9-11; that Plaintiff disobeyed direct orders, *id.* at 6:6-16; and that correction officers did not make comments referencing Plaintiff's complaint about Defendant Welkley, *id.* at 6:11-12.

80.     Defendant Welkley told OSI investigators that neither he nor any other officers had never heard of Plaintiff's complaint regarding him at the time of the assault, Ex. P (Welkley OSI Tr.) at 21:15-17, 25:21-26:2, 26:19-27:15; and that he "did not go out of [his] way to speak to" Jane, *id.* at 11:2-5.

### OSI Found That Defendant Welkley Harassed Jane, and that Correction Officers Assaulted Plaintiff

81.     After reviewing relevant documents and interviewing Plaintiff, Defendants, and other witnesses, OSI investigators concluded that there was "sufficient evidence" to conclude that Plaintiff was "assaulted by staff" on March 14, 2016. Ex. U (OSI Report) at 1, 5.

82.    OSI investigators also concluded that Defendant Welkey was "overly familiar" with Jane and sent her salacious emails. Ex. U (OSI Report) at 1-3, 5.

83.    OSI investigators also concluded that "[a] review of over two dozen staff memorandums failed to note or explain the circumstances of Wishart's injuries." Ex. U (OSI Report) at 4.

84.    OSI investigators also observed that the to/from memoranda completed by Defendants Maryjanowski, Opperman, Sullivan, and Soria "all note that they encountered Wishart, which is consistent with Wishart's and other Witnesses' accounts of the events, but all failed to note any use of force or threats made to Wishart." Ex. U (OSI Report) at 4.

85.    An incarcerated individual interviewed by OSI, A. Ariosa, identified Defendants Opperman, Rice, Soria, and Swiatowy as present during Defendants' assault on Plaintiff; stated other officers were also present; and stated that Defendant Swiatowy "put his hands on" Plaintiff. Ex. U (OSI Report) at 3-4; Ex. W (OSI Report of Inmate Interviews). The same incarcerated individual identified Defendant Welkley as "the reason everything started," *i.e.*, the reason Plaintiff was assaulted by Defendants. Ex. W (OSI Report of Inmate Interviews).

86.    Another incarcerated individual interviewed by OSI, K. Betts, identified Defendants Sullivan and Swiatowy as presented during Defendants' assault on Plaintiff. Ex. U (OSI Report) at 4; Ex. W (OSI Report of Inmate Interviews).

### *Defendants Are Personal Friends*

87.    Many of the Defendants are friends and socialized and communicate outside of work. For instance: Defendant Welkley is friends with Defendants Maryjanowski and Soria, and he communicates with them and Defendants Palistrant, Rice, Soria, and Swiatowy outside of work. Ex. B. (Welkley Dep. Tr.) at 83:17-20, 84:5-14, 94:6-9, 101:5-8, 103:21-104:7, 105:22-25; Ex. U

(OSI Report) at 2. Defendant Palistrant communicates with Defendants Maryjanowski and Welkley outside of work. Ex. D (Palistrant Dep. Tr.) at 32:8-23. Defendant Rice communicates with Defendant Soria outside of work. Ex. E (Rice Dep. Tr.) at 135:6-12, 136:20-22. Defendant Soria is friends with Defendants Maryjanowski and Welkley, and he communicates with them outside of work. Ex. F (Soria Dep. Tr.) at 71:3-6, 90:7-12; Ex. S (Soria OSI Tr.) at 14:5-6. Defendant Sullivan communicates with Defendants Maryjanowski, Palistrant, and Swiatowy outside of work. Ex. G (Sullivan Dep. Tr.) at 141:14-23. Defendant Rice is friends with Defendant Bright, and he communicates with him and Defendants Maryjanowski, Palistrant, Sullivan, and Swiatowy outside of work. Ex. E (Rice Dep. Tr.) at 131:16-18.

Dated:  February 12, 2024

**HAMILTON CLARKE, LLP**

Joshua S. Moskovitz
Adam I. Strychaluk
48 Wall St., Suite 1100
New York, New York 10005

**RICKNER PLLC**
Robert H. Rickner
Stephanie J. Panousieris
233 Broadway, Suite 2220
New York, New York 10279