**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------------X

GEORGE WISHART,

        Plaintiff,

    -against-

Correction Officer PETER WELKLEY (in his
individual capacity), Correction Officer CEDRIK
SORIA (in his individual capacity), Correction Officer
JOSEPH SULLIVAN (in his individual capacity),
Correction Officer W. MARYJANOWSKI (in his
individual capacity), Correction Officer PAUL
PALISTRANT (in his individual capacity), Correction
Officer SWIATOWY (in his individual capacity),
Correction Officer MITHADRILL (in his individual
capacity), Correction Sgt. JAMES OPPERMAN (in his
individual capacity), Correction Sgt. EDWARD RICE
(in his individual capacity), and Correction Lt. BRIGHT
(in his individual capacity).

        Defendants.

No. 19 Civ. 6189 (DGL) (MJP)

-------------------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

HAMILTON CLARKE, LLP
48 Wall St., Suite 1100
New York, New York 10005

RICKNER PLLC
233 Broadway, Suite 2220
New York, New York 10279

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ...........................................................................................1

MATERIAL FACTS ............................................................................................................3

PROCEDURAL HISTORY ..................................................................................................6

LEGAL STANDARD...........................................................................................................7

ARGUMENT........................................................................................................................8

I.      PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIMS RAISE TRIABLE ISSUES........................................................................................8

II.     DEFENDANTS' ARGUMENTS REGARDING PLAINTIFF'S CONSPIRACY CLAIMS AND THE "PERSONAL INVOLVEMENT" OF CERTAIN DEFENDANTS ARE INCORRECT ................................................................................................14

        A.     Defendants Ignore Evidence Establishing their Personal Involvement ............................................................................................14

        B.     Plaintiff's Conspiracy Claims Raise Triable Issues........................................18

               i.  Record Evidence Establishes That Defendants Conspired to Cover Up Their Wrongdoing................................................18

               ii.  The Intra-Corporate Conspiracy Doctrine is Inapplicable Here.................................................................................................21

III.    PLAINTIFF CAN RECOVER DAMAGES FOR HIS SHOULDER INJURY ..............................................................................................................23

CONCLUSION...................................................................................................................25

# TABLE OF AUTHORITIES

**CASES**                                                                     **PAGE(S)**

*Adickes v. S.H. Kress & Co.*,
    398 U.S. 144 (1970)...............................................................................................7

*Ali v. Connick*,
    136 F. Supp. 3d 270 (E.D.N.Y. 2015) ...............................................................23

*Allah v. Poole*,
    506 F. Supp. 2d 174 (W.D.N.Y. 2007) (Larimer, J.).........................................9

*Alvarez v. City of New York*,
    No. 11 Civ. 5464 (LAK), 2012 WL 6212612 (S.D.N.Y. Dec. 12, 2012).........21

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..............................................................................................7

*Barrington v. New York*,
    806 F. Supp. 2d 730 (S.D.N.Y. 2011) .................................................................9

*Bennett v. Goord*,
    343 F.3d 133 (2d Cir. 2003)..................................................................................9

*Binder & Binder PC v. Barnhart*,
    481 F.3d 141 (2d Cir. 2007)..................................................................................7

*Brown v. Annucci*,
    No. 19 Civ. 9048 (VB), 2021 WL 860189 (S.D.N.Y. Mar. 8, 2021) ................21

*Chillemi v. Town of Southampton*,
    943 F. Supp. 2d 365 (E.D.N.Y. 2013) ...............................................................21

*Daniels v. Ralph*,
    No. 10 Civ. 884 (DGL), 2012 WL 2120591 (W.D.N.Y. June 11, 2012) ..........22

*De Michele v. City of New York*,
    No. 09 Civ. 9334 (PGG), 2012 WL 4354763 (S.D.N.Y. Sept. 24, 2012) .........17

*Dillon v. Morano*,
    497 F.3d 247 (2d Cir. 2007)................................................................................13

*Dorsett v. Cnty. of Nassau*,
    732 F.3d 157 (2d Cir. 2013)..................................................................................8

# TABLE OF AUTHORITIES (cont'd)

**CASES**                                                                 **PAGE(S)**

*Espinal v. Goord*,
    558 F.3d 119 (2d Cir. 2009)........................................................................................11

*Figueroa v. Mazza*,
    825 F.3d 89 (2d Cir. 2016)..........................................................................................17

*Gayle v. Gonyea*,
    313 F.3d 677 (2d Cir. 2002)..................................................................................11, 13

*Giannullo v. City of New York*,
    322 F.3d 139 (2d Cir. 2003)..........................................................................................9

*Goldstein v. Laurent*,
    No. 09 Civ. 2437, 2011 WL 3586447 (E.D.N.Y. Aug. 2, 2011).........................................17

*Grant v. Bethlehem Steel Corp.*,
    622 F.2d 43 (2d Cir.1980)...........................................................................................11

*Guilbert v. Gardner*,
    480 F.3d 140 (2d Cir. 2007)...........................................................................................7

*Guillory v. Overbaugh*,
    No. 13 Civ. 1353 (RFT), 2014 WL 5026781 (N.D.N.Y. Aug. 7, 2014)..............................21

*Hamilton v. City of Peekskill Police Dep't*,
    No. 13-cv-8138 (NSR), 2015 U.S. Dist. LEXIS 101903 (S.D.N.Y. Aug. 3, 2015)...........17

*Healy v. Shalala*,
    No. 98 Civ. 418, 2000 WL 303439 (D. Conn. Feb. 11, 2000)...........................................17

*Lashley v. Wakefield*,
    367 F. Supp. 2d 461 (W.D.N.Y. 2005) (Larimer, J.).........................................................10

*Lewis v. Havernack*,
    No. 9:12 Civ. 0031 (DEP), 2013 WL 1294606 (N.D.N.Y. Mar. 28, 2013)........................21

*Lopez v. Bushey*,
    No. 11 Civ. 0418 (TWD), 2013 WL 1294477 (N.D.N.Y. Mar. 4, 2013).........................21

# TABLE OF AUTHORITIES (cont'd)

**CASES**                                                                 **PAGE(S)**

*Mahotep v. DeLuca*,
   3 F. Supp. 2d 385 (W.D.N.Y. 1998) (Larimer, C.J) .......................................................8, 11

*McAndrew v. Lockheed Martin Corp.*,
   206 F.3d 1031 (11th Cir. 2000) ..................................................................................22

*Medina v. Hunt*,
   No. 05 Civ. 1460, 2008 WL 4426748 (N.D.N.Y. Sept. 25, 2008) ...................................21

*Medina v. Skowron,*
   806 F.Supp.2d 647 (W.D.N.Y.2011) (Larimer, C.J.) .......................................................8

*Miller v. Annucci*,
   No. 19 Civ. 30 (LEK), 2019 WL 11276705 (N.D.N.Y. Dec. 16, 2019)...........................21

*Pangburn v. Culbertson*,
   200 F.3d 65 (2d Cir. 1999)........................................................................................18

*Ricks v. O'Hanlon*,
   No. 07 Civ. 9849 (WHP), 2010 WL 245550 (S.D.N.Y. Jan. 19, 2010) ...........................18

*Ruggiero v. Prack*,
   168 F. Supp. 3d 495 (W.D.N.Y. 2016) ...........................................................................9

*Rui Ying Lin v. Gonzales*,
   445 F.3d 127 (2d Cir.2006)........................................................................................12

*Samms v. Fischer*,
   No. 10 Civ. 0349 (GHL), 2011 WL 3876528 (N.D.N.Y. Mar. 25, 2011).........................22

