UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GEORGE WISHART,

                                    Plaintiff,

                    v.

CORRECTION OFFICER PETER WELKLEY, et al.,

                                    Defendants.
_____

                                          <u>DECISION AND ORDER</u>

                                          19-CV-6189DGL

        Plaintiff George Wishart, who at the time of the events underlying this lawsuit was an

inmate in the custody of the New York State Department of Corrections and Community

Supervision ("DOCCS"), commenced this action in 2019 against ten DOCCS employees.

Plaintiff, who is represented by counsel, alleges that defendants violated his civil rights in

connection with an incident that occurred in March 2016, when plaintiff was confined at Orleans

Correctional Facility.  As described in more detail below, plaintiff alleges that he was assaulted

by defendants in retaliation for his having complained about certain wrongful actions of one of

the defendants, Correction Officer ("C.O.") Peter Welkley.

        The complaint asserted claims under 42 U.S.C. §§ 1983, 1985 and 1986.  Defendants

moved under Fed.R.Civ.P. 12(c) to dismiss the fourth and fifth causes of action, asserting claims

under §§ 1985 and 1986 respectively, and on October 31, 2022, the Court issued a Decision and

Order (Dkt. #120) granting the motion in part and denying it in part.  The Court dismissed

plaintiff's claims under §§ 1985 and 1986, but deemed the fourth and fifth causes of action as

properly pleaded under § 1983.

Defendants have now moved for summary judgment dismissing the complaint in its entirety. (Dkt. #155). In a separate motion (Dkt. #164), defendants move to strike plaintiff's expert, and for attorney's fees pursuant to Rules 37(b) and 16(f)(1) of the Federal Rules of Civil Procedure.

## BACKGROUND

### I. The Alleged Assault, Investigation, and Complaint

Plaintiff alleges that defendant Welkley sexually harassed plaintiff's girlfriend when she came to visit plaintiff at the correctional facility. He also alleges that Welkley somehow obtained the girlfriend's email address, and sent her harassing emails afterward. Plaintiff alleges that after he complained about these matters to another C.O., Paul Palistrant, Palistrant told some of his fellow C.O.s about plaintiff's complaints.[1]

Plaintiff further alleges that on March 14, 2016, several C.O.s assaulted plaintiff in retaliation for his complaints about Welkley. Afterwards, he was taken to the infirmary, where he was examined by a nurse. Although plaintiff alleges that he was given no more than a cursory examination, the injuries that were noted, combined with plaintiff's allegation that he had been

---

[1] It appears that plaintiff also filled out a grievance form concerning this matter, *see* Dkt. #162-24, but it is not clear if it was ever filed. The complaint alleges that plaintiff "prepared a grievance regarding C.O. Welkley's behavior, but he believed, or hoped, that he could resolve the matter informally." Complaint ¶ 45. Plaintiff testified at his deposition that he "filed a grievance" concerning Welkley, Dkt. #162-1 at 8. Plaintiff's Rule 56 Statement states that he "wrote a grievance," and that "complaint to Defendant Palistrant was the necessary first step to initiate the grievance process," Dkt. #161 ¶¶ 6, 8, but it does not state that the grievance was ever filed. Plaintiff has also submitted a copy of a grievance form that he wrote about Welkey, Dkt. #162-24, but there is no indication from that copy that it was filed. What is clear, however, is that he spoke to Palistrant about Welkley's behavior and actions toward his girlfriend. Whether plaintiff also formally filed a written grievance is not material to the issues before the Court.

assaulted by the C.O.s, prompted an investigation by the DOCCS Office of Special Investigations ("OSI").