*Shankle v. Andreone*,
   No. 06 Civ. 487 (NG), 2009 WL 3111761 (E.D.N.Y. Sept. 25, 2009) ............................18

*Snoussi v. Bivona*, No. 05 CV 3133 (RJD)(LB),
   2010 U.S. Dist. LEXIS 110568 (E.D.N.Y. Feb. 17, 2010)........................................14, 18

*St. Mary's Honor Ctr. v. Hicks*,
   509 U.S. 502 (1993)..................................................................................................12

*Vincent v. Sitnewski*,
   117 F. Supp. 3d 329 (S.D.N.Y. 2015) .............................................................................9

*Walker v. Senecal & Brian Benware*,
   No. 20 Civ. 82 (CFH), 2021 WL 3813081 (N.D.N.Y. July 15, 2021) .............................10

iv

**TABLE OF AUTHORITIES (cont'd)**

**CASES**                                                                    **PAGE(S)**

*Washington v. Afify*,
  968 F. Supp. 2d 532 (W.D.N.Y. 2013) (Larimer, J.) ..........................................................9

*White v. Clement*,
  116 F. Supp. 3d 183 (W.D.N.Y. 2015) (Larimer, J.) ..........................................................9

*Withrow v. Donnelly,*
  356 F. Supp. 2d 273 (W.D.N.Y. 2005) (Larimer, J.) .........................................................11

*Wright v. Goord,*
  554 F.3d 255 (2d Cir. 2009)...............................................................................................10

*Ziglar v. Abbasi,*
  582 U.S. 120 (2017)...........................................................................................................22


**STATUTES**

18 U.S.C. § 242.......................................................................................................................22


**RULES**

Federal Rule of Civil Procedure 26 ....................................................................................2, 23

Federal Rule of Civil Procedure 56 ........................................................................................7

**PRELIMINARY STATEMENT**

The Office of Special Investigation ("OSI") of the New York State ("NYS") Department of Corrections and Community Supervision found that Defendant Peter Welkley, a NYS Correction Officer, inappropriately contacted Plaintiff George Wishart's girlfriend after seeing her visit Wishart at Orleans Correctional Facility ("Orleans"). Welkley has acknowledged in this lawsuit that his behavior was "illegal" and "probably unethical." OSI also found that two weeks after Wishart complained about Welkley's behavior to another correction officer at Orleans, the other Defendants in this action, fellow NYS Corrections Officers and personal friends of Welkley, assaulted Wishart. OSI rendered these findings because the evidence amply supports them, despite the fact that Defendants filed false reports about the incident, carted Wishart off to solitary confinement, and lied to OSI investigators about assaulting Wishart. Wishart's injuries told the true story and were noted by medical staff and OSI investigators. OSI investigators had little difficulty rejecting Defendants' fabrication.

On this record, Defendants are not entitled to summary judgment. There is more than enough evidence for a reasonable jury to find, as OSI did, that Defendants assaulted Wishart and lied to coverup that fact. There is also ample evidence that Defendants conspired to assault Wishart in retaliation for complaining about Welkley's conduct. Contrary to the principles governing summary judgment, Defendants ignore the ample evidence supporting Wishart's claims and ask the Court to credit their self-serving fabrications to throw out this case.

In seeking to dismiss Plaintiff's retaliation claims, Defendants ignore not only the overwhelming circumstantial evidence—including the close two-week timeline between Wishart's complaint and Defendants' assault—but also the direct evidence of retaliatory animus, including Defendants' own explanations of their motivations before, during, and after the assault. Indeed,

Wishart testified in his deposition that Defendants repeatedly called him a "snitch" and a "rat," told him he would "leave in a body bag" for "telling on" Welkley, and directed him to "Go tell [your girlfriend] about that" while beating him, among other things.

Next, Defendants seek summary judgment on Plaintiff's conspiracy claims, his claims for excessive force, and his claims for failure to intervene against certain defendants. But in arguing that Plaintiff's conspiracy claims have been withdrawn, Defendants mischaracterize the record and cast aside this Court's earlier decision that "the Complaint adequately pleads sufficient facts to state a Section 1983 conspiracy in the Fourth and Fifth causes of action" (Dkt. 120 at 1). Thus, Defendants' arguments regarding the personal involvement of certain defendants are meritless because those arguments neglect that these defendants are co-conspirators.

Finally, Defendants ask the Court to bar Plaintiff from seeking damages for the serious injury he suffered to his left shoulder because, as Defendants argue, Plaintiff "has proffered no expert suggesting" that this injury was caused by Defendants' assault. But Defendants' motion was filed before the deadline for the parties to exchange expert disclosures. *See* Fed. R. Civ. P. 26(a)(2)(D) (setting deadline for expert disclosures as 90 days before trial where the court does not set an earlier deadline). And Plaintiff has served Defendants with an expert report completed by Dr. Todd Stein, who personally examined Plaintiff (unlike Defendants' proposed expert, who merely reviewed medical records). Dr. Stein's report confirms that Plaintiff's shoulder injury occurred because of Defendants' assault on Plaintiff in 2016.

At its core, this case is about to conflicting narratives. In Defendants' narrative (unsupported by the evidence as it is), they neither laid a finger on Plaintiff nor had reason to do so, and Defendants were honest in their reports and interviews with investigators. In the other narrative, which rests on actual evidence, Welkley improperly harassed Plaintiff's girlfriend,

2

Plaintiff complained, Defendants retaliated by violently assaulting Plaintiff, and Defendants then lied to investigators to cover-up their malfeasance. Because rational jurors can reject Defendants' baseless accounts of events—*like the OSI investigators assigned to this case did*—and find that Defendants assaulted Plaintiff, the Court must deny Defendants' motion in its entirety and set this matter for trial.

## MATERIAL FACTS

Viewing the facts in the light most favorable to Plaintiff, and drawing all reasonable inferences in his favor, the following occurred:

In 2016, Plaintiff George Wishart was incarcerated at Orleans Correctional Facility ("Orleans"). Defendant Peter Welkley was a New York State Corrections Officer assigned to Orleans. Welkley harassed Wishart's girlfriend when she came to visit Wishart, including by sending her salacious emails that Welkley knew were "illegal" and "probably unethical." Pl.'s Statement of Material Facts ("SMF") ¶¶ 3-4. Wishart complained about Welkley's behavior.

On February 29, 2016, Wishart wrote a grievance about Welkley's conduct. *Id.* ¶¶ 5-6; *see* Ex. X (Wishart Grievance).[1] The same day, Wishart complained about Welkley's behavior to Defendant Paul Palistrant, a NYS Corrections Officer assigned to Wishart's housing unit. SMF ¶¶ 7-8. Palistrant told other officers that Wishart was complaining about Welkley's behavior, *id.* ¶ 9; and for the next two weeks, other officers, and some incarcerated individuals in Wishart's housing unit, referenced the fact that Wishart had complained about Welkley's emails to Wishart's girlfriend, *id.* ¶ 10. Certain of the Defendants, other NYS Corrections Officers at Orleans, made comments about Wishart "tell[ing]" on their "brother" and that they "stick [up] for [their] brothers in blue," *id.* ¶ 40.

---

[1] All referenced exhibits are attached to the accompanying declaration of Joshua S. Moskovitz ("Moskovitz Decl.").