On July 5, 2016, the OSI issued a report (Pl Ex. U, Dkt. #162-21) in which it "found sufficient evidence to substantiate the allegation" that plaintiff "had been assaulted by staff at Orleans Correctional Facility." *Id.* at 1.  The OSI also found "sufficient evidence to substantiate that Correction Officer Peter Welkley was overly familiar with an inmate's visitor and contacted her numerous time via e-mail" with her.  *Id.* at 5.[2]  The OSI also concluded, however, that there was "insufficient evidence to support that the assault was directly related to Officer Welkley's contact with" that person.  *Id.*

Plaintiff brought this action in March 2019, suing ten individuals, all of whom were alleged to have either planned, participated in, failed to intervene in, or tried to cover up the assault.  Plaintiff alleges in the complaint that his injuries were far more severe than was noted in the initial medical reports, and that after he was sent to see an orthopedic surgeon in October 2016, it was determined that he needed surgery to repair his left rotator cuff and stabilize a joint ("AC joint") in his shoulder.  That surgery was performed in November 2016, and plaintiff underwent a second surgery in April 2017 to remove the surgical hardware.

In light of the Court's October 31, 2022 Decision and Order, there are five claims before the Court, all of which are brought under § 1983 against all the defendants:  (1) excessive force in violation of the Eighth Amendment; (2) retaliation in violation of the First Amendment; (3) failure to intervene to stop the assault that forms the basis for claims 1 and 2; (4) conspiracy

---

[2] At various parts of the record, the subject of Welkley's alleged harassment is referred to as plaintiff's girlfriend and as his fiancee.  Since plaintiff's papers use the word "girlfriend," she will be described as such in this Decision and Order, other than in direct quotations.

to commit the civil rights violations alleged in claims 1 and 2; and (5) failure to prevent the conspiracy alleged in claim 4 from coming to fruition. Plaintiff seeks compensatory and punitive damages.

## II. Discovery-Related Matters

After defendants moved for partial summary judgment, in which they relied on the opinion of their expert witness, Peter Gambacorta, D.O., plaintiff filed a response in opposition, in which he relied on the opinion of his expert, Todd Stein, MD. Defendants then moved to strike Dr. Stein's report under Rules 16 and 37 of the Federal Rules of Civil Procedure, on the ground that plaintiff's disclosure of his expert was untimely and in violation of the scheduling orders governing this case. Plaintiff contends that defendants are misinterpreting the Court's scheduling orders. Analysis of this matter therefore requires some familiarity with the procedural history of this case leading up to plaintiff's disclosure of his expert.

The case was initially referred to Magistrate Judge Jonathan W. Feldman to oversee discovery and other pretrial matters. On June 5, 2019, he issued a scheduling order providing that "[a]ll factual discovery in this case, including depositions," was to be completed on or before March 5, 2020. (Dkt. #12 at 1.) The order further stated that plaintiff was to "identify any expert witnesses" by that same date, March 5, 2020, and that defendants had until April 4, 2020 to identify any expert witnesses. The parties were given until June 5, 2020 to "complete all discovery relating to experts, including depositions ... ." *Id.* at 1-2.

In November 2019, the case was re-referred to Magistrate Judge Mark W. Pedersen, who has continued to oversee discovery since then. Some discovery disputes arose, mostly relating to

plaintiff's attempts to obtain from defendants certain cell phone data ("ESI," for "electronically stored information").  In response to the parties' requests to extend the discovery deadline, Magistrate Judge Pedersen issued orders granting those requests.  (Dkt. #29, #49.)  Those disputes and orders did not concern or reference expert discovery.

The disputes over ESI continued, and on March 11, 2022, Judge Pedersen issued a Decision and Order (Dkt. #100) granting plaintiff's motion for monetary sanctions "for Defendants' continued noncompliance with Court Discovery Orders ... ."  Based on the alleged refusal of defendants Swiatowy and Opperman to provide discovery, plaintiff moved before me for an order holding them in contempt.  After conducting an evidentiary hearing, this Court declined to do so, in a Decision and Order entered on February 8, 2023 (Dkt. #142).  Although I noted defendants' "sluggish compliance with Magistrate Judge Pedersen's discovery orders," and stated that their "recalcitrance and lack of promptness in responding to plaintiff's electronic discovery demands is troubling," the Court stated that it was not clear how much of the blame lay at their feet, and concluded that "plaintiff has failed to prove that assessment of additional monetary penalties [beyond those imposed by Judge Pedersen] would serve the coercive or compensatory purposes of civil contempt, given that the parties against whom contempt was certified have now complied with the discovery orders at issue."  *Id.* at 6.