3

On March 14, 2016—soon after Wishart made his complaint—two of Welkely's personal friends, Defendants William Maryjanowski and Cedrik Soria, *id.* ¶ 89, and another Orleans officer, Joseph Sullivan, confronted Wishart in the bathroom of his dormitory. *Id.* ¶ 11. Just before they did so, another officer told Welkley to leave the dormitory. *Id.* ¶ 12-13. Although Wishart—by Defendants' own admission—had done nothing to justify the application of force, *id.* ¶ 14, each of Maryjanowski, Soria, and Sullivan then used unnecessary and substantial force on Wishart, including grabbing, punching, and choking Wishart until he almost fainted. *Id.* ¶ 16 (Maryjanowski), ¶ 17 (Soria), ¶ 18 (Sullivan).

After this beating, Maryjanowski, Soria, and Sullivan dragged Wishart into another room, the sports room vestibule, where the beating continued. *Id.* ¶ 20. At least ten officers were present in the vestibule, including Defendants Roy Bright, James Opperman, Edward Rice, and Michael Swiatowy (as well as Maryjanowski, Soria, and Sullivan). *Id.* ¶¶ 21, 24-30. Although Wishart— by Defendants' admission—had still nothing to justify the application of force, *id.* ¶ 22, each of Bright, Maryjanowski, Opperman, Rice, Soria, Sullivan, and Swiatowy used excessive force on Wishart in the vestibule, including by grabbing, punching, kicking, kneeing, and spitting on Wishart. *Id.* ¶¶ 31, 38 (Bright), ¶¶ 32, 38 (Maryjanowski), ¶¶ 33, 38 (Opperman), ¶¶ 34, 38 (Rice), ¶¶ 35, 38 (Soria), ¶¶ 36, 38 (Swiatowy), ¶¶ 37-38 (Sullivan).

Throughout the beatings, both in the bathroom and vestibule, Defendants repeatedly made comments about Wishart's complaint about Welkley's harassment of Wishart's girlfriend. *Id.* ¶¶ 40-48; *see also infra,* pp. 12 (listing some such comments). Defendants also took steps during the assault to hide the evidence of their assault. For instance, Defendant Soria held up his gloved hands and said "this is how we do it. We don't leave marks." *Id.* ¶ 51.

After the beating, Maryjanowski, Opperman, and Sullivan escorted Wishart to the infirmary. *Id.* ¶¶ 52. During this escort, the three defendants made more comments referencing Wishart's complaint about Welkley and threatened Wishart to dissuade him from reporting the beating he had just endured. *Id.* ¶¶49-53. Opperman threatened Plaintiff, saying "if you say anything about this [the assault], you heard what [Defendant Bright said about "leav[ing] in a body bag] and we'll make sure that happens," and also encouraged Plaintiff to say "there was nothing happening or to say [Plaintiff] in a fight [with another inmate] or something." *Id.* ¶ 50.

Maryjanowski, Opperman, and Sullivan then left Wishart in severely overtightened handcuffs for several hours before he was seen by medical staff, who noted some of Wishart's visible injuries. *Id.* ¶¶ 54-55; *see also id.* ¶¶ 52-53 (Defendants took measures to hide the evidence of their assault on Wishart). One of Wishart's most significant injuries was not visible externally; that was an internal shoulder injury that would require surgery to repair, as is reflected in Dr. Todd Stein's expert report. *Id.* ¶¶ 56-58.

Later the same day, Bright completed an "inmate injury" report regarding Wishart, *id.* ¶ 59; and Sullivan completed an "inmate misbehavior" report regarding Wishart, which was signed and approved by Soria, *id.* ¶ 60. In these reports, the three officers falsely maintained that no correction officer had used forced on Wishart and that Wishart did not have any injuries. *Id.* ¶¶ 61-62. Based on these false reports, Wishart was placed in the Special Housing Unit ("SHU"), *id.* ¶ 63, and he was transferred to another prison the next day, *id.* ¶ 67.

In the days following the beating, Bright, Maryjanowski, Opperman, Soria, Sullivan, and Swiatowy completed "to/from" memos regarding their interactions with Wishart, *id.* ¶ 68, and at least some of these six defendants discussed the potential contents of their memos among themselves before doing so, *id.* ¶ 69. In these memos, the six defendants noted that they interacted

5

with Wishart on March 14, 2016, but falsely reported that they knew nothing about any correction officer having had used force on Wishart or how Wishart sustained his injuries. *Id.* ¶¶ 70-71.

Later, Opperman, Palistrant, Soria, Sullivan, and Welkley were interviewed by OSI investigators under oath, *id.* ¶ 72, and at least some of these five officers discussed the potential content of their interviews among themselves before doing so, *id.* ¶ 73. In these interviews, the five defendants falsely reported that they knew nothing about any correction officer having used force on Wishart or how he sustained his injuries. *Id.* ¶ 74; *see also id.* ¶¶ 75-80 (describing how each of these five defendants perjured themselves).

After OSI investigators reviewed Defendants' reports and interviewed witnesses— including Wishart, the Defendant officers, and others—the investigators concluded that Defendants' story was incredible. *Id.* ¶ 81-84. Instead, OSI found "sufficient evidence" to conclude that Wishart was "assaulted by staff" and that Defendant Welkley was "overly familiar" with Wishart's girlfriend. *Id.* ¶¶ 81-82. OSI investigators reached this conclusion after finding that "review of over two dozen staff memorandums [including Defendants'] failed to note or explain the circumstances of Wishart's injuries" or "any use of force or threats made to Wishart." *Id.* ¶¶ 83-84; *see* Ex. U (OSI Report) (summarizing OSI's conclusions).

## PROCEDURAL HISTORY

Plaintiff filed this lawsuit on March 13, 2019 (Dkt. 1). On February 6, 2020, Defendants filed a partial motion for judgment on the pleadings under Rule 12(c) (Dkt. 24). After that motion was filed, the parties "engage[d] in discovery and related motion practice, which resulted in significant sanctions imposed by United States Magistrate Judge Mark W. Pedersen for [Defendants'] failure to comply with discovery orders" (Dkt. 120 at 1 n.1).

6

On October 31, 2022, the Court granted Defendants' Rule 12(c) motion "to the extent that Plaintiff withdraws his theories of liability under Sections 1985 and 1986 in the Fourth and Fifth causes of action but denies the motion insofar as the Complaint adequately pleads sufficient facts to state a Section 1983 conspiracy in the Fourth and Fifth causes of action" (Dkt. 120 at 1).

After fact discovery concluded, Defendants served their expert disclosure and filed this motion for summary judgment. Plaintiff served his expert disclosure and now opposes Defendants' motion.

## LEGAL STANDARD

Summary judgment is appropriate only where "there is *no* genuine dispute as to *any* material fact *and* the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). A fact is material for these purposes if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a genuine dispute exists "where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor," *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007). The movant—here, Defendants—bears the burden to show the absence of a genuine dispute of any material fact, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970), and "[a]ll reasonable inferences must be construed in the nonmoving party's favor," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007). "[I]f there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." *Id.*

## ARGUMENT

### I.  Plaintiff's First Amendment Retaliation Claims Raise Triable Issues

In arguing that Plaintiff "simply assumes" a causal connection between his protected activity (his complaint to Defendant Palistrant) and Defendants' assault, Dkt. 155-4 ("Mot.") at 13, Defendants overlook that the record teems with both circumstantial *and direct* evidence of retaliatory animus. To prevail on his claims of retaliation, Plaintiff must show: "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013). Each of these elements is satisfied here (and indeed Defendants target only the second element, tacitly ceding the first and third, *see* Mot. at 11-13).