In a letter dated March 24, 2023, defense counsel stated that due to certain scheduling problems, the parties were "jointly request[ing] an adjournment of the discovery deadline, the dispositive motion deadline, and the trial date in this matter."  Counsel asked that "discovery be scheduled to conclude May 31st, and dispositive motions 60 days thereafter on July 31st, with a trial, if needed, to take place thereafter at the Court's convenience."  (Dkt. #145.)  Magistrate

Judge Pedersen entered a text order on April 4, 2023 (Dkt. #146) granting that request, directing that "[a]ll discovery shall conclude on May 31, 2023," and that "[d]ispositive motions, if any, shall be filed by July 31, 2023."

In a letter to Magistrate Judge Pedersen dated May 31, 2023, plaintiff's attorney stated that he was writing on behalf of both counsel to request an extension of the deadlines for completing discovery and filing dispositive motions.  He stated that the reason for the request was that due to unforeseen circumstances, depositions of plaintiff and an OSI investigator had to be adjourned, that defense counsel had just produced a batch of documents relating to ESI that would take some time to review, and that there were still more documents to be turned over. (Dkt. #148.)

On June 8, 2023, Magistrate Judge Pedersen issued an amended scheduling order (Dkt. #150) granting that request.  Judge Pedersen stated that the parties had written to the Court "to extend the deadlines in this case because the parties need to finish depositions and to review the voluminous ESI in this case," and he ordered that "[a]ll factual discovery in this case shall be completed on or before July 31, 2023."  Dispositive motions had to be filed no later than September 29, 2023.

On July 28, 2023, plaintiff's counsel again wrote to the Judge Pedersen "to request an extension of the current deadlines for completing discovery and filing dispositive motions," from July 31 and September 29, respectively, to September 29 and November 30.  Counsel explained that "the parties were unable to complete Plaintiff's deposition on July 13, when it was originally scheduled, due to a technical difficulty on Plaintiff's end with accessing the virtual deposition platform," and the parties had agreed to conduct the deposition on August 29.  He added, "We

ask that deadline to complete discovery be adjourned until September 29 so that the parties will have a reasonable window of time following the completion of Plaintiff's deposition to conduct any remaining discovery that may be needed."  (Dkt. #151.)

By text order entered August 1, 2023 (Dkt. #152), Judge Pedersen granted that request. The text order states that "[d]iscovery is to be completed by September 29, 2023, and any dispositive motions are due by November 30, 2023."

By letter dated November 30, 2023 (Dkt. #153), defense counsel asked the Court for a brief extension of the time to file dispositive motions, from November 30 to December 4. Magistrate Judge Pedersen granted that request.  (Dkt. 154.)

Defendants filed their motion for partial summary judgment on December 4.  In support of the motion, defendants relied in part on the report of their expert, Dr. Gambacorta.  In his report, which defendants had produced to plaintiff's counsel by email on September 28, 2023, *see* Dkt. #164-1, Dr. Gambacorta stated that after conducting a "thorough review of the available medical records," his "medical opinion as a board-certified orthopedic surgeon [was that] if there was an alleged assault on the claimant the left shoulder injury was pre-existing, and any pathology associated with the shoulder is unrelated to this incident."  (Dkt. #155-3 at 106.)  In their memorandum of law in support of the motion, defendants also noted that plaintiff had "proffered no expert suggesting" that his injuries or shoulder problems were caused by the March 2016 incident.  (Dkt. #155-4 at 22.)