As to the first element, "[t]he [First Amendment] right to petition the government for redress of grievances includes the right to file lawsuits as well as the right to pursue administrative grievances." *Mahotep v. DeLuca*, 3 F. Supp. 2d 385, 388 (W.D.N.Y. 1998) (Larimer, C.J) (citing *Franco v. Kelly,* 854 F.2d 584, 589 (2d Cir.1988)); *see Medina v. Skowron,* 806 F.Supp.2d 647, 650 (W.D.N.Y.2011) (Larimer, C.J.) ("The filing of prison grievances is a constitutionally protected activity") (citing *Graham v. Henderson,* 89 F.3d 75, 80 (2d Cir.1996)). That is precisely the activity in which Plaintiff engaged here. SMF ¶¶ 6-8; *see* Ex. X (Wishart Grievance).

The third element is also satisfied, because Defendants' physical attack on Plaintiff is a cognizable injury sufficient to establish a retaliation claim, *see Mahotep*, 3 F. Supp. 2d at 389, as is their refusal to document Plaintiff's injuries and filing of a trumped-up misbehavior report, *see White v. Clement*, 116 F. Supp. 3d 183, 189 (W.D.N.Y. 2015) (Larimer, J.) (observing that refusal to record medical problems constitutes "adverse action sufficient to sustain a First Amendment claim"); *Washington v. Afify*, 968 F. Supp. 2d 532, 543 (W.D.N.Y. 2013) (Larimer, J.) (same, with respect to issuance of a "false misbehavior report").

As to the second element, Defendants' only argument is that Plaintiff cannot show a causal connection between his protected activity and Defendants' retaliatory conduct because—the argument goes—he cannot "explain[] when or how" Defendants learned of his complaint to Defendant Palistrant. Mot. at 12.[2] This argument fails in at least three respects.

First, nowhere in their Statement of Material Facts do Defendants identify a single Defendant *not* having knowledge of Plaintiff's complaint as a purportedly undisputed fact. *See* Dkt. 155-1 (Defs.' SMF) at ¶¶1-15. This failure amounts to an admission. *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003);[3] *see also Bennett v. Goord,* 343 F.3d 133, 139 (2d Cir. 2003) (rejecting correctional officer defendants' causation arguments where officers "offered only a conclusory denial of [plaintiff's] allegations, failing to submit affidavits or any other admissible evidence concerning what [] officials did or did not know."). *Cf. Ruggiero v. Prack*, 168 F. Supp. 3d 495 (W.D.N.Y. 2016) (concluding that genuine issue of material fact existed to whether defendants had a "meeting of the minds" to retaliate against plaintiff even where defendants properly disputed they knew about plaintiff's protected expressive activity).

Second, the two cases on which Defendants rely do not hold that a plaintiff is required to identify specifically how and when the defendants came to know of his expressive activity to withstand summary judgment. *See* Mot. at 13 (citing *Walker v. Senecal & Brian Benware*, No. 20

---

[2] Defendants implicitly couple this argument to the contention that, except for Defendant Welkley, none of them had a motive to retaliate because they were not the subjects of Plaintiff's complaint. *See* Mot. at 12. At most, that argument raises a dispute of fact for the reasons discussed below—but it has been conclusively rejected by this Court in any event. *See Allah v. Poole*, 506 F. Supp. 2d 174, 186 (W.D.N.Y. 2007) (Larimer, J.) (rejecting argument that defendant whose "only connection with plaintiff's grievances was that [he] had investigated some of them" did not necessarily act from retaliatory motives stemming from his "antipathy toward inmate grievances in general"); *see also Barrington v. New York*, 806 F. Supp. 2d 730, 749 (S.D.N.Y. 2011) (rejecting this argument and observing that "[t]he notion of a corrections officer trying to protect his own is hardly fantastical as a matter of law"); *Vincent v. Sitnewski*, 117 F. Supp. 3d 329, 338 (S.D.N.Y. 2015) (similar).

[3] *Giannullo* discussed Rule 56.1 of the Local Civil Rules of the Southern and Eastern Districts of New York, which is functionally identical to Rule 56(a) of the Local Civil Rules of the Western District.

9

Civ. 82 (CFH), 2021 WL 3813081 (N.D.N.Y. July 15, 2021) and *Wright v. Goord*, 554 F.3d 255 (2d Cir. 2009)). Neither *Walker* nor *Wright* imposes any such requirement for good reason: doing so would contravene longstanding precedent holding that a plaintiff may show the requisite causation by and through both circumstantial and direct evidence of retaliatory animus. *See, e.g., Lashley v. Wakefield*, 367 F. Supp. 2d 461 (W.D.N.Y. 2005) (Larimer, J.) ("'testimony that [a defendant] made retaliatory threats, together with evidence of the sequence of events' could permit a trier of fact to infer that there was retaliation" (quoting *Jones v. Coughlin*, 45 F.3d 677, 680 (2d Cir. 1995)) (second alternation in original)). *Walker* and *Wright* are factually and procedurally inapposite.[4]

Third, in marked contrast to *Walker* and *Wright*, a jury in this case will have ample evidence from which to find that Defendants knew of Plaintiff's complaint about Defendant Welkley's misbehavior and that Defendants targeted Plaintiff for adverse treatment *precisely* because of his exercise of his First Amendment freedoms.

As an initial matter, "the temporal proximity of an allegedly retaliatory misbehavior report to a grievance may serve as circumstantial evidence of retaliation." *Gayle v. Gonyea*, 313 F.3d 677, 683 (2d Cir. 2002). Here, Plaintiff drafted his grievance and complained about Defendant Welkley's unprofessional conduct on February 29, 2016, only sixteen days before Defendants' retaliatory assault. SMF ¶¶ 6-7, 11; *see* Ex. X (Wishart Grievance). While the "Second Circuit 'has

---

[4] In *Walker*, the court found, at the *motion to dismiss stage*, that the *pro se* plaintiff had not *alleged* any facts indicating that one of the officer defendants knew that the plaintiff had filed a grievance or that the defendant had any relationship with the grieved officer whatsoever, and accordingly found that the plaintiff had not alleged a "chronology of events from which retaliation may be plausibly inferred." 2021 WL 3813081, at *10. Likewise, in *Wright*, the Second Circuit first held that the plaintiff had forfeited virtually every argument pertinent to his retaliation claim by failing to raise those arguments in the district court, before noting, in passing, that even were the plaintiff's claim "properly preserved for appeal" it did not merit jury consideration because, among other things, the plaintiff—who did not bring conspiracy claims—had testified that the defendant officer was not a participant in the alleged retaliatory action, and the officer also had no connection to or knowledge of the activity the plaintiff had initially grieved ten weeks before. 554 F.3d at 274.

10

not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action,'" *Withrow v. Donnelly,* 356 F. Supp. 2d 273, 275 (W.D.N.Y. 2005) (Larimer, J.) (quoting *Gorman-Bakos v. Cornell Co-op Extension of Schenectady County,* 252 F.3d 545, 554 (2d Cir.2001)), a two-week period falls well within that undefined boundary and supports a causal inference. *See, e.g., id.* at 275-76 (finding a five-month gap suggested a causal relationship); *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (same, for six-month gap); *Grant v. Bethlehem Steel Corp.,* 622 F.2d 43, 45-46 (2d Cir.1980) (same, for eight-month gap).