With defense counsel's consent, plaintiff's attorney twice requested extensions of his time to respond to defendants' motion, and those requests were granted.  In the first request, made on January 16, 2024, plaintiff's attorney stated that he "require[d] additional time to

prepare his response and compile the relevant evidence that shows there are genuinely disputed material facts." (Dkt. #157.) In the second request, on January 30, he stated, "The reason for this request is that Plaintiff requires additional time to compile the relevant evidence – including an expert disclosure – that demonstrates there are genuinely disputed material facts in need of a jury's review." (Dkt. #159.)

The Court granted that request and gave plaintiff until February 12 to file his response. He did file a response on that date, which included Dr. Stein's report. (Dkt. #162-25.) Dr. Stein states in the report that he examined plaintiff on April 28, 2023, and that based on the examination and his review of plaintiff's medical records, his diagnosis of plaintiff's condition was "Status post left chronic grade 3 AC separation with scapular winging and stiffness." *Id.* at 4. Dr. Stein also opined, based on his conversation with plaintiff and his review of plaintiff's deposition testimony, that "[w]ithin a reasonable degree of certainty and given all of the available information, the worsening of his AC joint separation and probable long thoracic nerve injury occurred at the time of the injury in 2016 [i.e. the injuries he suffered in the assault] as he describes that mechanism." *Id.*

In response to defendants' assertion that plaintiff had "proffered no expert" testimony in support of his claims, plaintiff states in his memorandum of law in opposition to defendants' motion that "[d]efendants' motion was filed before the deadline for the parties to exchange expert disclosures." (Dkt. #163 at 8.) Citing Rule 26(a)(2)(D)(I), which provides that "[a]bsent a stipulation or a court order, the disclosures [of expert testimony] must be made ... at least 90 days before the date set for trial or for the case to be ready for trial ...," plaintiff contends that he

timely served defendants with an Dr. Stein's report, because there was no court order in effect with respect to the deadline for expert discovery.

**DISCUSSION**

**I.  Motion to Strike**

In their motion to strike Dr. Stein's report, defendants state that plaintiff "ignores the fact that Magistrate Pedersen ordered <u>all discovery</u> to be completed by September 29, 2023," which implicitly includes expert discovery.  Defendants also note that subsection (ii) of Rule 26(a)(2)(D) states that "if the [expert] evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)," it must be disclosed "within 30 days after the other party's disclosure."  Defendants contend that plaintiff has offered Dr. Stein's report solely in rebuttal to that of Dr. Gambacorta, and that it therefore should have been disclosed no later than October 28, 2023, *i.e.*, 30 days after defendants' disclosure of their expert report to plaintiff.

The record does not support defendants' characterization of Magistrate Judge Pedersen's August 1 order.  The order was issued in response to a joint request from both counsel, submitted by plaintiff's attorney, for "an extension of the current deadlines for completing discovery and filing dispositive motions."  The reason given was that there had been some delay in completing plaintiff's deposition.  (Dkt. #151.)  No mention was made of expert discovery.

That request itself also has to be considered in light of the scheduling order that preceded it, in which Judge Pedersen directed that "[a]ll *factual* discovery in this case shall be completed on or before July 31, 2023."  (Dkt. #150 at 1) (emphasis added).  That order explicitly was

limited to the deadline for factual discovery, and again there was no reference to expert discovery.

Judge Pedersen's August 1 one-sentence order stating that "[d]iscovery is to be completed by September 29, 2023" has to be viewed against that background, and like the request and scheduling order that preceded it, the order said nothing about expert discovery. Contrary to defendants' assertion, the order did not state that "*all* discovery" was to be completed by September 29. Although it did not contain any explicit limitations on the type of discovery concerned, viewed in context it was obviously intended simply to give the parties more time to finish plaintiff's deposition, as they had requested. I agree with plaintiff, then, that at the time defendants filed their motion for partial summary judgment, there was no court order in effect concerning the timing of expert discovery, and that Rule 26(a)(2)(D) therefore controls.