Standing alone, the immediacy with which Defendants assaulted Plaintiff following his protected complaint supports the required causal inference. *See Espinal,* 558 F.3d at 129 ("[T]he passage of only six months between [the expressive activity] and an allegedly retaliatory beating by officers . . . is sufficient to support an inference of a causal connection."); *accord Mahotep*, 3 F. Supp. 2d at 389 (Larimer, J.) ("[A]lthough there is no allegation that [defendants] stated expressly that they were retaliating against [plaintiff] because of the grievances, the alleged assault occurred close enough in time to the grievances so as to allow a reasonable jury to conclude that [defendants'] alleged conduct was intended to discourage [plaintiff] from pursuing his grievances. The alleged assault occurred approximately one week after [plaintiff] filed the three grievances.").

Defendants ask this Court not only to disregard this close timeline, but to hold that no rational juror would consider Defendants' *own statements* about the reason for the assault. Plaintiff testified in his deposition that before Defendants assaulted him they made repeated comments about Plaintiff "tell[ing]" on their "brother" and that the officers would "stick [up] for [their]

11

brothers in blue." SMF ¶ 40. And Defendants made further statements of their motivation during and just after the assault:

- Defendant Sullivan exclaimed "You want to snitch on my [] officer? You want to snitch on one of my officers?" while squeezing Plaintiff's throat and kicking Plaintiff. *Id.* ¶ 42.

- Defendant Maryjanowski exclaimed "let's hog tie this one. Let's hogtie this one. We've got something for him," and "I'm not done with this one yet." *Id.* ¶ 43.

- Defendant Opperman threatened Plaintiff for "tell[ing] on his partner and . . . spit in [Plaintiff's] face." *Id.* ¶ 44.

- Defendant Bright told Plaintiff "If you tell on my brother Welkley you'll leave in a body bag," following which Defendants had a "field day" on Plaintiff. *Id.* ¶ 45.

- Defendant Sullivan instructed other staff to "be careful with this guy, be careful with this guy [because] he's going to tell, he's going to tell." *Id.* ¶ 53.

- One of the defendants instructed Plaintiff "Here, go tell [your fiancé] about that" while kicking Plaintiff. *Id.* ¶ 46.

- One of the defendants exclaimed "So you're going to f*****g rat?" *Id.* ¶ 47.

- One of the defendants exclaimed "You want to rat on my partner." *Id.* ¶ 48.

Rational jurors would not disregard these statements.

Viewing the evidence in the light most favorable to Plaintiff as the non-movant, the evidence shows that Defendants—who have consistently denied the assault ever occurred, *id.* ¶¶ 61-62, 70, 75-80—have repeatedly lied about the incident, thereby permitting the jury to disregard all of their testimony, including their self-serving claims of a lack of motivation or knowledge of Plaintiff's complaint. *See Rui Ying Lin v. Gonzales*, 445 F.3d 127, 133 (2d Cir.2006) (discussing the maxim *falsus in uno, falsus in omnibus*). *Cf. St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, (1993) ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.").

Indeed, the reports Defendants submitted in connection with the incident are so fanciful that even OSI found Defendants had assaulted Plaintiff and were covering up for that fact: "A

review of over two dozen staff memorandums failed to note or explain the circumstances of Wishart's injuries." SMF ¶¶ 81-84; *see* Ex. U (OSI Report) at 4-5;[5] *see also Gayle*, 313 F.3d at 683 ("A false reason for the report's issuance would support the inference that the real reason [for the correctional officers' actions] was the improper one: retaliation."); *Dillon v. Morano*, 497 F.3d 247, 252 (2d Cir. 2007) (observing that a defendant's departure from usual practices raises an inference of retaliatory animus).

For all these reasons and more,[6] a reasonable jury can conclude that Defendants had a "meeting of the minds" before assaulting Plaintiff, and that they assaulted Plaintiff in retaliation for his complaints about Defendant Welkley's misbehavior. Thus, summary judgment is not appropriate on Plaintiff's retaliation claims.

## II.    Defendants' Arguments Regarding Plaintiff's Conspiracy Claims and the "Personal Involvement" of Certain Defendants Are Incorrect

Defendants mischaracterize the record in arguing that Plaintiff's conspiracy claims (his fourth and fifth causes of action) have been withdrawn. *See* Mot. at 9. The Court's decision on Defendants' partial motion for judgment on the pleadings expressly held that Plaintiff's conspiracy claims under § 1983 remain in the case against all Defendants. *See* Dkt. 120 at 1 ("[T]he Court grants Defendants' motion to the extent that Plaintiff withdraws his theories of liability under Sections 1985 and 1986 in the Fourth and Fifth causes of action but denies the motion insofar as

---

[5] For the reasons explained in Plaintiff's January 12, 2023 Memorandum Addressing the Court's Questions of Admissibility of Certain Evidence, Dkt. 136, the OSI Report is admissible in Plaintiff's case in chief, as are OSI's accompanying investigation records. Indeed, Defendants' counsel, New York Attorney General Letitia James, recently argued that OSI reports are *admissible* in a § 1983 excessive force case against NYS correction officers. *See Cooper v. Clancy*, No. 19 Civ. 362 (AMN) at Dkt. 169 at 13-14 (Defendants' Motion in *Limine*) (attached as Ex. Z).

[6] Additional evidence supports the causal inference here. For instance, another incarcerated individual who witnessed the assault told OSI investigators that Defendant Welkley "was the reason everything started," SMF ¶ 85; and Defendant Palistrant shared that Plaintiff had made a complaint with other officers within 24 hours of Plaintiff's complaint, *id.* ¶ 9, giving the information plenty of time to percolate around the dorm and lending credence to Plaintiff's deposition testimony that "you can't tell me that . . . Officer Palistrant didn't go and tell all the other officers" because "every officer in that dorm knew about it," *id.* ¶ 10.

13

*the Complaint adequately pleads sufficient facts to state a Section 1983 conspiracy in the Fourth and Fifth causes of action.*" (emphasis added)).

Defendants ignore this law of the case and continue to fight the paper tiger of § 1985 conspiracy. By consequence, Defendants' arguments about § 1985 conspiracy are beside the point.[7] Moreover, Defendants' arguments regarding the "personal involvement" of Defendants Opperman, Palistrant, Rice, Swiatowy, and Welkley fail because the admissible evidence establishes their personal involvement, and these defendants are co-conspirators.

### A.    Defendants' Ignore Evidence Establishing Their Personal Involvement

As an initial matter, Defendants' arguments regarding the personal involvement of Defendants Opperman, Palistrant, Rice, Swiatowy, and Welkley fail on their own terms, even without the evidence that these defendants conspired with their colleagues. "A plaintiff may demonstrate personal involvement in an excessive use of force by showing that a defendant either (1) participated in the assault, or (2) was present during the assault, but failed to intervene on the victim's behalf, despite an opportunity to do so." *Snoussi v. Bivona*, No. 05 CV 3133 (RJD)(LB), 2010 U.S. Dist. LEXIS 110568, at *13 (E.D.N.Y. Feb. 17, 2010) (citing *Wong v. Yoo*, 649 F. Supp. 2d 34, 61 (E.D.N.Y. 2009), in turn citing *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).

Defendants assert that it is uncontested that Defendants Opperman, Rice, and Swiatowy were not present for Defendants' assault. *See* Mot. at 5-6. That is plainly wrong. Record evidence establishes that each was present and participated in the assault. *See* SMF ¶¶ 26-27, 30, 33-34, 37, 44, 85-86. For instance, an incarcerated individual interviewed by OSI identified Defendant Swiatowy as present, while another identified each of Defendants Opperman, Rice, and Swiatowy

---

[7] Specifically, because racial animus is *not* an element of § 1983 conspiracy claims, as it is for § 1985 conspiracy claims, Defendants' arguments regarding this element are irrelevant; and, as explained below, the intra-corporate conspiracy doctrine does not apply to Plaintiff's § 1983 claims.