Nor do the circumstances here fit within the provision of Rule 26(a)(2)(D)(ii) that disclosure of expert testimony that "is intended solely to contradict or rebut [expert] evidence on the same subject matter identified by another party" must be made "within 30 days after the other party's disclosure." For one thing, Dr. Stein's report does not even mention Dr. Gambacorta's opinions. Although the report is dated February 12, 2024, it also states that it is based on an examination of plaintiff that Dr. Stein conducted on April 28, 2023, five months before defendants disclosed Dr. Gambacorta's report.

Moreover, that Dr. Stein's conclusions differ from those of Dr. Gambacorta does not in itself mean that his opinions are offered "solely" to contradict defendants' expert. "[D]isagreeing with a defense expert, alone, does not render a plaintiff's expert one sounding in rebuttal." *Bell v. Progressive Select Ins. Co.*, __ F.Supp.3d __, 2023 WL 5840306, at *3 (M.D.Fla. 2023). At

the heart of this case lies the issue of whether the physical ailments complained of by plaintiff, particularly relating to his shoulder, were caused by defendants' alleged assault. That plaintiff's expert is of the opinion that they were comes as no surprise, and does not mean that his report is intended solely in rebuttal; as defendants note in their motion for summary judgment, plaintiff must present expert opinion testimony on causation as part of his case in chief. *See id.* (noting that it was "hardly surprising" that plaintiff's expert's testimony "incidentally contradict[ed]" defendant' expert's report, since "[b]oth experts opine[d] on matters related to the core issue" in the case). *See also U.S. Bank, N.A. v. Glogowski Law Firm, PLLC*, 339 F.R.D. 579, 581 (W.D.Wash. 2021) ("Nothing in the text prohibits a party from contradicting or rebutting another party's expert report simply because the report addresses an expected topic"). Since plaintiff disclosed Dr. Stein's report more than 90 days before the trial date (which has not yet been set), the Court concludes that the disclosure was timely.

## II.  Motion for Partial Summary Judgment

### A.  Personal Involvement of Defendants Palistrant, Rice, Swiatowy, Welkley and Opperman

Defendants contend that all the claims against defendants Palistrant, Rice, Swiatowy, Welkley and Opperman should be dismissed for lack of their personal involvement in the alleged assault.

 "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks omitted). Personal involvement

may be shown where the defendant directly participated in the violation, or, in claims arising

from a correction officer's use of force, "through facts suggesting the officer ... was present

during the use of force and failed to intervene." *Head v. Ebert*, No. 14-CV-6546, 2024 WL

692567, at *2 (W.D.N.Y. Feb. 20, 2024) (internal quote and citation omitted). *See also Tangreti

v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (personal-involvement requirement applies to both

supervisory and non-supervisory defendants).

Defendants made a similar argument in their earlier Rule 12(c) motion, asserting that the

claims against defendants Welkley and Palistrant should be dismissed on the ground that their

sole involvement in the case stemmed from the conspiracy allegations in counts Four and Five,

which respectively asserted claims for civil rights conspiracy under 42 U.S.C. § 1985 and failure

to prevent that conspiracy under 42 U.S.C. § 1986. Defendants argued that neither of those two

causes of action stated a claim.

Although the Court did dismiss those claims to the extent that they were based on

allegations of racial animus as required to state a claim under § 1985 (and by extension under

§ 1986, for failure to prevent the commission of the wrongs contemplated in a § 1985

conspiracy), I ruled that they stated a claim under § 1983, for conspiracy to violate plaintiff's

civil rights and for failure to intervene to prevent the object of the conspiracy, *i.e.*, the retaliatory

assault.

As to defendants Palistrant and Welkley, the Court stated, "While Defendants highlight

that Plaintiff does not allege specifically that Officers Palistrant and Welkley were present during

the assault," liability could nonetheless attach based on evidence that they acted in concert with

the other defendants to help bring about the assault. (Dkt. #120 at 5-6.) Specifically, the Court

noted plaintiff's allegations that "Officer Palistrant told Officers Welkley and Soria, who were friends as well as coworkers, about Plaintiff's complaint," that "[t]hey, along with the other Defendants, discussed the allegations and agreed to punish Plaintiff for making the complaint," and that during the assault, which occurred less than two weeks later, Soria expressly referenced plaintiff's complaint to Palistrant about Welkley.  *Id.* at 5.