14

as present. *Id.* ¶¶ 85-86. The second incarcerated individual told OSI investigators that Defendant Swiatowy "put his hands on" Plaintiff," *id.* ¶ 85. *See* Ex. U (OSI Report) at 4; Ex. W (OSI Report of Inmate Interviews).

The observations of these incarcerated individuals are corroborated by the after-action memos prepared by Defendants Opperman and Swiatowy themselves, which reflect that each was present in the area where Plaintiff was assaulted at around the time of the assault. SMF ¶ 71; *see* Ex. L (Opperman Memo); Ex. O (Swiatowy Memo). They are also corroborated by Plaintiff, who specifically testified that Defendant Opperman used excessive force on him—including by kneeing Plaintiff in the groin, *id.* ¶ 33—and that Defendant Opperman threatened him for "tell[ing] on his partner" while spitting on Plaintiff's face, *id.* ¶¶ 44.

Defendants' response to Plaintiff's testimony about Opperman is particularly puzzling. Defendants assert that Plaintiff testified that he did not know Opperman's name but instead "recollected him as 'the one with the glasses' and arm tattoos." Mot. at 3. But Plaintiff identified Opperman by name no less than four times in his deposition;[8] Defendants acknowledge that Opperman has arm tattoos, as Plaintiff described, *id.* at 8; and Opperman admits that he wears glasses sometimes, *see* Dkt. 155-2 at ¶ 6.

Defendants latch on to Plaintiff's description of Opperman as an officer who "had glasses," and have submitted a declaration in support of their motion in which Opperman maintains that he was not wearing glasses during his response and that "at least four other sergeants were also present in the dorm . . . at least one of [whom] wears glasses." Dkt. 155-2 (Opperman Decl.) ¶¶ 3, 6. But this self-serving declaration contradicts sworn testimony Defendant Opperman gave to OSI investigators less than a month after Defendants' assault. To wit, Defendant Opperman told OSI

---

[8] *See* Ex. A (Wishart Dep. Tr.) at 42:2-5, 11:15-17, 160:15.

15

investigators that only one other supervisor (a female sergeant, who presumably could not have been confused with Opperman) was present in the dormitory in which Defendants' assault occurred. *See* Ex. Q (Opperman OSI Tr.) at 10:3-10. Further, it is unclear from Plaintiff's testimony that he was doing anything more than identifying Defendant Opperman as someone who wears glasses generally, *see supra*, n.9, which Opperman does not deny, *see* Dkt. 155-2 ¶ 6; and another incarcerated individual also described Defendant Opperman as wearing glasses, *see* Ex. U (OSI Report) at 4.

Defendants' arguments with respect to Defendants Welkley and Palistrant fare no better. Defendants assert that it is undisputed that "Officer Welkley was not in the facility on the date of the Incident; he was out on administrative leave." Dkt. 155-1 (Defs.' SMF) ¶ 8. But the exact opposite is true: It is plainly disputed whether Defendant Welkley was present. Indeed, Defendant Welkley *himself* testified that he was working on March 14 and was present in the very housing unit in which Plaintiff was assaulted before another officer told him to leave the dormitory just before Plaintiff was assaulted. SMF ¶¶ 12-13; *see* Ex. B (Welkley Dep. Tr.) at 121:10-21, 128:4-10. Indeed, Defendant Welkley testified that he was not placed on leave until *after* the events of March 14. *See* Ex. B (Welkley Dep. Tr.) at 32:14-21.

At minimum, these party admissions create a genuine dispute of material fact. *See Goldstein v. Laurent,* No. 09 Civ. 2437, 2011 WL 3586447, at *4 (E.D.N.Y. Aug. 2, 2011) (party admission alone sufficient to create genuine issue of material fact for trial); *Healy v. Shalala*, No. 98 Civ. 418, 2000 WL 303439, at *7 (D. Conn. Feb. 11, 2000) (same). Equally, the work records Defendants attach for Defendant Palistrant do not establish an absence of fact on whether Defendant Palistrant was there on March 14. Plaintiff explicitly testified that Defendant Palistrant was present the day of his assault. SMF ¶ 7; *see* Ex. A (Wishart Dep. Tr.) at 162:3-9. Further, as

16

we know from the discussion above concerning Defendant Welkely's attendance records, those records are not perfect; and Defendant Palistrant did not submit a sworn statement that he did not work on March 14, 2016. Therefore, at most, Defendant Palistrant's work records create a dispute of material fact whether Defendant Palistrant was present.

As for Defendants Rice and Swiatowy, their personal involvement is equally supported by the admissible evidence. *See* SMF ¶¶ 27, 30 (each of Defendants Rice and Swiatowy were present in the vestibule). Plaintiff testified that it was difficult for him to match Defendants' names to their faces without photographs, but Defendants intentionally chose not to show Plaintiff photographs of the officers during his deposition. *See id.* ¶ 38 (listing uses of force that Plaintiff could not directly attribute to a specific officer given that he was not shown photographs of the officers during his deposition). Moreover, Defendants never explicitly asked Plaintiff about Defendants Rice and Swiatowy in his deposition. SMF ¶¶ 34, 37. While Plaintiff testified that it was difficult for him to "know which officers were striking where" because of the number of officers involved, he clearly testified that all of the officers "took turns" hitting him. Ex. A (Wishart Dep. Tr.) at 45:22-23, 149:17-18, 153:15-21, 157:12-15. It is not necessary for a plaintiff to identify which specific officer struck him during an assault in which all of the officers participated. *Snoussi*, 2010 U.S. Dist. LEXIS 110568, at *13 (quoting *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003)) ("a plaintiff need not establish who, among a group of officers, directly participated in the attack and who failed to intervene" (cleaned up)).[9]

---

[9] *See also Hamilton v. City of Peekskill Police Dep't*, No. 13-cv-8138 (NSR), 2015 U.S. Dist. LEXIS 101903, at *8 (S.D.N.Y. Aug. 3, 2015); *De Michele v. City of New York*, No. 09 Civ. 9334 (PGG), 2012 WL 4354763, at *16-*17 (S.D.N.Y. Sept. 24, 2012) (same, where officers' presence at time of arrest was undisputed and events as plaintiff described them would have "prevent[ed] him for [sic] seeing which officers were taking what actions"); *Ricks v. O'Hanlon*, No. 07 Civ. 9849 (WHP), 2010 WL 245550, at *5 (S.D.N.Y. Jan. 19, 2010) ("Although [plaintiff] cannot identify the officers who allegedly assaulted him and provides no corroborating evidence that [defendant] committed any specific act, he 'need not establish who, among a group of officers, directly participated in the attack and who failed to intervene.'"); *Shankle v. Andreone*, No. 06 Civ. 487 (NG), 2009 WL 3111761, at *5 (E.D.N.Y. Sept. 25,

In sum, there is sufficient evidence of the personal participation of Defendants Opperman, Palistrant, Rice, Swiatowy, and Welkey, and this evidence preclude summary judgment on Plaintiff's claims against these officers. But the evidence is even stronger given that Plaintiff's conspiracy claims run against each of these defendants. *See Figueroa v. Mazza*, 825 F.3d 89, 107-08 (2d Cir. 2016) (substantive claims run against defendants under a theory of failure to intervene where jury could conclude that officer was a "tacit collaborator" in the unlawful conduct of another).