For essentially the same reasons, the Court denies defendants' present motion for summary judgment as to the claims against Welkley and Palistrant.  On the record before the Court, and drawing all reasonable inferences in plaintiff's favor, there is evidence from which one could infer that they were aware of and involved in the planning for the assault, and that they did nothing to prevent it.

In addition, although there does not appear to be any evidence that Welkley and Palistrant physically participated in or observed the alleged assault, "section 1983 permits a jury to hold co-conspirators liable for the damages flowing from a constitutional deprivation that all of the co-conspirators may not have personally carried out."  *Sánchez v. Foley*, 972 F.3d 1, 11 (1st Cir. 2020).  *See also Rieves v. Town of Smyrna, Tenn.*, 67 F.4th 856, 863 (6th Cir. 2023) ("Section 1983 civil conspiracy claims do not contain a 'personal involvement' requirement"); *Bevill v. Fletcher*, 26 F.4th 270, 283 (5th Cir. 2022) ("a conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act") (internal quote omitted); *Borisova v. Friberg*, No. 18-CV-7440, 2023 WL 5045090, at *5 (S.D.N.Y. Aug. 8, 2023) ("a defendant in a § 1983 case may be liable for the wrongful acts of the other conspirators committed within the scope of the conspiracy") (internal quote omitted).

-13-

The Court also denies the motion for summary judgment as to defendants Swiatowy, Opperman and Rice.  Plaintiff alleges that they were present and participated in the assault, and his allegations are supported by eyewitness testimony from other inmates who witnessed the alleged assault.  *See* Dkt. #162-21.  Although defendants contend that certain aspects of plaintiff's and the other inmates' testimony undercuts any claim that these defendants were present, I conclude that the alleged inconsistencies go only to the weight of that testimony and that defendants have not carried their burden on summary judgment to show the absence of a genuine issue of material fact in this regard.

### B.  Conspiracy Claims

In their memorandum of law in support of their motion for summary judgment, defendants state that "the two causes of action for conspiracy listed in the Complaint have been withdrawn," but that because in his opposition to the previous Rule 12(c) motion "Plaintiff took the position that despite withdrawing these causes of action he still maintained a cause of action for conspiracy, out of abundance of caution the cause of action is addressed."  Defendants also discuss "[t]he standard for a claim under 28 U.S.C. § 1985, and by extension 28 U.S.C. § 1986, which addresses wrongs 'mentioned in section 1985' ... ."  (Dkt. #155-4 at 9.)

These statements are curious, in light of the Court's express conclusion in its Rule 12(c) decision that "the Complaint plausibly pleads a conspiracy," and its "deni[al of] Defendants' motion to the extent it seeks to dismiss Plaintiff's conspiracy claim under Section 1983, as set forth in the Fourth and Fifth causes of action."  (Dkt. #120 at 6.)  That was reiterated in the Conclusion, which states that "the Court dismisses Plaintiff's conspiracy-related theories invoking racial animus as pleaded in the Fourth and Fifth causes of action under 42 U.S.C.

-14-

§§ 1985 and 1986," but that "[t]he Court, however, deems the Fourth and Fifth causes of action

as properly pleaded under 42 U.S.C. § 1983." *Id.*  Defendants' present arguments concerning the

absence of any allegations or proof of racial or other class-based animus, *see* Dkt. #155-4 at 9-10,

are therefore beside the point, since such animus is an element of a § 1985 conspiracy claim, not

a § 1983 claim.  *See Wik v. Village of Holley*, No. 22-CV-6414, 2023 WL 6958794, at *7

(W.D.N.Y. Oct. 20, 2023).

Defendants also assert that plaintiff's conspiracy claim is barred by the intracorporate

conspiracy doctrine.  Under that doctrine, "officers, agents and employees of a single corporate

entity are legally incapable of conspiring together."  *Sherman v. City of New York*, No.