## B.     Plaintiff's Conspiracy Claims Raise Triable Issues

As with their other arguments, Defendants' opposition to Plaintiff's conspiracy claims rests entirely on ignoring contrary evidence and construing the facts in Defendants' favor, which is improper on this motion. "To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (*cited with approval in* Dkt. No. 120 at 4). A reasonable jury could find each element is satisfied here.

### i.     Record Evidence Establishes That Defendants Conspired to Cover Up Their Wrongdoing

Here, there is no question that Defendants acted in concert and each took steps in furtherance of their shared conspiracy. Separate and apart from the excessive force that Defendants used on Plaintiff, *see* SMF ¶¶ 15-18, 31-38*,* Defendants took specific steps to attempt to cover up their malfeasance, *see id.* ¶¶ 59-80.

---

2009) (denying summary judgment despite plaintiff's inability "to identify the particular officers who subjected him to excessive force" in light of evidence that the officers engaged in excessive force sprayed plaintiff with mace, stood on his back, and "mush[ed]" his face to the ground).

First, in the immediate aftermath of the assault, Defendants threatened Plaintiff to dissuade him from reporting their assault. For example, Defendant Opperman threatened Plaintiff, saying "if you say anything about this [the assault], you heard what [Defendant Bright said about "leav[ing] in a body bag] and we'll make sure that happens," and also encouraged Plaintiff to say "there was nothing happening or to say [Plaintiff] in a fight [with another inmate] or something." *Id.* ¶ 50. Likewise, Defendant Soria held up the gloved hands he was using to punch Plaintiff and said "this is how we do it. We don't leave marks," *id.* ¶ 51.

Second, in the days following the assault, Defendants fabricated their reports and discussed the contents of these reports among themselves before submitting these reports. On March 14, 2016, following Defendants' assault, Defendant Bright completed an "inmate injury" report regarding Plaintiff, *id.* ¶ 59, while and Defendant Sullivan completed an "inmate misbehavior" report regarding Plaintiff, which was signed and approved by Defendant Soria, *id.* ¶ 60. In his inmate injury report, Defendant Bright falsely maintained that Plaintiff had only superficial injuries and did not specify their cause. *Id.* ¶ 61; *see* Ex. H. (Bright Inmate Injury Report). And in their inmate misbehavior report, Defendants Soria and Sullivan falsely maintained that no correction officers had used forced on Plaintiff; that Plaintiff did not have any injuries; and that Plaintiff had refused to comply with orders. SMF ¶ 62; *see* Ex. I (Sullivan-Soria Misbehavior Report). (Based on this false report, Plaintiff was placed in the SHU the day of the assault, SMF ¶ 63; and Plaintiff was summarily sent to a different prison the next day, *id.* ¶ 67.) Likewise, Defendants Bright, Maryjanowski, Opperman, Soria, Sullivan, and Swiatowy completed to/from memos regarding their interactions with Plaintiff, and they discussed these reports amongst themselves before submitting them. *Id.* ¶¶ 68-69; *see* Ex. J (Bright Memo); Ex. K (Maryjanowski Memo); Ex. L (Opperman Memo); Ex. M (Soria Memo); Ex. N (Sullivan Memo); Ex. O

19

(Swiatowy Memo). In these memos, Defendants falsely maintained that they had no knowledge of correction officers having had used force on Plaintiff or of Plaintiff's injuries. SMF ¶¶ 71.

Third, in the months following the assault, Defendants lied to investigators and discussed their interviews with the investigators among themselves before doing so. *Id.* ¶¶ 72-73; *see also id*. ¶ 87 (Defendants are friends and communicate outside of work). Specifically, Defendants Opperman, Palistrant, Soria, Sullivan, and Welkley were interviewed by OSI investigators under oath, and perjured themselves in these interviews. *Id.* ¶¶ 74-80. For instance:

- Defendant Opperman told OSI investigators that Plaintiff did not have any injuries following Defendants' assault, Ex. Q (Opperman OSI Tr.) at 16:18-19, 19:7-16, 19:17-21:17, 24:4-11; and that he had never heard of Plaintiff's complaint regarding Defendant Welkley at the time of the assault, *id.* 25:10-26:16, 27:14-18.

- Defendant Palistrant told OSI investigators that he had never interacted with Plaintiff, Ex. R (Palistrant OSI Tr.) at 5:2-4; and that Plaintiff never complained about Defendant Welkley to him, *id.* at 6:1-10, 6:19-9:4.

- Defendant Soria told OSI investigators that neither he nor any other correction officers assaulted Plaintiff, Ex. S (Soria OSI Tr.) at 9:16-20, 11:19-12:12, 18:14-19:9; that he conducted a "very uneventful" pat frisk of Plaintiff and "nothing out of the ordinary" occurred, *id.* 8:12-17; that Plaintiff did not have any injuries, *id.* at 9:21-22, 12:16-13:2; that Plaintiff was not handcuffed while in his presence, *id.* at 10:19-22; that Plaintiff disobeyed direct orders, *id.* at 7:5-8; and that he had never heard of Plaintiff's complaint regarding Defendant Welkley at the time of the assault, *id.* 14:13-19.

- Defendant Soria also told OSI investigators that he did not know who Plaintiff's fiancé was, *id.* at 22:11-12, although Defendant Welkley admitted to discussing Plaintiff's fiancé with Defendant Soria in advance of Defendant Soria's OSI interview, Ex. B (Welkley Dep. Tr.) at 111:18-22.

- Defendant Sullivan told OSI investigators that neither he nor any other correction officers assaulted Plaintiff, Ex. T (Sullivan OSI Tr.) at 11:9-16, 12:5-8, 13:6-8; that Plaintiff did not have any injuries, *id.* at 12:9-11; that Plaintiff disobeyed direct orders, *id.* at 6:6-16; and that correction officers did not make comments referencing Plaintiff's complaint about Defendant Welkley, *id.* at 6:11-12.

- Defendant Welkley told OSI investigators that neither he nor any other officers had ever heard of Plaintiff's complaint regarding him at the time of the assault, Ex. P (Welkley OSI Tr.) at 21:15-17, 25:21-26:2, 26:19-27:4-15; and that he "did not go out of [his] way to speak to" Plaintiff's fiancé, *id.* at 11:2-5.

On this record, reasonable jurors—like the OSI investigators—will have no trouble finding that each defendant conspired to deprive Plaintiff of his constitutional rights.

### ii.    The Intra-Corporate Conspiracy Doctrine is Inapplicable Here

Defendants are wrong that the intra-corporate conspiracy doctrine bars Plaintiffs' conspiracy claims, and the cases they cite—both of which arise under § 1985 and involve corrections officers acting within the scope of their employment at all relevant times[10]—only underscore where their argument falters.

First, "[t]he intracorporate conspiracy doctrine bars conspiracy claims against employees of entities such as DOCCS (when those employees are alleged to have conspired solely with each other) *unless, pursuant to the doctrine's scope of employment exception, the employees were pursuing personal interests wholly separate and apart from the entity by whom they were employed*." *Miller v. Annucci*, No. 19 Civ. 30 (LEK), 2019 WL 11276705, at *1 (N.D.N.Y. Dec. 16, 2019) (cleaned up) (emphasis added). But where, as here, "a group of defendants allegedly maintained the pretense of serving the state while in fact pursuing their own ends to avoid liability, it is entirely consistent to conclude that they acted both under color of state law and with an independent personal stake barring application of the intracorporate conspiracy doctrine." *Alvarez v. City of New York*, No. 11 Civ. 5464 (LAK), 2012 WL 6212612, at *3 (S.D.N.Y. Dec. 12, 2012).