18-cv-5359, 2019 WL 2164081, at *7 (E.D.N.Y. May 16, 2019) (internal quotes omitted).

There is an exception to that general rule, however, "where the individual defendants,

despite being a part of the same entity, are pursuing personal interests wholly separate and apart

from the entity," *Ivery v. Baldauf*, 284 F.Supp.3d 426, 440 (W.D.N.Y. 2018) (internal quotes

omitted).  Although to bring a case within that exception the plaintiff must show more than that a

defendant acted out of mere personal bias or dislike of the plaintiff, courts in this circuit have

applied the exception where correction officers engaged in an unprovoked assault on a prison

inmate, retaliated against an inmate for having complained about officers' wrongdoing, or

attempted to cover up a use of excessive force.  *See*, *e.g.*, *Mazyck v. Keller*, 531 F.Supp.3d 630,

647 (W.D.N.Y. 2021) (stating that plaintiff had "plausibly alleged that Defendants 'acted other

than in the normal course of their corporate duties,' by 'using excessive force and then agreeing

to cover up the alleged assault by manipulating or destroying evidence'") (quoting *Brown v.

Annucci*, No. 19 CV 9048, 2021 WL 860189, at *10-11 (S.D.N.Y. Mar. 8, 2021)); *see also*

-15-

*Edwards v. Annucci*, No. 17 CV 5018(VB), 2019 WL 1284295, at \*9 (S.D.N.Y. Mar. 20, 2019) (explaining that "[e]mploying excessive force and falsifying documents are not core functions performed in the normal course of a correction officer's duties").

In the case at bar, plaintiff alleges, and has presented evidence, that defendants physically assaulted him without provocation, in retaliation for his having reported the wrongful acts of their fellow officer, Welkley.  They then allegedly lied about the incident and attempted to pin the blame for it on plaintiff's own obstreperous behavior.  Construing the record in the light most favorable to plaintiff, such acts were not taken in furtherance of their duties, or in the interests of DOCCS or the correctional facility, and the intracorporate conspiracy doctrine does not apply. *See Povoski v. Lacy*, No. 14-CV-97, 2016 WL 908899, at \*6 (N.D.N.Y. Feb. 8, 2016) (doctrine did not apply where plaintiff alleged that defendant correction officer, after learning that plaintiff had initiated a lawsuit against his friend and fellow officer, told plaintiff that "[he] kn[ew] how to fix inmates like [plaintiff]," and that two officers assaulted plaintiff, who was "fully handcuffed and waist-chained" during the assault); *Mitchell v. Chappius*, No. 17-cv-6673, 2018 WL 4095108, at \*9 (W.D.N.Y. Aug. 27, 2018) (finding that plaintiff had plausibly asserted that the alleged conspirators' personal interests were more than simply personal biases against him," where plaintiff alleged that correction officers "work[ed] in concert" to "orchestrate[ ] the retaliatory hit" on plaintiff, and that defendants were acting in their own self-interests, to prevent the exposure of the "invalid, illegal, abusive, unprofessional, and unconstitutional actions of their coworkers"); *Guillory v. Overbaugh*, No. 13-CV-1353, 2014 WL 50262781, at \*5 (N.D.N.Y. Aug. 7, 2014) ("Accepting, as we must, Plaintiff's allegations that the Defendants conspired to beat him in retaliation for filing lawsuits, grievances, and complaints, as true, we cannot

conclude that Defendants are entitled to intracorporate immunity"), *R&R adopted*, 2014 WL 5026789 (N.D.N.Y. Oct. 8, 2014).