While Defendants were acting within the scope of their employment when they assaulted Plaintiff, they were clearly *not* acting within the scope of their employment by conspiring to cover

---

[10] *See* Mot. at 11 (citing *Arriaga v. Otaiza*, No. 20 Civ. 06992 (PMH), 2021 WL 5449849, at *3 (S.D.N.Y. Nov. 19, 2021) ("Plaintiff does not suggest that Defendants acted outside the scope of their employment."), and *Marcus v. Annucci*, No. 20 Civ. 06234 (PMH), 2022 WL 280935, at *9 (S.D.N.Y. Jan. 31, 2022) ("[E]ach Defendant . . . was acting within the scope of their employment in connection with the alleged conduct.")).

21

up their retaliatory assault. Courts in this circuit have charted a consistent course with respect to conspiracy claims premised on such cover-ups: "Manipulating or destroying evidence are not core functions performed in the normal course of a correction officer's duties." *Brown v. Annucci*, No. 19 Civ. 9048 (VB), 2021 WL 860189, at \*11 (S.D.N.Y. Mar. 8, 2021).[11] Accordingly, the intra-corporate conspiracy doctrine does not shield Defendants from liability for their conspiracy to retaliate against Plaintiff and cover-up the same.

Second, the Second Circuit has never applied the intra-corporate conspiracy doctrine to conspiracy claims under § 1983. *See Daniels v. Ralph*, No. 10 Civ. 884 (DGL), 2012 WL 2120591, \*10 (W.D.N.Y. June 11, 2012) (citing *Samms v. Fischer*, No. 10 Civ. 0349 (GHL), 2011 WL 3876528 (N.D.N.Y. Mar. 25, 2011)). And there is good reason not to extend the doctrine beyond its limited relevance in the context of corporate decision-making. *Cf. Samms*, 2011 WL 3876528, at \*15, \*15 n.8 (noting that district courts that have applied the doctrine to § 1983 claims have uniformly done so "without discussing whether it was appropriate to do so."). The intra-corporate conspiracy doctrine, which arose in the antitrust context, was "never intended to be used to shield conspiratorial conduct that was criminal in nature," *McAndrew v. Lockheed Martin Corp.*, 206

---

[11] *See also, e.g., Miller v. Annucci*, No. 19 Civ. 30 (LEK), 2019 WL 11276705, at \*6 (N.D.N.Y. Dec. 16, 2019) (holding that allegations that correctional officers filed false reports and threatened the plaintiff to prevent him from reporting misconduct "are sufficient to invoke the 'personal stake exception' to the intracorporate conspiracy doctrine"); *Guillory v. Overbaugh*, No. 13 Civ. 1353 (RFT), 2014 WL 5026781 (N.D.N.Y. Aug. 7, 2014) (holding the same, where officers conspired to coverup misconduct by threatening Plaintiff for "exercise[ing] his right to file grievances and complaints"), *adopted*, No. 13 Civ. 01353 (MAD), 2014 WL 5026789 (N.D.N.Y. Oct. 8, 2014); *Lopez v. Bushey*, No. 11 Civ. 0418 (TWD), 2013 WL 1294477, at \*8 (N.D.N.Y. Mar. 4, 2013) (same), *adopted*, No. 11 Civ. 0418 (LEK), 2013 WL 1293819 (N.D.N.Y. Mar. 28, 2013); *Lewis v. Havernack*, No. 9:12 Civ. 0031 (DEP), 2013 WL 1294606 (N.D.N.Y. Mar. 28, 2013) (same, where officers conspired to coverup misconduct by avoiding providing the plaintiff timely medical care), *adopted*, No. 12 Civ 31 (GLS), 2013 WL 1294592 (N.D.N.Y. Mar. 28, 2013); *Medina v. Hunt*, No. 05 Civ. 1460, 2008 WL 4426748, at \*9 (N.D.N.Y. Sept. 25, 2008) (same, where officers conspired to coverup misconduct by avoiding witnesses to assault on the plaintiff); *Chillemi v. Town of Southampton*, 943 F. Supp. 2d 365 (E.D.N.Y. 2013) (same, where officers fabricated charges against Plaintiff).

F.3d 1031, 1040-41 (11th Cir. 2000), and much of the same conduct for which § 1983 imposes civil liability is also criminal, *see, e.g.,* 18 U.S.C. § 242.[12]

What is more, *McAndrews*' concerns about the doctrine's applicability in civil rights cases take on especial salience in the context of § 1983 claims for First Amendment retaliation because federal law explicitly criminalizes "conspir[ing] to injure, oppress, threaten, or intimidate any person . . . in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, *or because of his having so exercised the same."* 18 U.S.C. § 241 (emphasis added). That is *precisely* the conduct Defendants engaged in here in response to Plaintiff's protected expressive activity.

In any case, because Plaintiff's claims fall within the personal stake exception, the Court should decline to rule on the doctrine's applicability to Plaintiff's § 1983 claims. *Cf. Ali v. Connick*, 136 F. Supp. 3d 270, 282 (E.D.N.Y. 2015) ("[T]he court does not need to determine whether the doctrine applies to bar Plaintiff's § 1983 claim, because both his § 1983 and § 1985 claims fit within the 'personal stake' exception to the rule.").

### III.    Plaintiff Can Recover Damages for His Shoulder Injury

Defendants argue that Plaintiff should be barred from pursuing damages for his shoulder injury on grounds that "Plaintiff has proffered no expert suggesting the surgery he received in November 2016, or any concomitant loss of use in the shoulder, was caused by the Incident in March 2016[.]" Mot. at 22. But Plaintiff now *has* served an expert disclosure and is prepared to offer expert testimony at trial that creates a genuine dispute with the opinion of Defendants' expert (who did not examine Plaintiff).

---

[12] Indeed, it is largely for this reason that a number of circuits have declined to extend the doctrine to even § 1985 claims—a question on which the Supreme Court reserved judgment in *Ziglar v. Abbasi*, 582 U.S. 120, 153 (2017) (noting that the Supreme Court has never sanctioned the doctrine's applicability in the § 1985(3) context and that a circuit-split exists on that issue).

Defendants' motion was filed before the deadline for expert disclosures set by Federal Rule of Civil Procedure 26. Because the Court did not establish a case-specific deadline for expert disclosures here, the default deadlines under Rule 26(a)(2)(D)(i) control. That Rule provides: "A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made: (i) at least 90 days before the date set for trial or for the case to be ready for trial . . . ." Plaintiff served his expert disclosure on February 12, 2024, Moskovitz Decl. ¶ 26; SMF ¶ 57. There is presently no trial date.

Accordingly, because Plaintiff's disclosure was made more than 90 days before the trial date (which has not yet been set by the Court), that disclosure was timely under Rule 26. And Dr. Stein is prepared to testify that Plaintiff's left shoulder injury, for which two surgeries were needed, occurred as a result of Defendants' assault on Plaintiff in 2016. *See* Ex. Y (Dr. Stein's Report) at 4. Accordingly, there is no merit to Defendants' argument that there is a lack of evidence on the issue of causation of the injury to Plaintiff's left shoulder.

## CONCLUSION

A jury needs to decide this case. The Court should deny Defendants' motion for summary

judgment in its entirety.

Dated:  February 12, 2024

**HAMILTON CLARKE, LLP**

Joshua S. Moskovitz
Adam I. Strychaluk
48 Wall St., Suite 1100
New York, New York 10005


**RICKNER PLLC**
Robert H. Rickner
Stephanie J. Panousieris
233 Broadway, Suite 2220
New York, New York 10279