The Court is also not persuaded by defendants' argument that plaintiff has failed to show the existence of a conspiracy, because he has no direct personal knowledge that defendants reached a "meeting of the minds." That defendants formulated and agreed to a plan to retaliate against plaintiff can reasonably be inferred from the evidence that within days after plaintiff spoke to Palistrant about Welkley, other officers knew about it, that at the time of the assault plaintiff's assailants made statements about plaintiff's complaints and having to stick up for their "brothers in blue," and that after the assault, they reported that no force was used against plaintiff and that whatever happened was due to plaintiff's refusal to comply with legitimate orders. Although this evidence is in dispute, on a summary judgment motion it must be credited by the Court, and I conclude that it raises genuine issues of fact about whether a conspiracy existed. *See Foskey v. Northrup*, 20-CV-504, 2021 WL 1146217, at *5 (N.D.N.Y. Mar. 25, 2021) ("a meeting of the minds is plausibly suggested by the coordinated nature of the alleged attack, and the fact that the attack was not a spontaneous reaction to any instant threat"); *see also Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 131 (2d Cir 1997) (stating that a conspiratory "agreement can be proved by circumstantial evidence").

### C. Retaliation Claim

Defendants contend that summary judgment should be granted in their favor on plaintiff's retaliation claim because plaintiff has not presented evidence that they were aware of plaintiff's complaints about Welkley at the time of the alleged assault. This assertion requires little comment.

"In order to prove a First Amendment retaliation claim under Section 1983, a prisoner must show that:  (1) he engaged in protected speech or activity; (2) the defendant took adverse action against him; and (3) there was a causal connection between the protected speech or activity and the adverse action." *Simmons v. Adamy*, 987 F.Supp.2d 302, 306 (W.D.N.Y. 2013) (citing *Espinal v. Goord*, 554 F.3d 216, 227 (2d Cir.2009)).  Evidence that can lead to an inference that a defendant was motivated by retaliatory animus includes:  (1) the temporal proximity of the filing of a grievance and the alleged retaliatory act; (2) the inmate''s prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant regarding his motive.  *See Colon v. Coughlin*, 58 F.3d 865, 872-73 (1995).

As explained above in connection with the conspiracy claims, there is evidence here that defendants were aware that plaintiff had spoken to Palistrant about Welkley's behavior toward plaintiff's girlfriend, and that at the time of the assault they expressly referenced that fact.  If plaintiff's evidence were credited by a jury, it would take no great leap of imagination to conclude that defendants acted out of retaliatory motives.  Defendants' motion for summary judgment on this claim is therefore denied.

### D.  Damages

Defendants assert that plaintiff should be precluded from seeking damages pertaining to his left shoulder, which he alleges was badly injured in the assault, because the evidence shows conclusively that he had a long history of left shoulder problems, and that whatever pain or other issues he complained about after March 14, 2016 were not causally related to the incident that forms the basis of this lawsuit.

-18-

In support of that assertion, defendants cite plaintiff's medical records, which show a history of treatment for left shoulder pain dating back to 2006, and continuing through September 28, 2015, less than six months prior to the alleged assault. Defendants also rely on the report of their expert, Dr. Gambacorta, and–as of the time defendants' motion was filed–plaintiff's failure to produce contrary expert testimony.

As explained above in connection with the motion to strike, plaintiff has now submitted an expert report, which the Court allows, and based on that report and plaintiff's testimony, I conclude that there are genuine issues of material fact that preclude summary judgment for defendants in this regard. Defendants' arguments based on plaintiff's medical history may provide ample fodder on cross-examination, and might well be convincing to a jury, but on a motion for summary judgment the Court cannot find that the issue should be taken out of the hands of the jury.

**CONCLUSION**

Defendants' motion for summary judgment (Dkt. #155) and their motion to strike (Dkt. #164) are denied. At this point, then, plaintiff has claims under 42 U.S.C. § 1983 against all the defendants for (1) excessive force in violation of the Eighth Amendment; (2) retaliation in violation of the First Amendment; (3) failure to intervene to stop the assault that forms the basis

for claims 1 and 2; (4) conspiracy to commit the civil rights violations alleged in claims 1 and 2; and (5) failure to prevent the conspiracy alleged in claim 4 from coming to fruition.

     IT IS SO ORDERED.

                                      _____
                                          DAVID G. LARIMER
                                 United States District Judge

Dated: Rochester, New York
       April 17, 2024.